## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| JOHN P. NOWAK, Individually and on Behalf of All Others Similarly Situated | * | |
| | * | |
| | * | |
| *Plaintiffs,* | * | CIVIL ACTION NO.: 24-950 |
| | * | |
| | * | JUDGE: SIMON |
| VERSUS | * | |
| | * | MAGISTRATE: FRANKEL |
| GRAND DESIGN RV, LLC; | * | |
| WINNEBAGO INDUSTRIES, INC. | * | **JURY TRIAL DEMANDED** |
| | * | |
| *Defendants.* | * | |
| | * | |
| * * * * * * * * * * * * * * * * * * * * * | * | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff John P. Nowak ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through undersigned counsel, files this Class Action Complaint against Defendants Grand Design RV, LLC ("Grand Design") and Winnebago Industries, Inc. ("Winnebago" and collectively with Grand Design, "Defendants"), and in support thereof states the following:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff, on behalf of himself and others similarly situated, who purchased and used Defendants' Solitude and Momentum fifth wheel Recreational Vehicles ("RVs" or "Defective RVs"), brought to remedy violations of applicable law in connection with Defendants' design, manufacture, promotion, and sale of certain RVs.[1]

---

[1] Defendants manufacture the Solitude and Momentum towable RVs under the Winnebago and Grand Design brand names. Winnebago 2024 Annual Report to SEC, Form 10-K, at 7 (October 23, 2024), https://winnebago.gcs-web.com/static-files/8b608b9b-1616-4436-a9af-f8101c50119a (Last accessed Feb. 6, 2025) (stating that "[w]e manufacture and sell conventional travel trailers and fifth wheels under the Winnebago and Grand Design brand

2.      Defendants distribute, market and sell these RVs around the country. Many of these RVs have experienced frame failure, resulting in costly damage and safety hazards, and rendering the vehicles unroadworthy.

3.      The RV is an expensive consumer product. Defendants purport that their RVs are extremely high quality with unmatched customer service. Defendants also advertise and market the Solitude and Momentum RVs as suitable for full-time use, for families to live in and work in while travelling long distance around the country.

4.      In reality, the RVs suffer from frame failure through ordinary use (the "Frame Defect"), rendering them unroadworthy.

5.      Defendants have actual knowledge of the Frame Defect in the RVs due to direct customer complaints, warranty repairs, and numerous internet complaints, yet Defendants have failed to remedy the Frame Defect.

6.      The Frame Defect alleged is dangerous frame flex. This occurs when an RV's frame, designed to be flexible enough to absorb road shocks, bends beyond its intended limits, cracks the walls and other sections of the RV, and separates from the trailer's body. Untreated, the RV could end up deemed unroadworthy, totaled, and/or compromise the safety of passengers as well as others on the road.

7.      Repairing such a serious defect takes a significant wait time. According to reporting from Hunterbook Media, the authorized dealers and Grand Design Service Center require them to wait months on end before allowing owners to bring the RV in for repairs, plus additional months to diagnose and fix the problems, if repair is even possible. Some frame failure is beyond the

---

names" including the following models: Access, HIKE, Micro Minnie, Minnie, M-Series, Voyage, Imagine, Momentum, Reflection, Serenova, Transcend, Influence, Momentum, Reflection, and Solitude)

capacity of the dealerships to repair, which requires the RV to go to Winnebago's service center for Grand Design in Indiana.[2]

8.      While the RVs are being repaired, Class members also have to pay travel and lodging fees, which are significant for people who live in their RVs full time. Some owners cannot forego living in their RV, which they use as their home, for months on end while their RV at the dealership for repairs. These expenses are significant for the population who lives in their RV full-time: 43% of full-time RVers are retired, and 72% have an income of under $65,000 a year.[3]

9.      Meanwhile, the trade or re-sale value of the Defective RVs has diminished significantly to almost nothing, and owners are stuck with expensive, defective RVs that are unusable.

10.      On October 9, 2024, the National Highway Traffic Safety Administration initiated an Investigation of the Defective RVs (the "NHTSA Investigation"), noting that it had received twenty-three complaints regarding excessive frame flex on the Defective RVs. Twenty-two of those complaints alleged that the excessive frame flex resulted in a cargo or entry door opening while in transit, some with objects lost on roadways, while six complaints state that the slideouts extended out due to the frame flex.[4]

11.      On December 17, 2024, the NHTSA Office of Defects Investigation sent Defendants an Information Request seeking information regarding the excessive frame flex on the Defective RVs.[5]

---

[2] Jenny Ahn, Michelle Cera, Nick Gibbons, "Grand Deception" – Winnebago Muzzles Outcry over Major Problem that Owners say Makes RVs Dangerous, Untowable, Worthless, Hunterbook Media, September 23, 2024, https://hntrbrk.com/winnebago (last accessed November 22, 2024).
[3] Id.
[4] NHTSA, Frame Flex on Grand Design Fifth Wheel Recreational Trailers, October 9, 2024, nhtsa.gov/recalls?nhtsaId=PE24029 (last accessed November 22, 2024).
[5] NHTSA, Information Request ID PE24029-01, December 17, 2024, https://static.nhtsa.gov/odi/inv/2024/INIM-PE24029-28956.pdfnhtsa.gov/recalls?nhtsaId=PE24029 (last accessed February 10, 2025).

12.     The Class contends that unreasonable risk to motor vehicle safety exists because of the Defective RVs, and Defendants have failed to fix the Frame Defect. Rather than adjusting their manufacturing processes or re-designing and replacing the frame in its RVs to ensure they perform reliably and safely, and despite their knowledge of the defect and common frame flex issues, Defendants continue selling and leasing the Defective RVs with the Frame Defect.

13.     Defendants also never disclosed to Plaintiff or members of the Class that the defect exists, despite their knowledge of this defect.

14.     Plaintiff and the Class suffered economic damages as a result of Defendants' misconduct (as set forth in more detail below) and they seek, among other things, injunctive relief and restitution for the full purchase price of the RVs(s) they purchased. Plaintiff alleges the following based on personal knowledge, as well as investigation by counsel, and as to all other matters upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

15.     This Court has diversity jurisdiction pursuant to the Class Action Fairness Act, codified at 28 U.S.C. §§ 1332(d) and 1453, because the putative class consists of at least 100 Class Members; the citizenship of at least one Class Member is different from that of Defendants; and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants conduct substantial business in the State of Indiana and within this judicial district, Defendants have intentionally availed itself of the laws and markets of this district, and Defendants are subject to personal jurisdiction in this district.

3980030v2

## THE PARTIES

17.    **Named Plaintiff and Class Representative** John P. Nowak ("Plaintiff") is domiciled in Louisville, Kentucky. Plaintiff purchased and used a 2020 model-year Solitude fifth wheel RV from Grand Design in 2020. Since purchasing the RV, Plaintiff has experienced numerous problems with his RV, specifically including frame failure. As a result, Plaintiff suffered injury in fact when, absent Defendants' misconduct alleged herein, Plaintiff spent money to purchase a product he would not otherwise have purchased.

18.    **Defendant**, Grand Design RV, LLC, is an Indiana corporation and a citizen of the state of Indiana with its principal place of business located in Middlebury, Indiana. Grand Design sells RV products, including fifth wheels and travel trailers, throughout the United States, particularly including in the State of Indiana. Grand Design's RVs, including the RVs purchased by Plaintiff and the Class, are available at dealerships throughout the United States, particularly including in the State of Indiana. Thus, Grand Design avails itself to this Court by way of the facts that it is at home in Indiana and that it does business in Indiana. Grand Design is a wholly-owned subsidiary of Winnebago.

19.    **Defendant**, Winnebago Industries, Inc., hereinafter "Winnebago," is an Iowa corporation with its principal place of business located in Minnesota. Winnebago manufactures and sells RV products, including fifth wheels and travel trailers throughout the United States. Winnebago manufactures its fifth wheel RV units in the State of Indiana.[6] Winnebago also

---

[6] Winnebago Quarterly Report to SEC, Form 10-Q, at 20 (December 20, 2024), https://winnebago.gcs-web.com/static-files/9db606fc-42de-4f07-9e4c-cb32193ebdb4 (Last accessed Feb. 6, 2025) ("We produce our motorhome RV units in Iowa and Indiana; our towable RV units in Indiana; our marine units in Indiana and Florida; and our battery solutions in Florida."); Winnebago 2024 Annual Report to SEC, Form 10-K, at 7 (October 23, 2024), https://winnebago.gcs-web.com/static-files/8b608b9b-1616-4436-a9af-f8101c50119a (Last accessed Feb. 6, 2025).(" Our towable RVs are produced at two assembly campuses located in Indiana. . .Our motorhome RVs are produced in the states of Iowa and Indiana at five different assembly campuses.")

performs RV repairs at its Indiana facilities.[7] And Winnebago purports that its operations are centered in Indiana and Iowa.[8] Winnebago also regularly litigates in courts in the State of Indiana (including in this judicial district). Thus, Winnebago avails itself to this Court. Winnebago purchased Grand Design in 2016.

20.     Defendants function as a single company, financially integrated with shared executives. Donald Clark, the President of Grand Design, is on the board of directors at Winnebago.[9] Winnebago holds out Grand Design as one of its brands or trademarks and lists Grand Design as one of its eight operating segments in filings with the SEC.[10]

## FACTUAL ALLEGATIONS

### I.    Defendants' Recreational Vehicles and Their Assurance of Their Commitment to Safety.

21.     Throughout the Class period, Defendants manufactured, marketed, operated and sold travel trailers to consumers located in all 50 U.S. states and Canada. Their RVs are distributed nationwide through numerous dealers. Grand Design operates its website with a URL of www.granddesignrv.com, and Winnebago operates its website with a URL of https://www.winnebago.com/.

22.     Although RVs are routinely sold across the United States, consumers often struggle with selecting a brand or model that is suited for their family and consider numerous issues

---

[7] Winnebago 2024 Annual Report to SEC, Form 10-K, at 6.

[8] Winnebago 2024 Annual Report to SEC, Form 10-K, at 13. ("Our operations are primarily centered in northern Iowa and northern Indiana")

[9] Winnebago 2024 Annual Report to SEC, Form 10-K, at 10. (Mr. Clark, President of Grand Design RV, became an officer of Winnebago Industries in November 2016. . . Mr. Clark will become Group President, Towable RVs and President, Grand Design RV, effective November 1, 2024.").

[10] Winnebago Quarterly Report to SEC, Form 10-Q, at 8. (December 20, 2024), https://winnebago.gcs-web.com/static-files/9db606fc-42de-4f07-9e4c-cb32193ebdb4 (Last accessed Feb. 6, 2025) ("We have nine operating segments: 1) Grand Design towables, 2) Winnebago towables, 3) Winnebago motorhomes, 4) Newmar motorhomes, 5) Grand Design motorhomes, 6) Chris-Craft marine, 7) Barletta marine, 8) Winnebago specialty vehicles, and 9) Lithionics."); *id.* ("Some of the more important trademarks used in our business include Winnebago, Grand Design, . . . )

including safety, maintenance, quality, dealer warranty services, and customer service. Consumers rely on manufacturers to avoid injury and protect against defects.

23.    Grand Design launched its business in 2012. It sought to distinguish itself from the crowd by stating that "you'll find that your experience with GDRV is different" and "quality [is] at the foundation of everything we do."[11] Grand Design claims to "perform rigorous inspections" and "pay more attention to detail" than its competitors.[12] Thus, buyers feel assured that the Grand Design RVs are worth the high purchase price.

24.    Winnebago also advertises its RVs' quality as including "superior craftsmanship, advanced manufacturing technologies, and steel-focused construction to enhance safety and reliability."[13] Thus, buyers feel assured that the Winnebago RVs are worth the high purchase price.

## II.    The Frame Defect and Defendants' Knowledge and Intentional Concealment of Material Facts Relating to the Frame Defect

25.    The Frame Defect occurs when the metal frame beneath the Defective RV fifth wheel flexes to the point that structural damage occurs, costing tens of thousands of dollars to address and compromising the safety of passengers and other drivers.

26.    The Frame Defect can manifest soon after purchase. Early symptoms that the frame is failing include loose bolts and creaky floors and can escalate into broken steel frames, a compromised hitch, and detachment of the trailer living space from the frame. The interior of the Defective RVs can also be damaged, including cracked walls and cabinets and dislodged appliances.

---

[11] Grand Design RV, "Our Story," available at https://www.granddesignrv.com/our-story (last visited November 21, 2024).
[12] Id.
[13] Winnebago, Quality, https://www.winnebago.com/ (last visited November 21, 2024)

3980030v2

27.    In addition to the inconvenience and expense of moving their belongings out of the RV to allow for repairs that take weeks, if not months, many owners have had to relocate into hotels or other lodging, which Defendants did not reimburse.

28.    This defect is also dangerous. The NHTSA Investigation, which covers over 55,000 Momentum and Solitude fifth wheel RVs, states that the NHTSA

> has been in contact with both Grand Design and Lippert, the frame manufacturer. Grand Design believes that some frame flex, generally considered to be vertical movement in the upper deck area of the fifth wheel, is normal. However, Grand Design has developed a technical service bulletin (TSB), to evaluate concerns of excessive frame flex, defined as vertical movement greater than 3/8 inch. . .

> Cargo and entry doors that open and slideouts that extend while in transit increase the risk of injury or a crash. ODI is opening this Preliminary Evaluation (PE) to evaluate the severity of the potential problem and to determine whether an unreasonable risk to motor vehicle safety exists.[14]

29.    Defendants acknowledged the complaints and repair requests related to the Frame Defect in earnings calls, rallies, and public statements, demonstrating that they knew about and intentionally concealed or omitted facts relating to the Frame Defect.

30.    Defendants' misrepresentations, described below, constitute more than puffery. Instead, they made knowing, deceptive omissions and misrepresentations of fact.

31.    One of Grand Design's founders, Bill Fenech, criticized Winnebago's push to keep up with demand at the expenses of quality at this time: "The [original equipment manufacturers] made a bad mistake, they overbuilt, and they screwed themselves . . . I saw it coming, I spoke to key leaders whenever I could . . . not that I knew stuff others didn't, but I wanted them to not do what they did."[15]

---

[14]  NHTSA, Frame Flex on Grand Design Fifth Wheel Recreational Trailers, October 9, 2024, nhtsa.gov/recalls?nhtsaId=PE24029 (last accessed November 22, 2024).
[15]  Profiles in Leadership with Bill Fenech, tradeonlytoday.com/profiles-in-leadership-video-series/video-profiles-in-leadership-with-bill-fenech (8:20-8:45).

32.     Defendants have been on notice of the Frame Defect since at least 2021 based on social media discussions and the NHTSA investigation. Several Facebook groups have tens of thousands of members discussing Grand Design RV issues.

33.     The frames of the Defective RVs, along with approximately 70% of all frames for RVs sold in the United States, were built by Lippert Components Manufacturing Industries ("Lippert"). Lippert did not design the frames and was responsible for building the frames according to specifications from Defendants.

34.     On a recent 2024 earnings call, a Lippert executive noted that the Grand Design RVs had frame flex issues over the years, especially on the heavier units manufactured by Defendants.[16]

35.     Winnebago also addressed this issue on a June 20, 2024 earnings call. On that call, Mike Happe, the President and CEO of Winnebago stated that "misinformation" was disseminated on social media regarding frame flex. Happe assured investors that the Grand Design team was "collaborating directly with impacted customers to resolve and concerns" and was "working directly with [Winnebago's] frame supplier, a third-party structural engineering firm, and industry experts to continue to ensure that [Winnebago's] products and processes meet and exceed industry standards."[17]

36.     Such "collaboration" appears to include censoring impacted customers with non-disclosure agreements (NDAs) to conceal and muzzle discussion of the Frame Defect online with

---

[16]     LCI Industries Q1 2024 Earnings Call Form 8-k. https://www.publicnow.com/view/C03A98200884E113D23904F3449D1FF2B8983A34?1715291175 (last visited February 6, 2025).
[17]     Winnebago Industries Q2 2024 Earnings Call Transcript. https://www.fool.com/earnings/call-transcripts/2024/06/20/winnebago-industries-wgo-q3-2024-earnings-call-tra/#:~:text=Third%20quarter%20consolidated%20net%20revenue,adjusted%20EBITDA%20of%20%2458%20million (last visited February 6, 2025).

other customers. These NDAs require customers to remove online posts criticizing Defendants or the Defective RVs and prohibit future posts on the same topics.[18]

37.     Additionally, Defendants employ a network of "Lifestyle Ambassadors" to spread positive propaganda on the Defective RVs sponsored by Defendants. Such messaging includes written and video statements on the Ambassadors' websites and social media accounts.[19]

38.     In March 2024, Winnebago issued a technical service bulletin ("TSB") regarding the Frame Defect to its service technicians and dealers. Winnebago did not notify customers and Class Members of same, and the TSB does not require Defendants to pay for repairs.

## III.    The Representative Transaction and Manifestation of the Frame Defect

39.     Plaintiff is the original retail consumer purchaser of his RV.

40.     Plaintiff purchased his 2020 Grand Design 3740BH-R Solitude RV (unit number 573FS4228L9905119) on June 12, 2020 from Summit R.V. in Ashland, Kentucky for a total of $57,226.28.

41.     Both Grand Design and Winnebago's websites direct customers to purchase their RVs at Summit RV.[20]

42.     In early 2022, Plaintiff noticed a manufacturing problem with the plumbing in his RV. He took his RV in for repairs to the plumbing.

43.     While Plaintiff's RV was in Grand Design's possession at the Grand Design RV Service Shop at 5200 Hoffman Street, Elkhart, Indiana 46516, Grand Design tested and repaired the plumbing issues.

---

[18] Jenny Ahn, Michelle Cera, Nick Gibbons, "Grand Deception" – Winnebago Muzzles Outcry over Major Problem that Owners say Makes RVs Dangerous, Untowable, Worthless, Hunterbook Media, September 23, 2024, https://hntrbrk.com/winnebago (last accessed November 22, 2024).
[19] *Id.*
[20] Grand Design RV, "Find a GDRV Dealer," granddesignrv.com/shopping-tools/find-a-dealer.html (last visited November 21, 2024). Winnebago, "Locate Dealer," https://www.winnebago.com/shopping-tools/locate-a-dealer (last visited November 21, 2024).

44.     At the same time, Grand Design replaced Plaintiff's RV's axels, bearings, seals, leaf springs, and brakes. Plaintiff did not request these additional repairs.

45.     Grand Design never asked Plaintiff if he wanted these extra repairs done, and despite Plaintiff's queries about why they were completed, Grand Design never explained why it undertook additional, seemingly precautionary repairs.

46.     Plaintiff still awaits a response from Grand Design as to why it made those structural repairs.

47.     At the time, Plaintiff did not know, and had no reason to think, that these additional repairs were related to a widespread Frame Defect present in the Solitude and Momentum models.

48.     Plaintiff now believes that these repairs were Grand Design's first attempt at concealing the Frame Defect of which Grand Design was aware in the Solitude and Momentum models.

49.     September 2024 marked the first time that Plaintiff became aware of the Frame Defect in his RV, when he noticed issues with the shelving and cabinetry in his RV.

50.     In hindsight, however, Plaintiff believes that the other issues Grand Design repaired previously were also related to the Frame Defect. Plaintiff notes, however, that Defendants did not previously disclose to Plaintiff that there were any issues whatsoever with the frame on his RV.

51.     Plaintiff reached out to Defendants regarding his frame flex concerns on September 30, 2024, and Defendants' representative advised him to take the RV to Stinnett's Campers Inn RV ("Campers Inn") in Clarksville, Indiana.

11

52.     Plaintiff had to wait almost a month for Campers Inn to have availability to take his RV for repair.

53.     Finally, after Campers Inn was able to accept his RV for repair, Plaintiff dropped off the RV for repair on October 28, 2024.

54.     On November 5, 2024, the Campers Inn service representative confirmed the frame failure to Plaintiff. The representative diagnosed the frame failure by the distance of the pin box to the ground on the driver's and passenger's sides. They also discovered cracks in the welds on the frame including several missing bolts on the bottom of the frame and on the interior side of the frame on both the driver's and passenger's sides.

55.     In December 2024, a representative from Campers Inn notified Plaintiff that the RV was ready for pickup.

56.     Campers Inn had added multiple bolts to attach the frame to the body of the camper to get the tolerance of the frame flex within safe levels. However, the bolts were too long, causing a puncture to the fiberglass exterior.

57.     Further, the RV was still damaged from the Frame Defect: cabinets were broken and more cracks appeared in the exterior. Defendants' approved repair center was unable to cure the defect that Defendants had attempted to conceal two years prior.

58.     Thus, the repair center kept Plaintiff's RV to continue to attempt to repair the RV.

59.     On January 11, 2024, Counsel for Defendants contacted undersigned counsel to advise that the repair center was unable to complete the Frame Defect repairs, so Defendants claimed to need to take Plaintiff's unit back to the Grand Design factory in Indiana to replace an entire wall on the side of the RV ("complete a sidewall replacement").

60. Defendants did not pick up Plaintiff's RV from Campers Inn for transport to their facilities until January 27, 2025.

61. Plaintiff's RV is located in Indiana and has been at Grand Design's repair center in Indiana since January 2025. From October 2024 to January 2025, the RV was also located in Indiana, at Campers Inn.

62. Plaintiff has been unable to use his RV, and the frame flex defect still exists in his RV since he provided notice to Defendants of the issue, over four months ago.

63. Had Plaintiff known the truth about Defendants' defective RV design, failure to inspect the frame, and inability to cure the Frame Defect, he would not have purchased the RV from Defendants.

## TOLLING, CONCEALMENT, AND ESTOPPEL

64. The applicable statutes of limitation have been tolled as a result of Defendants' knowing and active concealment and denial of the facts alleged herein.

65. Plaintiff and Class Members could not with due diligence have discovered the full scope of Defendants' conduct, because there were no disclosures or other indication that they were purchasing RVs with unsafe, defective frames.

66. All applicable statutes of limitation have also been tolled by operation of the discovery rule and the doctrine of continuing tort. Defendants' marketing and selling of defective RVs has continued unabated through the present, despite their knowledge of the dangerous

Frame Defects. Defendants are therefore estopped from relying on any statute of limitations defenses.

## CLASS ALLEGATIONS

67.    Plaintiff brings this action on behalf of himself and all others similarly situated. The proposed class (the "National Class" or the "Class") is defined as follows:

> All persons who purchased Defendants' Solitude and Momentum RVs in Model Years 2017 to 2024 in the United States.

> Excluded from the Class are Defendants, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

68.    **Numerosity and Ascertainability.** Members of the Class are so numerous that joinder is impracticable. Plaintiff does not know the exact size of the Class but believes that there are at least thousands of class members who have been damaged by Defendants' conduct as alleged herein. As such, a class action is superior to other methods of adjudication due to its capacity for efficiency and its preservation of judicial economy. The exact size of the proposed Class, and the identity of the members thereof, will be readily ascertainable from the business records of Grand Design, Winnebago, and their authorized dealers. Members of the Class are readily ascertainable from information and records in Defendants' possession, custody, or control.

69.    **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class were damaged by the same wrongful conduct of Defendants. Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class. Accordingly, by proving his own claims, Plaintiff will prove other class members' claims as well.

14

70.    **Adequacy of Representation.** Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the Class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to those here and have the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

71.    **Commonality and Superiority.** Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all Class members involve the same alleged defect. These common legal and factual questions include the following:

a.    whether the Defective RVs contain a defect;

b.    whether the Defective RVs are fit for their intended purpose;

c.    whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

d.    whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

72.    A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus

15

be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

73.     The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

74.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, such as continuing to market and sell the Defective RVs that have Frame Defects, and requiring Defendants to provide a full refund of the purchase price of the Products to Plaintiff and Class members.

75.     Unless a class is certified, Defendants will retain monies received as a result of their conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

76.     Plaintiff reserves the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## FIRST CAUSE OF ACTION

**VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT ("IDCSA")**
**IND. CODE § 24-5-0.5 ET SEQ.**
**Against Defendants on Behalf of Plaintiff, Individually and on behalf of the Class**

77.     Plaintiff incorporates all of the above allegations of fact, as if they were asserted within this Cause of Action.

78.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants for violations of the IDCSA.

79.     Defendants are "suppliers" as defined by the IDSCA because they are either sellers, assignors, or other persons who regularly engage in or solicit customer transactions or manufacturers, wholesalers, or retailers, whether or not Defendants deal directly with the consumer.

80.     Defendants' actions constitute both uncured deceptive acts and incurable deceptive acts.

81.     Plaintiff has complied with the notice requirement for an uncured deceptive act.

82.     Defendants have failed to repair the Frame Defect within a reasonable time after Plaintiff accepted Defendants' offer to cure.

83.     Specifically, Plaintiff reiterates that Defendants engaged in numerous specific incurable or uncured deceptive acts regarding the safety of the Defective RVs, as detailed above, as well as deceptive omissions of disclosure about sufficiency of the RV's frame.

84.     Defendants have a statutory duty pursuant to the IDSCA not to engage in unfair, abusive deceptive acts, omissions, or practice in connection with a consumer transaction, including both implicit and explicit misrepresentations that occur before, during, or after the transaction. Ind. Code 24-5-0.5-3(a).

85.     Defendants have engaged in unfair, abusive, or deceptive acts and practices in the conduct of its trade and commerce by, *inter alia*, manufacturing and marketing the Defective RVs despite knowledge of their Frame Defect. Defendants represented that the Defective RVs

and their frames were of a particular standard, quality or grade, when they were not, and Defendants knew or reasonably should have known that the Defective RVs did not meet that standard, quality, or grade. Defendants also acted to conceal the Frame Defect from Plaintiff and the Class.

86.     Plaintiff and the Class have suffered an ascertainable loss of money due to the knowing and intentional representations of safety and omission of disclosure of the actual or potential Frame Defect of their RVs, vehicles which they would not have purchased had those representations and omissions not occurred.

87.     Pursuant to IDSCA, Plaintiff and the Class are entitled to recover their actual damages, plus treble damages for Defendants' willful deceptive acts, reasonable attorneys' fees, and costs.

## SECOND CAUSE OF ACTION

### BREACH OF IMPLIED WARRANTY UNDER INDIANA LAW
### Against Defendants on behalf of Plaintiff, Individually, and on Behalf of the Class

88.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

89.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants for breach of implied warranty of merchantability.

90.     The Defendants impliedly warranted that the Class's RVs, which Defendants designed, manufactured, and sold, were merchantable and fit and safe for ordinary use, not otherwise injurious to consumers, and would come with adequate safety warnings.

91.     Because of the Frame Defects, which Defendants willfully withheld information about, the Class's RVs are unsafe and unfit for use, causing economic loss to the Class. Therefore, Defendants breached the implied warranty of merchantability.

92.    The damages the Class has suffered are a direct and proximate result of Defendants' actions in this matter and include, but are not limited to, diminution in value of the vehicle; costs of repairs; expenses associated with returning the vehicle for repeated repair attempts; loss of wages; loss of use; damages; and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as to each count, including:

A.    An order certifying this action as a class action, certifying the Class requested herein, designating Plaintiff as the representative of the Class, appointing Plaintiff's counsel as counsel to the Class, and requiring Defendants to bear the costs of a class action;

B.    An order declaring that Defendants' actions constitute: (1) violations of the Indiana Deceptive Consumer Sales Act and (2) a breach of the implied warranty of merchantability under Indiana law; and that Defendants are liable to Plaintiff, members of the Class, as described herein, for the relief arising therefrom;

C.    An order enjoining Defendants from selling the Defective RVs as the Court may deem proper.

D.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

E.    A judgment awarding Plaintiff and members of the Class all appropriate economic, monetary, actual, statutory, consequential damages, in an amount to be determined at trial;

F.    A judgment awarding Plaintiff and members of the Class restitution and/or disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiff and members of the Class as the result of their unlawful and unfair business practices described herein;

G.    A judgment awarding Plaintiff and members of the Class prejudgment and post-judgment interest, as permitted by law;

H.    A judgment awarding Plaintiff and members of the Class treble damages, as allowed by law;

I.    A judgment awarding Plaintiff and members of the Class costs and fees, including attorneys' fees, as permitted by law; and

J.    For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all claims so triable.

FISHMAN HAYGOOD LLP

*/s/ Jason W. Burge*
STEPHEN J. HERMAN (*PRO HAC VICE* PENDING)
LANCE C. MCCARDLE (*PRO HAC VICE*)
JASON W. BURGE (*PRO HAC VICE*)
MAGGIE M. DALY (*PRO HAC VICE*)
**FISHMAN HAYGOOD, L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 586-5252
Fax:  (504) 586-5250
sherman@fishmanhaygood.com
lmccardle@fishmanhaygood.com
jburge@fishmanhaygood.com
mdaly@fishmanhaygood.com

20

AND

Fred Schultz, #19554-53
Greene & Schultz Trial Lawyers
520 N Walnut Street
Bloomington, IN 47404
Telephone:  (812) 336-4357
Facsimile:   (812) 336-5615
E-Mail: fred@greeneschultz.com

***Attorneys for Plaintiff and Putative Class***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 11, 2025, a copy of the foregoing has been furnished to all counsel of record via ECF.

*/s/ Jason W. Burge* _____