**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| JOHN P. NOWAK, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiffs, | Civil Action No: 3:24-cv-00950 |
| v. | Judge Philip P. Simon |
| GRAND DESIGN RV, LLC, and WINNEBAGO INDUSTRIES, INC., | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................ 1

II.   Facts Alleged & Procedural Posture ................................................................. 2

      A.   Plaintiff and the Subject RV .................................................................. 2

      B.   Individual and Putative Class Claims .................................................... 3

      C.   The Lawsuit ........................................................................................... 5

III.  Legal Framework .............................................................................................. 5

IV.   Argument .......................................................................................................... 6

      A.   Plaintiff has not established personal jurisdiction over Winnebago. ........... 7

            1.    Winnebago is not subject to general personal jurisdiction in
                  Indiana. ................................................................................... 7

            2.    Winnebago is not subject to specific personal jurisdiction in
                  Indiana in this case. ............................................................... 8

      B.   Plaintiff lacks standing to assert claims on behalf of Momentum RV
           purchasers. ............................................................................................ 10

      C.   Plaintiff's attempt to assert claims under Indiana law on behalf of
           absent class members violates due process. .......................................... 11

      D.   Plaintiff fails to state an individual claim under the IDCSA. .................... 13

            1.    Plaintiff fails to plead reliance on any actionable deceptive act. ........ 14

            2.    Plaintiff fails to plead notice and an opportunity to cure any
                  alleged "uncured" deceptive act. ........................................... 16

            3.    Plaintiff fails to plead any incurable deceptive act with
                  particularity. ........................................................................... 18

      E.   Plaintiff's implied warranty claim suffers from numerous defects and
           must be dismissed. ............................................................................... 19

            1.    Plaintiff's warranty claim fails for lack of vertical privity under
                  Kentucky law. .......................................................................... 19

            2.    Even if Indiana substantive law applied, Plaintiff's warranty
                  claim fails for lack of notice and a reasonable opportunity to
                  cure. ........................................................................................ 21

            3.    Under Indiana procedural law, Plaintiff's implied warranty
                  claim is time barred. ............................................................... 22

V.    Conclusion ....................................................................................................... 25

TABLE OF AUTHORITIES

**Page**

**Cases**

*A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*,
    500 N.E.2d 1257 (Ind. Ct. App. 1986) .................................................................. 16

*AnchorBank, FSB v. Hofer*,
    649 F.3d 610 (7th Cir. 2011) ........................................................................ 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................... 6

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) ................................................................. 18, 19

*Benson v. Fannie May Confections Brands, Inc.*,
    No. 17 C 3519, 2018 WL 1087639 (N.D. Ill. Feb. 28, 2018)................................... 11

*Bitler Inv. Venture II, LLC v. Marathon Ashland Petrol., LLC*,
    779 F. Supp. 2d 858 (N.D. Ind. 2011) ........................................................ 23

*Bristol-Myers Squibb Co. v. Superior Court*,
    582 U.S. 255 (2017)................................................................................... 9

*Calder v. Jones*,
    465 U.S. 783 (1984)................................................................................. 10

*Carrol v. S.C. Johnsons & Son, Inc.*,
    No. 17 CV 05828, 2018 WL 1695421 (N.D. Ill. Mar. 29, 2018) ........................... 11

*Castagna v. Newmar Corp.*,
    340 F. Supp. 3d 728 (N.D. Ind. 2018) ....................................................... 15

*Compex Intern. Co. v. Taylor*,
    209 S.W.3d 462 (Ky. 2006) .................................................................. 20, 21

*Daimler Ag. v. Bauman*,
    571 U.S. 117 (2014)............................................................................... 7, 8

*DeMoss ex rel. DeMoss v. Eli Lilly & Co.*,
    234 F. Supp. 3d 873 (W.D. Ky. 2017) ....................................................... 21

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938).................................................................................. 20

*Flaherty v. Clinique Labs. LLC*,
    No. 1:21-CV-03447, 2021 WL 5299773 (N.D. Ill. Nov. 15, 2021) ....................... 10

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
    592 U.S. 351 (2021)................................................................................ 8, 9

*Frank v. P N K (Lake Charles) L.L.C.*,
    947 F.3d 331 (5th Cir. 2020) ..................................................................... 8

*Freese-Pettibon ex rel. O'Mealy v. Nexus RVs, LLC*,
    701 F. Supp. 3d 757 (N.D. Ind. 2023) ................................................................. 21

*Gen. Motors Corp. v. Sheets*,
    818 N.E.2d 49 (Ind. Ct. App. 2004) .................................................................... 22

*Goodyear Dunlop Tires Ops. S.A. v. Brown*,
    564 U.S. 915 (2011) ................................................................................. 7, 8, 9

*Hanson v. Denckla*,
    357 U.S. 235 (1958) ........................................................................................ 9

*Hash v. First Fin. Bancorp*,
    No. 1:20-CV-1321 RLM-MJD, 2021 WL 859736 (S.D. Ind. Mar. 8, 2021) .................. 18

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ........................................................................................ 7

*Hyundai Motor Am., Inc. v. Goodin*,
    822 N.E.2d 947 (Ind. 2005) ............................................................................. 19

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) .......................................................................... 13

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
    177 F.R.D. 360 (E.D. La. 1997) ........................................................................ 13

*James v. S. Univ., LLC*,
    No. 3:16-CV-855 JD, 2018 WL 11448005 (N.D. Ind. Mar. 13, 2018) ...................... 14

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ........................................................................................ 8

*Kentucky Nat'l Ins. Co. v. Empire Fire and Marine Ins. Co.*,
    919 N.E.2d 565 (Ind. Ct. App. 2010) ................................................................. 20

*Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*,
    134 N.E.3d 370 (Ind. 2019) ........................................................................ 23, 25

*Kesling v. Hubler Nissan, Inc.*,
    997 N.E.2d 327 (Ind. 2013) ............................................................................. 15

*Kurtz v. Jayco Inc.*,
    No. 3:20-CV-281,  2023 WL 5898512 (N.D. Ind. Sept. 7, 2023) ........................... 21

*Large v. Mobile Tool Int'l, Inc.*,
    724 F.3d 766 (7th Cir. 2013) ........................................................................... 20

*Lehman v. Shroyer*,
    721 N.E.2d 365 (Ind. Ct. App.1999) ................................................................. 16

*LinkAmerica Corp. v. Cox*,
    857 N.E.2d 961 (Ind. 2006) .............................................................................. 7

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 10

*Lyons v. Richmond Cmty. Sch. Corp.*,
  19 N.E.3d 254 (Ind. 2014) ................................................................ 23

*Malachowski v. Bank One*,
  590 N.E.2d 559 (Ind. 1992) .............................................................. 24

*Mathews v. REV Recreation Grp.*,
  931 F.3d 619 (7th Cir. 2019) ...................................................... 17, 22

*McKinney v. States*,
  693 N.E.2d 65 (Ind. 1998) .......................................................... 17, 18

*Perkins v. Benguet Consolidated Mining Co.*,
  342 U.S. 437 (1952) ............................................................................ 8

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) .................................................................... 12, 13

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ........................................................ 5, 9

*Reger v. Ariz. RV Ctrs., LLC*,
  515 F. Supp. 3d 915 (N.D. Ind. 2021) ............................................. 21

*Rogers v. City of Hobart*,
  996 F.3d 812 (7th Cir. 2021) ............................................................. 9

*Shearer v. Thor Motor Corp.*,
  470 F. Supp. 3d 874 (N.D. Ind. 2020) .................................. 20, 23, 25

*Smith v. Nexus RVs, LLC*,
  468 F. Supp. 3d 1012 (N.D. Ind. 2020) ........................................... 21

*State v. Classic Pool & Patio, Inc.*,
  777 N.E.2d 1162 (Ind. Ct. App. 2002) ............................................ 15

*Stumler v. Ferry-Morse Seed Co.*,
  644 F.2d 667 (7th Cir. 1981) ........................................................... 23

*Thornton v. CMB Entm't, LLC*,
  309 F.R.D. 465 (S.D. Ind. 2015) ..................................................... 18

*Veal v. First Am. Bank*,
  914 F.2d 909 (7th Cir. 1990) ........................................................... 18

*Viacom, Inc. v. Harbridge Merch. Servs., Inc.*,
  20 F.3d 771 (7th Cir. 1994) ............................................................. 18

*Zylstra v. DRV*, LLC,
  No. 1:18-CV-266, 2020 WL 2526491 (N.D. Ind. May 18, 2020),
  *aff'd*, 8 F.4th 597 (7th Cir. 2021) .............................................. 18, 22

**Other Authorities**

Ind. Code § 24-5-0.5-2(a)(7) ................................................................ 14

Ind. Code § 24-5-0.5-2(a)(8) ........................................................ 14, 18

Ind. Code § 24-5-0.5-4 ........................................................................................ 13, 15

Ind. Code § 24-5-0.5-4(a) .......................................................................................... 16

Ind. Code § 24-5-0.5-5(b) .......................................................................................... 15

Ind. Code § 26-1-2-725(1) .......................................................................................... 23

Ind. Code § 26-1-2-725(2) .......................................................................................... 23

**Rules**

Fed. R. Civ. P. 12(b)(2) ........................................................................................... 5, 25

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 13, 25

Fed. R. Civ. P. 9(b) ................................................................................... 6, 14, 18, 19

Ind. Trial R. 4.4(A) ...................................................................................................... 7

Ind. Trial R. 9(B) ...................................................................................................... 18

## I.      Introduction

Confronted with multiple jurisdictional and pleading deficiencies in the initial complaint, Plaintiff declined to defend those allegations and instead filed a First Amended Class Action Complaint. Unfortunately for Plaintiff, the allegations as amended are equally deficient, do not state any claims for relief, and are subject to dismissal.

To start, Plaintiff fails to demonstrate that Winnebago Industries, Inc. ("Winnebago") is subject to either general or specific personal jurisdiction in this Court in this case. The allegations do not establish that Winnebago is "at home" in Indiana, nor do they demonstrate that Winnebago undertook any conduct relating to this lawsuit in Indiana. Thus, Winnebago must be dismissed for lack of personal jurisdiction.

Plaintiff also lacks standing to assert claims on behalf of purchasers of Momentum model RVs because he never purchased this model RV himself. Thus, any claims relating to Momentum RVs should be excluded. Separately, Plaintiff may not assert claims on behalf of a nationwide class exclusively under Indiana law without violating the Due Process Clause. There are substantive conflicts of law between Indiana and other interested states, and the absent class members had no expectation that whatever claims they may have would be adjudicated under Indiana law. In these circumstances, due process does not permit class claims to be maintained exclusively under the law of a single jurisdiction, requiring dismissal of Plaintiff's class claims.

On the merits, Plaintiff's individual claims fail as a matter of law. His newly-raised count under the Indiana Deceptive Consumer Sales Act ("IDCSA") fails to state a claim upon which relief may be granted for several reasons. First, Plaintiff failed to provide pre-suit notice of any "uncured" deceptive act or to plead with particularity a deceptive act sounding in fraud. Second, Plaintiff failed to allege that he relied on any actionable deceptive act by Defendants. These are

independent bases to dismiss Plaintiff's IDCSA claim and, by extension, the putative class claim.

Plaintiff's implied warranty claim also fails for several reasons. First, despite his attempt to plead otherwise, an Indiana choice-of-law analysis shows that Kentucky law applies to Plaintiff's claim for breach of implied warranty, and Kentucky requires vertical privity between a buyer and seller. Because Plaintiff alleges that he bought the RV from a dealer—not either Defendant—lack of privity dooms his claim. Second, even if Indiana substantive law did apply to a transaction that occurred in Kentucky between a Kentucky resident and a Kentucky dealer, Plaintiff's claim would fail for lack of pre-suit notice and a reasonable opportunity to cure. Further, regardless of which state's substantive law applies, Plaintiff's implied warranty claim is barred by the statute of limitations under Indiana procedural law. Plaintiff failed to file suit within four years of purchase and his allegations confirm that the statute of limitations was not tolled.

Plaintiff has had an opportunity to amend and has still come up short. The IDCSA and implied warranty claims against Defendants Winnebago and Grand Design RV, LLC ("Grand Design") should be dismissed with prejudice for failure to state a claim. Winnebago should also be dismissed because it is not subject to personal jurisdiction in this Court in this case. For these reasons, and as further explained below, Defendants' motion should be granted.

## II.    Facts Alleged & Procedural Posture

### A.  Plaintiff and the Subject RV

Plaintiff John Nowak alleges that, in June 2020, he purchased a recreational vehicle (the "Subject RV") that was manufactured by Defendant Grand Design and sold through third-party dealer Summit RV in Ashland, Kentucky. (Am. Compl., ECF No. 21, ¶¶ 17−18, 39−40.) He contends that the Subject RV experienced issues with "excessive frame flex" (the alleged "Frame Defect"), which purportedly occurs when a vehicle frame "bends beyond its intended limits," and can cause "cracks [in] the walls and other sections of the RV" and separate the structure of the RV

from the body of the trailer. (*Id.*, ¶ 6.)

Plaintiff alleges that he became aware of the supposed Frame Defect in September 2024, when investigating issues with the shelving and cabinetry in his RV. (*Id.*, ¶ 49.) He claims to have reached out to Grand Design on September 30, 2024, regarding concerns with alleged frame flex and dropped the Subject RV off for repairs at a dealership on October 28, 2024. (*Id.*, ¶¶ 51, 53.) The dealership reinforced the frame of the Subject RV to correct the alleged frame flex, but Plaintiff claims that, in the process, the repair center punctured the fiberglass exterior and broke cabinets. (*Id.*, ¶ 57.) Ultimately, Grand Design arranged for the Subject RV to undergo a complete sidewall replacement at its factory in January 2025. (*Id.*, ¶ 59.) Plaintiff claims that the Subject RV remained at Grand Design's facility as of February 11, 2025. (*Id.*, ¶ 61.)

### B. Individual and Putative Class Claims

Plaintiff now seeks to assert two claims individually and on behalf of a nationwide class of RV purchasers: (1) under the Indiana Deceptive Consumer Sales Act; and (2) for breach of the implied warranty of merchantability under Indiana common-law. (*Id.*, ¶¶ 77−87, 88−92.) Plaintiff's proposed class includes not just purchasers of Solitude model RVs like his, but also purchasers of a different Grand Design RV model named Momentum. (*Id.*, ¶ 67.) Notably, Plaintiff does not allege that he has purchased, or has any experience whatsoever, with a momentum RV. Plaintiff contends that he and the putative class members have been harmed by the alleged Frame Defect because they have lost the use of their RVs during repairs, and the existence of the alleged Frame Defect has diminished the resale value for Solitude and Momentum RVs. (*Id.*, ¶¶ 9, 62−63.)

According to Plaintiff, Grand Design made several representations as to the quality of its RVs that induced customers to buy them, including that: (1) Grand Design is "different" than other RV manufacturers; (2) "quality is the foundation of everything" that Grand Design does; and (3) Grand Design performs rigorous inspections and pays more attention to detail than its

competitors. (*Id.,* ¶ 23.)[1] Plaintiff further claims that Defendants did not disclose the alleged Frame Defect to their customers, although he admits that Winnebago "acknowledged the complaints . . . related to the Frame Defect in earnings calls, rallies, and public statements," and issued a technical bulletin addressing the alleged Frame Defect. (*Id.*, ¶¶ 29, 35, 38.)

Beyond these allegations, Plaintiff cites to public commentary and media coverage related to alleged excessive frame flex that post-date his purchase of the Subject RV and are not statements by Defendants. For instance, Plaintiff cites an interview given by Bill Fenech, a Grand Design founder, in October 2024—long after Mr. Fenech left the company. Plaintiff takes out of context an exchange between the host and Mr. Fenech related to an oversupply of RVs during COVID. (*See id.*, n.15.) He also cites to a 2024 earnings call with Lippert (a Grand Design frame supplier), which supposedly acknowledged issues with excessive frame flex in Grand Design RVs. (*Id.*, ¶ 34.) And finally, he cites online blog posts by third parties allegedly covering Grand Design's response to complaints of frame flex. (*Id.*, ¶¶ 36−37.)

Plaintiff brings his claims against Grand Design and Winnebago, though he does not allege that Winnebago had any involvement in the design, manufacture, sale, or distribution of the Subject RV. Instead, he attempts to bind Winnebago to the conduct at issue through conclusory allegations that: (1) eight separate entities within Winnebago's corporate umbrella "function as a single company" due to integrated finances; and (2) Grand Design's President, Donald Clark, sits on Winnebago's Board of Directors.[2] (*Id.*, ¶ 20.)

---

[1] Plaintiff alleges that Winnebago directly advertises that certain other RVs—***not*** the Momentum or Solitude models—have "superior craftsmanship, advanced manufacturing technologies, and steel-focused construction to enhance safety and reliability." (*Id.*, ¶ 24.) Winnebago's alleged characterizations of other RVs, manufactured by a company other than Grand Design, could not possibly be relevant to customers' decisions to purchase the Grand Design models at issue here.

[2] While this allegation is inconsequential to the ultimate analysis of jurisdiction, it is incorrect. Mr. Clark is not on Winnebago's Board of Directors. *See About Us — Leadership*, Winnebago

### C.  The Lawsuit

Plaintiff filed suit on November 22, 2024, asserting a Kentucky Consumer Protection Act ("KCPA") claim on his own behalf, and a claim for breach of implied warranty on behalf of either a nationwide class of Solitude and Momentum RV purchasers, or a Kentucky sub-class. (Compl., ECF No. 1, ¶¶ 43−33.) Defendants moved to dismiss and Plaintiff responded by filing a First Amended Class Action Complaint. (*See* ECF Nos. 13−14, 21.) In the Amended Complaint, Plaintiff abandons his KCPA claim and instead raises a claim under the IDCSA. He also maintains a claim for breach of implied warranty of merchantability, purportedly under Indiana law—despite being a Kentucky resident and purchasing the Subject RV in Kentucky, from a Kentucky dealer. (Am. Compl., ECF No. 21, ¶ 40.) Defendants move to dismiss the Amended Complaint for lack of personal jurisdiction as to Winnebago, and for failure to state a claim as to both Defendants.

### III.    Legal Framework

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Similarly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.

---

Industries, *available at* https://www.winnebagoind.com/about-us/leadership (last accessed Feb. 25, 2025).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## IV.    Argument

The Amended Complaint is deficient in numerous respects and must be dismissed. To start, Plaintiff has not pleaded any facts that would give rise to personal jurisdiction over Winnebago. Plaintiff's allegations establish only that Winnebago is a parent company of Grand Design, and is incorporated and headquartered in states other than Indiana. Winnebago is not alleged to have had any involvement in the manufacture, sale, or distribution of the Subject RV, the other Solitude RVs, or any Momentum RVs. With no alleged contacts between Winnebago and Indiana relating to the Subject RV— or any of the other allegedly defective RVs—Winnebago should be dismissed.

There are also prudential issues with Plaintiff's attempt to maintain a nationwide claim under consumer protection statutes and for breach of implied warranty. For one, Plaintiff does not have standing to pursue claims on behalf of a class of Momentum RV purchasers when he has no personal experience with Momentum RVs. Additionally, Plaintiff's attempt to maintain a nationwide class exclusively under Indiana substantive law violates Defendants' rights under the Due Process Clause. For these reasons, Plaintiff's class claims should be dismissed in their entirety or, alternatively, narrowed to exclude claims arising from Momentum RVs.

On the merits, Plaintiff's claim under the IDCSA fails because he has not pleaded reliance, nor alleged any actionable deceptive act by the Defendants that induced him to purchase the Subject RV, and has not stated the claim with particularly under Rule 9(b) to the extent he is claiming an incurable act. The only pre-sale conduct Plaintiff invokes involves generalized statements regarding the quality of Grand Design RVs, which are not actionable under the IDCSA.

6

Plaintiff's implied warranty claim fails because of his inability to establish privity with Defendants as required under Kentucky law, which applies to his purchase of the Subject RV. Even if the Court were to apply Indiana law, Plaintiff's implied warranty claim fails because his allegations reveal a failure to provide a reasonable opportunity to cure. Further, under either Kentucky or Indiana law, Plaintiff's implied warranty claim is barred by the applicable statute of limitations.

### A. Plaintiff has not established personal jurisdiction over Winnebago.

A federal district court in Indiana may exercise jurisdiction over an out-of-state defendant, like Winnebago, only if doing so is consistent with the state's long-arm statute and due process.[3] To satisfy due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (citation omitted). As the Supreme Court has long explained, due process may be satisfied through general or specific personal jurisdiction. *See id.* Plaintiff unsuccessfully attempts to invoke both here.

### 1. Winnebago is not subject to general personal jurisdiction in Indiana.

General jurisdiction exists "only when a defendant is 'essentially at home' in the State." *Goodyear Dunlop Tires Ops. S.A. v. Brown*, 564 U.S. 915, 919 (2011). In all but the most extraordinary cases, a corporation is at home only in its place of incorporation and principal place of business. *See Daimler Ag. v. Bauman*, 571 U.S. 117, 139 (2014). Plaintiff alleges that Winnebago "is an Iowa corporation with its principal place of business located in Minnesota." (Am. Compl., ECF No. 21, ¶ 19.) Thus, the usual grounds for general jurisdiction do not apply.

---

[3] Indiana's long-arm statute provides, in part, that an Indiana court "may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Ind. Trial R. 4.4(A). Trial Rule 4.4(A) "reduce[s] analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 967 (Ind. 2006).

Plaintiff insists, however, that this may be the ***exceptional*** case where a corporation's operation in another forum "may be so substantial and of such a nature to render the corporation at home in that state." (Pl.'s Opp'n to MTD, ECF No. 22 at 4 (quoting *Daimler*, 571 U.S. at 139 n.19.)) However, no court has ***ever*** determined that Winnebago is subject to general personal jurisdiction in Indiana post-*Goodyear*. Further, an "exceptional" case has been recognized only once by the Supreme Court: *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). There, the defendant Benguet was formed in the Philippines, where it operated gold and silver mines. *Id*. at 439. Benguet ceased mining operations during the Japanese occupation in World War II, and its president moved to Ohio where he kept an office, maintained the company's files, and oversaw the company's activities. *Id*. at 447−48. The Supreme Court held that Benguet was subject to general personal jurisdiction in Ohio because it was "the corporation's principal, if temporary, place of business." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780, n.11 (1984); *see also Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 337−38 (5th Cir. 2020) (defendant's routine business activities were "not of the exceptional nature such that [it] could be found to be 'at-home' in Texas."). The facts alleged here bear no resemblance to the remarkable circumstances that subjected Benguet to general jurisdiction in Ohio. Rather, this is the run-of-the-mill case where a corporation's alleged ordinary business activity is insufficient to give rise to general jurisdiction. (*See* Am. Compl., ECF No. 21, ¶ 19 (Indiana contacts pleaded include only alleged manufacturing of fifth-wheel RV units not at issue in this case, repairs, and other unrelated litigation).

### 2. Winnebago is not subject to specific personal jurisdiction in Indiana in this case.

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 352 (2021). It is well-settled law that, "[i]n order for a court to exercise specific jurisdiction

over a claim, there must be an affiliation between the forum and the underlying controversy, principally an activity or an occurrence that takes place in the forum state." *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 264 (2017) (quoting *Goodyear Dunlop*, 564 U.S. at 919) (cleaned up). Because of this, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id*. at 262 (quotation marks omitted). Thus, "[w]hen there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the state." *Id*. at 264 (citing *Goodyear*, 546 U.S. at 931 n.6).

To establish specific personal jurisdiction, plaintiff must show that the defendant undertook "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State," and his "claims must arise out of or relate to the defendant's contacts" with the forum. *Ford Motor Co.*, 592 U.S. at 359 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958) and *Bristol-Myers*, 582 U.S. at 264) (quotation marks and alterations omitted). It is a two-part test. Plaintiff "must demonstrate that his claims arise out of [Winnebago's] contacts with [Indiana] and that those contacts are constitutionally sufficient." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021). He has not done so here.

Plaintiff's primary basis for specific personal jurisdiction is that Winnebago and Grand Design allegedly "function as a single company, financially integrated with shared executives." (Am. Compl., ECF No. 21, ¶ 20.) But the type of ordinary parent-subsidiary relationship that Plaintiff alleges is not enough to impute a subsidiary's connection with a forum to the parent company. *Purdue Res. Found.*, 338 F.3d at 778 n.17 (applying "general rule" that "the jurisdictional contacts of a subsidiary corporation are not imputed to the parent" to affirm dismissal of corporate parent for lack of personal jurisdiction). Subjecting Winnebago to jurisdiction in

9

Indiana because of Grand Design's contacts would require a showing that Winnebago exerts an "unusually high degree of control" over Grand Design, such that Grand Design's corporate existence "is simply a formality." *Id.* Plaintiff has not even attempted to accomplish this.

Accordingly, the general rule—that "each defendant's contacts with the forum State must be assessed individually"—applies here. *Calder v. Jones*, 465 U.S. 783, 790 (1984). And when Winnebago's alleged contacts are assessed individually, it plainly has not undertaken any suit-related conduct in Indiana. At most, Plaintiff alleges that Winnebago makes its own separate fifth-wheel RVs in Indiana (which it does not) and performs RV repairs in Indiana. (Am. Compl., ECF No. 21, ¶ 19.) But Plaintiff does not allege that these purported Indiana contacts have anything at all to do with **his** Solitude RV, or any other Solitude or Momentum RVs, which he concedes are manufactured by Grand Design. (*See id.*, ¶¶ 17, 61.) Plaintiff also claims that Winnebago regularly litigates in Indiana (*id.*, ¶ 19.), but does not explain how unrelated litigation with other, unnamed parties could subject Winnebago to specific jurisdiction in Indiana in **this suit**. These scant allegations are insufficient for the Court to exercise specific personal jurisdiction over Winnebago.

### B. Plaintiff lacks standing to assert claims on behalf of Momentum RV purchasers.

To establish Article III standing, Plaintiff must show that he has suffered a particularized injury caused by the defendant's conduct. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff lacks standing to bring any claim based on alleged defects in Grand Design's Momentum model RVs, because he owns only a Solitude model RV.

"Several courts have concluded that a named plaintiff cannot maintain claims either for herself or on behalf of a class for products that she did not purchase." *Flaherty v. Clinique Labs. LLC*, No. 1:21-CV-03447, 2021 WL 5299773, at *4 (N.D. Ill. Nov. 15, 2021) (cleaned up). Though "other courts have concluded that a named plaintiff may have standing to assert claims for

unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* (cleaned up).

To establish substantial similarity, a plaintiff must allege that the products are similar in all material respects—not merely that they share some generic similarities or caused the same type of injury. *See id.* For example, a plaintiff who purchased sunscreen lotion had standing to sue on behalf of class members who had purchased sunscreen spray because, although they were dispensed differently, the two products had the same ingredients, were part of the same product line, and falsely advertised an SPF of more than 50. *Carrol v. S.C. Johnsons & Son, Inc.*, No. 17 CV 05828, 2018 WL 1695421, at *4 (N.D. Ill. Mar. 29, 2018). In contrast, a plaintiff lacked standing to pursue a claim alleging that various types of chocolate candy he had not purchased were packaged with excessive empty space, because the candies had different ingredients, sizes, shapes, and packaging. *Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *6 (N.D. Ill. Feb. 28, 2018).

Even if Plaintiff could have standing to pursue claims based on the model RV that he did not purchase, Plaintiff's allegations are insufficient to establish that the Solitude and Momentum models are substantially similar in all material respects. He alleges that both models are fifth-wheel RVs manufactured by Grand Design, that they are marketed as suitable for full-time use, and that they suffer from excessive frame flex. (Am. Compl., ECF No. 21, ¶¶ 1–6.) These allegations show merely that the Solitude and Momentum models are in the same general category of product, and that they both have the same type of purported flaw. As in *Benson*, these generic similarities are insufficient to confer standing.

### C. Plaintiff's attempt to assert claims under Indiana law on behalf of absent class members violates due process.

Plaintiff's complaint raises putative class claims exclusively under Indiana statutory and

common-law. However, given Indiana's lack of connection to the absent class members, it would violate Defendants' due process rights to prosecute such claims.

In *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), the Supreme Court rejected a Kansas court's application of Kansas legal standards to the contract claims of all members of a putative nationwide class, the majority of whom had no independent connection to the Kansas forum. The Court accepted that Kansas, by virtue of defendant's ownership of property and conduct of business in that state, had contacts with the litigation. *Id.* at 819–820. Nevertheless, because Kansas lacked a "'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class," and substantive conflicts existed between Kansas and other plaintiff jurisdictions, universal application of Kansas' legal standards would frustrate the reasonable expectations of the parties and invade the lawful province of sister states. *Id.* at 822. In other words, the Court explained that "[g]iven Kansas' lack of 'interest' in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas," the "application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits" imposed by the Due Process Clause. The Court also emphasized when considering the fairness of imposing a single state's law to a nationwide class action, "an important element is the expectation of the parties," and noted that there was no indication in the record that "the parties had any idea that Kansas law would control." *Id.* As such, Kansas could "not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them." *Id.* (internal quotation marks and citation omitted).

Here, as in *Shutts*, it would violate due process to apply Indiana law to each of the absent nationwide class members' claims when there are substantive conflicts of law between potentially interested states (*e.g.*, Indiana and Kentucky). *See In re Bridgestone/Firestone, Inc.*, 288 F.3d

1012, 1018 (7th Cir. 2002) ("State consumer-protection laws vary considerably, and courts must respect these differences rather than apply one state's law to sales in other states with different rules."). It is also likely that the vast majority of the proposed class has no expectation that Indiana law would apply to whatever claims they may have. *See Shutts*, 472 U.S. at 822.

Under similar circumstances, other federal courts have found that it would violate the Due Process Clause to apply a single state's law to nationwide claims in warranty litigation brought on behalf of a class. *See, e.g.*, *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369−71 (E.D. La. 1997). In *Bronco II*, the named plaintiffs asserted warranty claims on behalf of a nationwide proposed class of owners of allegedly defective vehicles and argued that Michigan law should govern claims for the entire class because the defendant, Ford, "had its principal place of business in Michigan and design decisions regarding the vehicles were made in Michigan." *Id.* at 370−71 (cleaned up). The court rejected this argument by applying *Shutts* and holding that the universal application of Michigan law would violate due process. *Id.* For the same reasons, Plaintiff's proposed nationwide class claims under Indiana law should be dismissed.

### D.  Plaintiff fails to state an individual claim under the IDCSA.

Plaintiff seeks to assert a claim, individually and as a putative class representative, against Grand Design and Winnebago for violation of the IDCSA. (Am. Compl., ECF No. 21, ¶¶ 77−87.) But Plaintiff has not alleged the requisite elements of an IDCSA claim or complied with the statute of limitations, dooming his claim as a matter of law under Rule 12(b)(6).

The IDCSA divides actionable conduct into either "uncured" or "incurable" deceptive acts. Ind. Code § 24-5-0.5-4 (person relying on either may bring an action). An "uncured" deceptive act is a one "with respect to which a consumer who has been damaged by such act has given notice to the supplier" but the supplier either fails to offer to cure the act within thirty days or does offer to cure but fails to do so within a reasonable time after the consumer accepts the offer. Ind. Code § 24-

13

5-0.5-2(a)(7). An incurable deceptive act is "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead." Ind. Code § 24-5-0.5-2(a)(8).

There are important differences in how uncured and incurable acts are treated under the IDCSA. "[A]n uncured deceptive act requires pre-suit notice by the consumer to the supplier, whereas an incurable deceptive act requires fraud, which must be pled with particularity." *James v. S. Univ., LLC*, No. 3:16-CV-855 JD, 2018 WL 11448005, at *1 (N.D. Ind. Mar. 13, 2018) (citing Fed. R. Civ. P. 9(b)). Here, Plaintiff generically alleges that "Defendants' actions constitute both uncured deceptive acts and incurable deceptive acts" without further elaboration. (Am. Compl., ECF No. 21, ¶ 80.) His allegations under either theory fail as a matter of law.

### 1.  Plaintiff fails to plead reliance on any actionable deceptive act.

Generally, Plaintiff alleges that, "[h]ad he known the truth about Defendants' defective RV design, failure to inspect the frame, and inability to cure the frame defect, he would not have purchased the RV from Defendants." (*Id.*, ¶ 63.) Necessarily then, the alleged deceptive act must have occurred before Plaintiff purchased the Subject RV in June 2020. But the only allegations Plaintiff could conceivably have relied upon before he purchased the Subject RV are generic representations as to the quality of Grand Design's RVs; namely that: (1) Grand Design is "different" than other RV manufacturers; (2) "quality is the foundation of everything" that Grand Design does; and (3) Grand Design performs rigorous inspections and pays more attention to detail than its competitors.[4] (*Id.*, ¶ 23.) These representations are not deceptive acts as a matter of law.

Even viewed in Plaintiff's favor, the statements complained of are "too general to be

---

[4] Plaintiff alleges that Winnebago advertises its own RVs—which are not Momentum or Solitude models—as having "superior craftsmanship, advanced manufacturing technologies, and steel-focused construction to enhance safety and reliability." (*Id.*, ¶ 24.) But whatever Winnebago may have said about other RVs could not have induced Plaintiff to purchase the Grand Design Momentum RV at issue here.

actionable." *See Castagna v. Newmar Corp.*, 340 F. Supp. 3d 728, 741 (N.D. Ind. 2018). For example, in *Castagna v. Newmar Corporation*, the plaintiff alleged that an RV sales manager made false statements that the manufacturer "had an extremely high quality product," "stood behind the product," and their service was "a step above." *Id.* The court ruled that these were far too general to be actionable representations and were instead "statements of unverifiable opinion," for which no claim could be asserted under the IDCSA. *Id.* (quoting *Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332 (Ind. 2013)). The same is true here—the statements at issue are not actionable.

Plaintiff also raises a variety of other allegations involving conduct that occurred ***after*** his purchase of the Subject RV. For instance, Nowak quotes from an interview given by Mr. Fenech, a Grand Design founder, long after he had left the company. Even if the quoted statement related to issues in this case—which it does not—it was made by a third party and cannot subject Grand Design, nor could it have impacted Plaintiff's purchase of the Subject RV more than four years earlier. The same is true for Plaintiff's reference to 2024 earnings calls held by one of Grand Design's frame suppliers, Lippert, and by Winnebago. (*Id.*, ¶¶ 34−35.) Because Plaintiff could not have relied on such statements when purchasing his RV, they cannot serve as deceptive acts that expose Defendants to liability under the IDCSA. Since Plaintiff has not pleaded reliance upon any actionable deceptive act under Ind. Code § 24-5-0.5-4, his claim under the IDCSA fails.

Moreover, even if the statements alleged were actionable and even if they had induced Plaintiff's purchase of the Subject RV, his IDCSA claim would be barred by the two-year statute of limitations. "Any action brought under [the IDCSA] may not be brought more than two (2) years after the occurrence of the deceptive act." Ind. Code § 24-5-0.5-5(b); *see State v. Classic Pool & Patio, Inc.*, 777 N.E.2d 1162, 1166 (Ind. Ct. App. 2002) (IDCSA's two-year limitation period is "triggered by the date of each occurrence" of a deceptive act). Because the alleged

deceptive acts occurred on or before June 2020, when Plaintiff acquired the Subject RV, and he did not file suit until November 2024, his IDCSA claim is time-barred.

### 2. Plaintiff fails to plead notice and an opportunity to cure any alleged "uncured" deceptive act.

To bring a claim for an "uncured" deceptive act under the IDCSA, a plaintiff must first provide notice that includes "not only a complete description of the actual damage suffered, but also a description of the alleged deceptive act . . . so that the supplier has an opportunity to correct the problem." *A.B.C. Home & Real Estate Inspection, Inc. v. Plummer*, 500 N.E.2d 1257, 1262 (Ind. Ct. App. 1986); *see also* Ind. Code § 24-5-0.5-4(a). The notice must "state fully the nature of the alleged deceptive act and the actual damage suffered therefrom." *Id.* § 24-5-0.5-5(a); *see also* *A.B.C. Home*, 500 N.E.2d at 1262 ("The obvious reason for this requirement is so that the supplier has an opportunity to correct the problem."). The notice must be provided "within the sooner of (i) six (6) months after the initial discovery of the deceptive act, (ii) one (1) year following such consumer transaction, or (iii) any time limitation, not less than thirty (30) days, of any period of warranty applicable to the transaction." *Id.*

Here, Plaintiff fails to identify any alleged deceptive act for which he provided notice to Defendants and a reasonable opportunity to cure ***before*** filing suit. (*See* Am. Compl., ECF No. 21, ¶¶ 80−81.) He does not allege that, at any point, he provided proper notice to Defendants as the IDCSA requires. This is fatal to his claim, to the extent that it relies on "uncured" deceptive acts. *See A.B.C. Home*, 500 N.E.2d at 1262 (finding notice to be inadequate where the plaintiffs identified an issue but did not apprise the defendant of the nature of the deceptive act); *Lehman v. Shroyer*, 721 N.E.2d 365, 368 (Ind. Ct. App.1999) (consumer's failure to "specifically allege any act of deception" precluded claim under the IDCSA). Worse than the inadequate notices in *A.B.C. Home* and *Lehman*, Plaintiff does claim to have provided ***any*** pre-suit notice to Defendants.

Plaintiff appears to assert that the alleged existence of excessive frame flex automatically provides him with a cause of action under the IDCSA. Not so. Even a breach of warranty would not, by itself, constitute a deceptive act. In *McKinney v. States*, the plaintiff alleged that the defendant "made promises—sometimes in the form of warranties and guarantees—and then failed to perform." 693 N.E.2d 65, 73 (Ind. 1998). The court found that those promises did not constitute deceptive acts under the IDCSA: "Although these allegations may support a breach of contract claim, without more flesh these bare bones do not state claims under the Act. A broken promise is not ipso facto a false representation." *Id.* At most, Plaintiff may have put Defendants on notice that he believed the Subject RV was experiencing excessive frame flex on September 30, 2024. (Am. Compl., ECF No. 21, ¶ 51.) Plaintiff does not allege, however, that he put Defendants on notice of any alleged deceptive ***act***. Accordingly, Plaintiff has failed to identify any "uncured" deceptive act that could be cognizable under the IDCSA.

Even if Plaintiff had pleaded notice and it was sufficient, his claim still fails because he has not provided Defendants a reasonable opportunity to cure. Plaintiff claims he raised the alleged frame flex with Defendants on September 30, 2024, at which time Defendants directed Plaintiff to a certified repair center to repair the subject RV. (*Id.*, ¶ 51.) It is uncontested that Grand Design took steps to address the alleged defect within 30 days, as the IDCSA requires. (*Id.*) According to Plaintiff, he put Defendants on notice on September 30, 2024, and he filed suit with the repairs in progress on November 22, 2024. (*See id.*, ¶¶ 53, 55.) Accordingly, Plaintiff gave Grand Design less than 60 days to cure from the time the issue was raised until filing suit. This is not a reasonable opportunity to cure. *Mathews v. REV Recreation Grp.*, 931 F.3d 619, 624 (7th Cir. 2019) (treating notice and an opportunity to cure identically under the IDCSA and for breach of implied warranty under Indiana law); *Zylstra v. DRV*, LLC, No. 1:18-CV-266, 2020 WL 2526491, at *10 (N.D. Ind.

May 18, 2020) (granting summary judgment on implied warranty claim because 153-day repair was reasonable), *aff'd*, 8 F.4th 597 (7th Cir. 2021). Accordingly, Plaintiff cannot rely on "uncured" deceptive acts to support his IDCSA claim.

### 3.   Plaintiff fails to plead any incurable deceptive act with particularity.

Based on the foregoing, Plaintiff cannot rely on alleged "uncured" deceptive acts to support his IDCSA claim. He must instead allege an incurable deceptive act, which sounds in fraud. Ind. Code § 24-5-0.5-2(a)(8) ("[A] deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead."). Critically, "for actions under the Act that are 'grounded in fraud,' the specificity requirement of Rule 9(B) must be met." *McKinney*, 693 N.E.2d at 71.[5] Federal Rule of Civil Procedure 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." "The primary purpose of the rule is to give the defendant 'fair notice' of the allegations against it." *Thornton v. CMB Entm't, LLC*, 309 F.R.D. 465, 468 (S.D. Ind. 2015) (citing *Viacom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)). To do this, a plaintiff "must identify the 'who, what, when, where, and how' of the alleged fraud." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019). "Conclusory allegations do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal." *Veal v. First Am. Bank*, 914 F.2d 909, 913 (7th Cir. 1990).

Plaintiff does not identify any incurable deceptive act. He merely offers the conclusory assertion that "Defendants' actions constitute both uncured deceptive acts and incurable deceptive acts." (*See* Am. Compl., ECF No 21, ¶ 80.) He adds only that: "Defendants engaged in numerous

---

[5] "The pleading requirements of Indiana Trial Rule 9(B) and Federal Rule of Civil Procedure 9(b) are the same." *Hash v. First Fin. Bancorp*, No. 1:20-CV-1321 RLM-MJD, 2021 WL 859736, at *9 (S.D. Ind. Mar. 8, 2021) (citing Fed. R. Civ. P. 9(b); Ind. Trial R. 9(B)).

specific incurable or uncured deceptive acts regarding the safety of the Defective RVs as detailed above, as well as deceptive omissions of disclosure about [sic] sufficiency of the RV's frame." (*Id.*, ¶ 83.) These are precisely the types of allegations that fail under Rule 9(b). *Benson*, 944 F.3d at 646. Because Plaintiff has alleged neither an "uncured" deceptive act, nor an incurable deceptive act that would entitle him to relief under the IDCSA, this claim should be dismissed.

### E. Plaintiff's implied warranty claim suffers from numerous defects and must be dismissed.

Plaintiff's implied warranty claim, brought on behalf of himself and a nationwide class, must also be dismissed. To start, the Court should reject Plaintiff's attempt to plead application of Indiana law here. Plaintiff is a Kentucky resident, who purchased his RV in Kentucky from a Kentucky dealer. Under those conditions, an Indiana choice-of-law analysis shows that Kentucky substantive law, rather than Indiana, applies to the sale. Plaintiff cannot simply ignore that analysis and choose the law of a more convenient state instead. Under Kentucky law, Plaintiff's inability to plead contractual privity dooms his claim. Even under Indiana law, Plaintiff's implied warranty claim would fail because he did not provide Defendants with a reasonable opportunity to cure as required. Further, under both Kentucky and Indiana law, Plaintiff's claim is barred by the statute of limitations. For all of these reasons, Plaintiff's implied warranty claim must be dismissed.

### 1. Plaintiff's warranty claim fails for lack of vertical privity under Kentucky law.

Plaintiff's implied warranty claim requires the Court to conduct a choice of law analysis because Indiana and Kentucky law conflict regarding whether privity of contract is required to maintain a claim. *Compare Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005) ("Indiana law does not require vertical privity between a consumer and a manufacturer as a condition to a claim by the consumer against the manufacturer for breach of the manufacturer's implied warranty of merchantability[.]") *with Compex Intern. Co. v. Taylor*, 209 S.W.3d 462

(Ky. 2006) (affirming dismissal of implied warranty claim for lack of privity of contract).[6] Plaintiff's purchase of the Subject RV from a dealer precludes privity of contract with either Defendant. (Am. Compl., ECF No. 21, ¶ 40.)

For a federal district court exercising diversity jurisdiction in Indiana, Indiana's choice-of-law jurisprudence applies. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Indiana follows the "most intimate contacts" test to determine which state substantive law applies in actions sounding in contract. *Kentucky Nat'l Ins. Co. v. Empire Fire and Marine Ins. Co.*, 919 N.E.2d 565, 575 (Ind. Ct. App. 2010). When "applying the most intimate contacts test, courts must consider the following factors: '(1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties,' giving the greatest weight to the fourth of those factors." *Large v. Mobile Tool Int'l, Inc.*, 724 F.3d 766, 771 (7th Cir. 2013) (quoting *Kentucky Nat'l Ins.*, 919 N.E.2d at 575).

These factors make clear that Kentucky has the most intimate contacts to warranty claims for Plaintiff's purchase of the Subject RV. Plaintiff is a Kentucky resident. (Am. Compl., ECF No. 21, *Id.*, ¶ 17.) Kentucky was the place of contracting, the place of negotiation, the place of performance, and, as best Defendants can tell, the location of the subject RV when not in use. (*Id.*, ¶¶ 17, 40.) The only alleged connections to Indiana appear to be as the site of certain repairs on the Subject RV and as the jurisdiction where Grand Design is based. (*Id.*, ¶¶ 18, 51, 59.) Accordingly, the factors weigh in favor of applying Kentucky law. *See Shearer v. Thor Motor Corp.*, 470 F. Supp. 3d 874, 884 (N.D. Ind. 2020) (applying Indiana choice-of-law rules and

---

[6] As explained in more detail below, Indiana also requires pre-suit notice and a reasonable opportunity to cure a claim for breach of implied warranty.

concluding that Florida law governed warranty claim arising from sale by a Florida dealer to Florida residents); *Reger v. Ariz. RV Ctrs., LLC*, 515 F. Supp. 3d 915, 930 (N.D. Ind. 2021) (similar analysis resulting in application of Arizona law).

As noted above, "privity of contract is an essential element of a claim for breach of an implied warranty" under Kentucky law. *DeMoss ex rel. DeMoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 882 (W.D. Ky. 2017). The controlling decision is *Compex International Company v. Taylor*, 209 S.W.3d 462 (Ky. 2006). There, the plaintiff sued Compex for breach of implied warranty, but the trial court granted Compex's motion to dismiss for lack of contractual privity. *Id.* at 463. After reversal by the intermediate state court, the Kentucky Supreme Court granted certiorari and reaffirmed that a direct buyer-seller relationship is necessary to assert an implied warranty claim under Kentucky law. *Id.* at 463−65. Under *Compex*, Plaintiff's implied warranty claim fails for lack of privity and should be dismissed for failure to state a claim. *Id.*

**2. Even if Indiana substantive law applied, Plaintiff's warranty claim fails for lack of notice and a reasonable opportunity to cure.**

To state a claim for breach of implied warranty under Indiana law, the plaintiff must present the product to the defendant for repair "at least three times." *Kurtz v. Jayco Inc.*, No. 3:20-CV-281, 2023 WL 5898512, at *3 (N.D. Ind. Sept. 7, 2023); *Freese-Pettibon ex rel. O'Mealy v. Nexus RVs, LLC*, 701 F. Supp. 3d 757, 765 (N.D. Ind. 2023) (dismissing implied warranty claim because "[a]s a matter of law, two opportunities for repair aren't sufficient to sustain a breach of warranty claim"); *Smith v. Nexus RVs, LLC.*, 468 F. Supp. 3d 1012, 1024 (N.D. Ind. 2020) (finding that a warranty was not breached where the manufacturer corrected all of the defects in the first attempt, except for one that required two attempts to fix).

For example, in *Mathews v. REV Recreation Group*, the Seventh Circuit considered a case very similar to this one, in which a purchaser plaintiff alleged that an RV merchant "breached the

implied warranty of merchantability by selling them an RV that was not in merchantable condition at the time that they bought it." 931 F.3d at 623. The court of appeals upheld the district court's dismissal of the claim on the grounds that the plaintiff's "failure to give REV a reasonable opportunity to cure the alleged defects is fatal to their claim." *Id.* (citing *Gen. Motors Corp. v. Sheets*, 818 N.E.2d 49, 53 (Ind. Ct. App. 2004)). The court noted that the plaintiff had given the defendant "only two chances to fix each of these problems. Under Indiana law, two chances is not a reasonable opportunity to cure the defects." *Id.* at 622. The court of appeals reaffirmed the logic of *Matthews* two years later in *Zylstra v. DRV, LLC*, 8 F.4th 597 (7th Cir. 2021), which also involved implied warranty claims related to allegedly defective RVs. Again, the court noted that under Indiana law, "a buyer must give the warrantor a reasonable opportunity to cure any alleged defect in order to make a claim of breach of an implied warranty. Any other interpretation would make a warrantor strictly liable for any warrantable defects without being given any opportunity to cure the defect." *Id.* at 609. Here, Plaintiff alleges that Defendants have received one opportunity to repair the alleged frame flex defect, and that the repair has been ongoing since Plaintiff dropped the Subject RV off at a designated service provider in October 2024. (Am. Compl., ECF No. 21, ¶¶ 51–62.) Accordingly, even if Plaintiff's implied warranty claim could be governed by Indiana law, it fails because Defendants have not received notice and a reasonable opportunity to cure.[7]

### 3. Under Indiana procedural law, Plaintiff's implied warranty claim is time barred.

Indiana imposes a four-year statute of limitations for implied warranty claims, beginning

---

[7] While an implied warranty can be breached under Indiana law when the time to repair is unreasonably long, the Seventh Circuit has held that 153 days is reasonable to repair an RV. *Zykstra*, 8 F.4th at 603. Here, less than 60 days passed between Plaintiff's delivery of the Subject RV for repairs and filing suit. Accordingly, Grand Design's ongoing repairs to the Subject RV do not expose Defendants to a claim for breach of the implied warranty of merchantability.

when the cause of action accrues. Ind. Code § 26-1-2-725(1).[8] A cause of action for breach of warranty "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Ind. Code § 26-1-2-725(2). "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered." *Id.* Because Plaintiff alleges only a breach of implied warranty, he does not and cannot allege that the warranty "explicitly" extends to future performance.[9] Thus, Plaintiff's cause of action accrued when he acquired the Subject RV on June 12, 2020. (Am. Compl., ECF No. 21, ¶ 40.) Because Plaintiff did not file suit until November 2024, his implied warranty claim is time-barred by the four-year statute of limitations.

Plaintiff's allegations of "knowing and active concealment" cannot save his claim. (*Id.*, ¶ 64.) In Indiana, tolling the statute of limitations based on active fraudulent concealment requires establishing that "the defendant (1) had actual knowledge of the alleged wrongful act and (2) intentionally concealed it from the plaintiff (3) by making some statement or taking some action calculated to prevent inquiry or to mislead, (4) upon which the plaintiff reasonably relied." *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 260–61 (Ind. 2014) (cleaned up).

Plaintiff claims that the Defendants concealed the alleged Frame Defect in four ways:

---

[8] With respect to common-law claims, "statutes of limitations are procedural in nature, and as such, Indiana choice-of-law rules state that the statute of limitations of the forum state, Indiana, will apply." *Shearer*, 470 F. Supp. 3d at 879 (cleaned up) (quoting *Bitler Inv. Venture II, LLC v. Marathon Ashland Petrol., LLC*, 779 F. Supp. 2d 858, 889 (N.D. Ind. 2011)). Thus, Indiana's statute of limitations controls. *See id.*

[9] Plaintiff does not allege that the warranty explicitly extended to future performance of the goods. Indeed, "most courts 'have held that implied warranties by definition cannot explicitly extend to future performance.'" *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 377 (Ind. 2019) (quoting *Stumler v. Ferry-Morse Seed Co.*, 644 F.2d 667, 671 (7th Cir. 1981)). Thus, even if Plaintiff had made such an allegation, it could not save his implied warranty claim.

(1) by entering into non-disclosure agreements that "require customers to remove online posts criticizing Defendants or the Defective RVs and prohibit future posts on the same topics" (Am. Compl., ECF No. 21, ¶ 36); (2) by "employ[ing] a network of 'Lifestyle Ambassadors' to spread positive propaganda on the Defective RVs" on social media (*id.*, ¶ 37); (3) by issuing a technical service bulletin about the alleged frame defect to service technicians and dealers, but not to customers (*id.* at ¶ 38); and (4) by performing certain repairs on Plaintiff's RV in 2022 that he did not request and now believes were intended to conceal the alleged frame defect (*id.*, ¶¶ 42−48).

None of these allegations is sufficient to establish fraudulent concealment, particularly when the Amended Complaint also alleges that Defendants have spoken publicly about the alleged Frame Defect and cites to social media groups, online forums, and articles discussing the issue. (*Id.*, ¶¶ 29, 32, 35.) These allegations confirm that Plaintiff was readily able to identify other customers' complaints on social media, regardless of any alleged conduct attributed to Defendants. Further, while Plaintiff criticizes Grand Design for issuing a technical service bulletin to technicians and dealers, that bulletin is also publicly available online. (*Id.*, ¶ 38.) Indeed, Plaintiff does not explain how any of the alleged conduct made him or other consumers less likely to learn about the alleged Frame Defect. On their face, these allegations do not support fraudulent concealment. *See Malachowski v. Bank One*, 590 N.E.2d 559, 563 (Ind. 1992) (holding that nondisclosure is not fraudulent concealment unless "the parties are in a fiduciary relationship").

Finally, Plaintiff alleges that Grand Design made repairs to his RV in 2022 that were somehow intended to conceal the alleged excessive frame flex, including replacing the "RV's axles, bearings, seals, leaf springs, and brakes." (Am. Compl., ECF No. 21, ¶¶ 42−44.) According to Plaintiff, he did not request those repairs and "now believes that these repairs were Grand Design's first attempt at concealing the Frame Defect." (*Id.*, ¶¶ 44, 48.) But, "[s]tanding alone,

24

performing repairs are not enough to toll the statute of limitations, at least under Indiana law." *Shearer*, 470 F. Supp. at 883. Repairs can be grounds for equitable tolling of a warranty claim only where they are designed to "prevent inquiry or to elude investigation or . . . mislead and hinder, thereby lulling a buyer into inaction." *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 384 (Ind. 2019). For example, a plaintiff may establish equitable tolling where the defendant promised to repair the plaintiff's trucks even after the warranty period ended, causing the plaintiff to delay filing suit until the statute of limitations had run. *See id.* at 385. That is hardly the case here, where Grand Design has arranged for the Subject RV to undergo a complete sidewall replacement at its factory, even after the statute of limitations has passed. (Am. Compl., ECF No. 21, ¶ 59.) Further, Plaintiff does not allege that Grand Design made any misrepresentations or promises about the repairs. Under these circumstances, Grand Design's past performance of repairs cannot support equitable tolling of the statute of limitations.

* * *

For all of these reasons, Nowak's implied warranty claim fails as a matter of law.

## V.   Conclusion

Based on the foregoing, Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint should be **GRANTED**. Plaintiffs' claims against both Defendants should be dismissed with prejudice under Rule 12(b)(6). Plaintiff's claims against Winnebago should also be dismissed under Rule 12(b)(2)**.**

Dated: February 25, 2025

Brendan V. Johnson
Erica A. Ramsey
**ROBINS KAPLAN LLP**
150 East 4th Place, Suite 704
Sioux Falls, SD 54104-5044
605.335.1300
bjohnson@robinskaplan.com
eramsey@robinskaplan.com

A. Elizabeth Burnett
Marcus Guith
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
612.349.8500
eburnett@robinskaplan.com
mguith@robinskaplan.com

Hans Pijls
**DINSMORE & SHOHL LLP**
300 N. Fifth Avenue, Suite 120
Ann Arbor, MI 48104
248.719.1390
hans.pijls@dinsmore.com

COUNSEL FOR GRAND DESIGN RV, LLC
AND WINNEBAGO INDUSTRIES, INC.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 25, 2025, a true and accurate copy of **Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's First Amended Class Action Complaint** was electronically filed with the Clerk of Court by using the CM/ECF system to all registered parties.

**ROBINS KAPLAN LLP**

Brendan V. Johnson
Erica A. Ramsey
150 East 4th Place, Suite 704
Sioux Falls, SD 54104-5044
605.335.1300
bjohnson@robinskaplan.com
eramsey@robinskaplan.com

27