## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOHN P. NOWAK, MATTHEW AUBLE, JOSEPH ALTERMAN, DON BILYEU, STEPHEN CLAY, WARREN COLBURN, LEO CRITCHFIELD, MICHAEL CROTEAU, ALESSANDRO D'ALESSANDRO, JOHN DRAKE, LORI FAY, JOHN GARCIA, JOSEPH GRAVER, LUCY AND ANDREW HALLBERG, DEANA JANSA, MATT JOHNSON, MICHAEL MANGUM, ROBIN MYERS, MICHAEL O'NEAL, DANIEL PEABODY, GARY PFEIFFER, KENNETH PIERCE, COLLIN REESE, JIM RIEBER, MATTHEW THOMPSON, KERMIT TROTTER, GUSTAV VANZYL, DAVID WOBSER, MATTHEW YEOMAN, and CYNTHIA YUNGCLAS, individually and on behalf of all others similarly situated, | **Civil Action No.: 3:24-cv-00950-PPS-AZ**<br><br>**CONSOLIDATED COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |
| Plaintiffs, | |
| v. | |
| WINNEBAGO INDUSTRIES, INC. and GRAND DESIGN RV, LLC, | |
| Defendants. | |

Plaintiffs John P. Nowak, Matthew Auble, Joseph Alterman, Don Bilyeu, Stephen Clay, Warren Colburn, Leo Critchfield, Michael Croteau, Alessandro D'Alessandro, John Drake, Lori Fay, John Garcia, Joseph Graver, Lucy and Andrew Hallberg, Deana Jansa, Matt Johnson, Michael Mangum, Robin Myers, Michael O'Neal, Daniel Peabody, Gary Pfeiffer, Kenneth Pierce, Collin Reese, Jim Rieber, Matthew Thompson, Kermit Trotter, Gustav Vanzyl, David Wobser, Matthew Yeoman, and Cynthia Yungclas ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action complaint against Defendants Winnebago Industries Inc. and Grand Design RV, LLC ("Defendants"). Upon personal knowledge, information, and belief, Plaintiffs allege the following:

## <u>NATURE OF THIS ACTION</u>

1. Since at least 2020, Winnebago Industries Inc. ("Winnebago") and Grand Design RV, LLC ("Grand Design") knowingly deceived their customers, distributed thousands of defective recreational vehicles ("RVs"), and devised a scheme to cover up the truth: Grand Design RVs are not safe for the road or for full-time living.

2. As part of this scheme, Defendants crafted targeted marketing campaigns that preyed on Americans' dreams of starting a new life on the road and exploring the country in one of their very own Grand Design RVs, all in the midst of the once-in-a-century COVID pandemic.

3. However, unbeknownst to Plaintiffs and members of the classes, this dream would soon become a nightmare: the frame that was designed for and installed on model year 2020-2023 Grand Design Solitude, Momentum, Reflection, and Influence RVs (hereafter, the "Grand Design RVs") by Defendants was not sufficiently capable of tolerating the as-designed weight of the RV or the stress of typical RV use, often rendering the RVs unusable or uninhabitable.

4. While RV frames are generally designed to be both flexible enough to absorb stress inherent to road travel and strong enough to support the weight of the RV superstructure that sits on top, the frames installed in the Grand Design RVs—all of which were designed to Defendants' specifications—are not engineered or built to be strong enough to fulfill their intended purpose. Under normal and foreseeable use, the Grand Design RV frames flex too much and often break, causing the RV sitting atop the frame to shift or even collapse.

5. Instead of fixing the problem, Defendants continued selling.

6. Instead of issuing a recall, Defendants initiated a cover up.

7. And instead of protecting their customers, Defendants prioritized profit, using NDAs, misleading public statements, and online censorship to counter complaints about frame

failure.

8.    As a result, Defendants generated (and reaped the profits of) hundreds of millions in RV sales, all while leaving their customers, including Plaintiffs, to deal with the literal and figurative wreckage.

9.    This lawsuit seeks to stop Defendants' illegal and deceptive profiteering, and to provide Plaintiffs—and thousands like them—the fairness and justice they deserve.

## **PARTIES**

10.    Plaintiff John P. Nowak resides in Kentucky, as he did at all relevant times during the conduct alleged in this Complaint.

11.    Plaintiff Matthew Auble resides in Arizona, as he did at all relevant times during the conduct alleged in this Complaint.

12.    Plaintiff Joseph Alterman resides in Florida, as he did at all relevant times during the conduct alleged in this Complaint.

13.    Plaintiff Don Bilyeu resides in Oregon, as he did at all relevant times during the conduct alleged in this Complaint.

14.    Plaintiff Stephen Clay resides in South Carolina, as he did at as he did at all relevant times during the conduct alleged in this Complaint.

15.    Plaintiff Warren Colburn resides in Kentucky, as he did at all relevant times during the conduct alleged in this Complaint.

16.    Plaintiff Leo Critchfield resides in California, as he did at all relevant times during the conduct alleged in this Complaint.

17.    Plaintiff Michael Croteau resides in New Hampshire, as he did at all relevant times during the conduct alleged in this Complaint.

18.     Plaintiff Alessandro D'Alessandro resides in New York, as he did at all relevant times during the conduct alleged in this Complaint.

19.     Plaintiff John Drake resides in North Carolina, as he did at all relevant times during the conduct alleged in this Complaint.

20.     Plaintiff Lori Fay resides in Ohio, as she did at all relevant times during the conduct alleged in this Complaint.

21.     Plaintiff John Garcia resides in Louisiana, as he did at all relevant times during the conduct alleged in this Complaint.

22.     Plaintiff Joseph Graver resides in Pennsylvania, as he did at all relevant times during the conduct alleged in this Complaint.

23.     Plaintiffs Andrew and Lucy Hallberg reside in Georgia, as they did at all relevant times during the conduct alleged in this Complaint.

24.     Plaintiff Deana Jansa resides in Wisconsin, as she did at all relevant times during the conduct alleged in this Complaint.

25.     Plaintiff Matt Johnson resides in Oklahoma, as he did at all relevant times during the conduct alleged in this Complaint.

26.     Plaintiff Michael Mangum resides in Maryland, as he did at all relevant times during the conduct alleged in this Complaint.

27.     Plaintiff Robin Myers resides in Rhode Island, as she did at all relevant times during the conduct alleged in this Complaint.

28.     Plaintiff Michael O'Neal resides in Ohio, as he did at all relevant times during the conduct alleged in this Complaint.

29.     Plaintiff Daniel Peabody resides in Florida, where he intends to remain as a

resident. At the time he purchased the RV that is the subject of this Complaint, Plaintiff Peabody resided in Arizona.

30.    Plaintiff Gary Pfeiffer resides in Illinois, as he did at all relevant times during the conduct alleged in this Complaint.

31.    Plaintiff Kenneth Pierce resides in Idaho, as he did at all relevant times during the conduct alleged in this Complaint.

32.    Plaintiff Collin Reese resides in Colorado, as he did at all relevant times during the conduct alleged in this Complaint.

33.    Plaintiff Jim Rieber resides in Minnesota, as he did at all relevant times during the conduct alleged in this Complaint.

34.    Plaintiff Matthew Thompson resides in California, as he did at all relevant times during the conduct alleged in this Complaint.

35.    Plaintiff Kermit Trotter resides in Indiana, as he did at all relevant times during the conduct alleged in this Complaint.

36.    Plaintiff Gustav Vanzyl resides in Idaho, where he intends to remain as a resident. At the time he purchased the RV that is the subject of this Complaint, Plaintiff Vanzyl resided in California.

37.    Plaintiff David Wobser resides in New Jersey, as he did at all relevant times during the conduct alleged in this Complaint.

38.    Plaintiff Matthew Yeoman resides in Texas, as he did at all relevant times during the conduct alleged in this Complaint.

39.    Plaintiff Cynthia Yungclas resides in South Dakota, as she did at all relevant times during the conduct alleged in this Complaint.

40.    Defendant Winnebago Industries Inc. is a corporation existing under the laws of Minnesota with a principal place of business located in Eden Prairie, Minnesota. At all times relevant to this Complaint, Winnebago transacted business in this District and throughout the United States.

41.    Defendant Grand Design RV, LLC is a limited liability company existing under the laws of Indiana, with its principal place of business in Middlebury, Indiana. The Octavius Corporation is the sole member of Grand Design. *See* ECF No. 6. The Octavius Corporation is a holding company that is wholly owned by Defendant Winnebago. *See id.* At all times relevant to this Complaint, Grand Design transacted business in this District and throughout the United States.

## VENUE AND JURISDICTION

42.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Class Members' claims occurred in this District, and Defendants are subject to the Court's personal jurisdiction.

43.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) and (d)(2) because this action is a class action in which the matter in controversy exceeds $5,000,000 exclusive of interest and costs, and members of the putative classes are citizens of states that are different from the states of which Defendants are citizens.

44.    This Court has personal jurisdiction over Grand Design because its principal place of business is in Indiana.

45.    This Court has personal jurisdiction over Winnebago because (a) as explained herein, Grand Design's contacts with Indiana may be imputed to Winnebago because they are alter egos for purposes of personal jurisdiction; and (b) independently, Defendant Winnebago has contacts with the State of Indiana that are so continuous and systematic that it is essentially at

home in this State. Moreover, Defendant Winnebago has purposefully availed itself of the benefits of transacting business in Indiana, has placed its goods into the stream of commerce through its acts and contacts in Indiana, and Plaintiffs' claims arise out of or relate to Winnebago's connections to Indiana.

46.     Indeed, Indiana is widely regarded as the "RV capital of the world"—a fact that is acknowledged by both Grand Design[1] and Winnebago[2] on their consumer-facing websites, and on Elkhart County, Indiana's public tourism webpage, which, among other things, lists available RV factory tours of Winnebago Industries Towable located at 11756 County Road 14, Middlebury, Indiana 46540 and Grand Design RV located at 11333 County Road 2, Middlebury, Indiana 46540.[3]

47.     This Court's exercise of personal jurisdiction over Defendants is in accordance with Federal Rule of Civil Procedure 4(k)(1)(A) and Indiana Trial Rule 4.4, because both Grand Design and Winnebago have submitted to the jurisdiction of the courts of Indiana by doing and soliciting business in Indiana, providing products and/or services by or to persons in Indiana, and deriving substantial revenue from goods sold in Indiana. Exercise of jurisdiction over these Defendants does not offend traditional notions of fair play and substantial justice.

48.     Grand Design is a wholly owned subsidiary of Winnebago and, at all times relevant to this Complaint, Winnebago exercised complete control over Grand Design's decision-making

---

[1] GRAND DESIGN, *The Annual Grand Design National Rally*, (last visited June 11, 2025), available at https://www.granddesignrv.com/owners/grand-design---national-rally

[2] WINNEBAGO, *A Visit to the RV/MH Hall of Fame in Indiana*, (last visited June 11, 2025), available at https://www.winnebago.com/lifestyle/winnebagolife/travel/a-visit-to-the-rv-mh-hall-of-fame-in-indiana

[3] https://www.visitelkhartcounty.com/listing/winnebago-industries-towable/298/; https://www.visitelkhartcounty.com/listing/grand-design-rv/908/

and operations.

49.    Since at least November 2016, Donald Clark, co-founder of Grand Design, has served as an executive officer at Winnebago and as President and CEO of Grand Design.[4] In 2019, Mr. Clark became Vice President of Winnebago while continuing to serve as President and CEO of Grand Design. Winnebago pays Mr. Clark's salary, as well as quarterly and annual bonuses for his work with Grand Design.

50.    Mr. Clark is identified as a "manager" of Grand Design in annual limited liability company reports filed with various states but lists Winnebago's physical address as his contact address.

51.    Winnebago is a party to Mr. Clark's employment agreement, which provides that all notices to Grand Design should be delivered to Winnebago's General Counsel at Winnebago's physical address. Notably, in this employment agreement, Winnebago specifically consents to the jurisdiction of the courts of the State of Indiana and/or the federal district courts sitting in the State of Indiana for the purpose of resolving all issues of law, equity, or fact, arising out of the agreement.

52.    For several years, upper-level personnel have rotated between management and executive level positions at both Winnebago and Grand Design, demonstrating the close integration between Winnebago and its wholly owned subsidiary.

53.    Winnebago executives serving in similar positions at Grand Design have made decisions pertinent to this litigation while located in Indiana, at Grand Design's headquarters.

---

[4]

https://www.sec.gov/Archives/edgar/data/107687/000010768716000120/exh109clarkemploymentagree.htm

54.    Winnebago and Grand Design are joint beneficiaries of loan agreements with major company creditors.

55.    Grand Design employees' retirement and 401(k) plans are funded and paid for entirely by Winnebago.

56.    Winnebago Industry's Fiscal Year 2025 Second Quarter Earnings Presentation consistently conflates Grand Design's operations, sales, and profits with its own. For example, Winnebago displays its Q2 net revenues from its Towable RV Segment on a slide that promotes an image of a Grand Design Influence RV—one of the defective models at issue in this litigation.[5] Winnebago also states that its Grand Design Lineage "[r]epresents a $100M-plus revenue opportunity in FY25" for Winnebago.[6]

57.    Moreover, slides showing Winnebago's "North America RV Market Share Performance" conflate Grand Design's contributions as Winnebago's own overall growth in the Towable RV market segment, such as by removing all reference to Grand Design's existence as a separate entity starting in fiscal year 2022.[7] In other words, all growth attributable to Grand Design was characterized by Winnebago to its investors as Winnebago's growth.

58.    Winnebago's Fiscal Year 2025 Second Quarter Investor Presentation further exemplifies Winnebago's understanding that it maintains continuous and systematic contacts with Indiana (and specifically within the Northern District). On slide three, which provides an "Overview" of the "locations" of its operations, Winnebago explicitly confirms that its "RV

---

[5] https://winnebago.gcs-web.com/static-files/dd3f4e87-9b42-4fe3-bc5a-e01be17d1cc1 at slide 9.

[6] https://winnebago.gcs-web.com/static-files/dd3f4e87-9b42-4fe3-bc5a-e01be17d1cc1 at slide 4.

[7] https://winnebago.gcs-web.com/static-files/dd3f4e87-9b42-4fe3-bc5a-e01be17d1cc1 at slide 6.

Production" occurs only in Indiana and Iowa.[8]



*Winnebago's Locations, Fiscal Year 2025 Second Quarter Investor Presentation*

59.      On its website, Winnebago promotes both salaried and hourly employment positions at its offices and manufacturing facilities in Indiana, such as "Senior Accountant"; "Production Worker"; "Service Technician"; "Engineering Director"' and "Maintenance Manager."[9]

60.      Moreover, Winnebago's website directs consumers to purchase its Grand Design RVs.[10]

61.      Further, Winnebago's Director of Product Safety and Compliance signed and certified Grand Design's response to information requests propounded by the National Highway

---

[8] *See* https://winnebago.gcs-web.com/static-files/21bf0b32-2cdc-4f26-bfd1-5390a595d06f at slide 3 (neither party argues or believes that Iowa is a more appropriate venue, especially since the RVs at issue are produced within Indiana).

[9] https://www.winnebago.com/careers/towables (last visited June 22, 2025)

[10] https://www.winnebagoind.com/brands/grand-design-rv

Traffic Safety Administration in connection with its investigation of the Grand Design RV defects (discussed in more detail *infra*).

62.    In short, Winnebago and Grand Design function as a single company, financially integrated with shared executives. Winnebago tells investors that Grand Design is one of its profitable "brands," calls it a valuable "trademark," and lists Grand Design as one of its "eight operating segments" and Towable RVs (including Grand Design RVs) as one of its "three reporting segments" in filings with the SEC.

63.    Winnebago also has independent and systematic contacts with Indiana in relation to its sales of RVs, including RVs sold under its Grand Design brand.

64.    On the "contact us" page of Winnebago's website, the section about Towable RVs—the type of product at issue—lists Winnebago's mailing address as 201 14th Street, Middlebury, Indiana 46540, and lists "Contact Us" phone numbers with Indiana (574) area codes.[11]

65.    On its LinkedIn page, Winnebago states that it has facilities in Indiana.[12] Winnebago also has at least seven authorized RV dealers located throughout Indiana and listed on its website.[13] These dealers routinely conduct RV repairs, including attempting to repair excessive frame flex on Winnebago's Grand Design-branded RVs.

66.    Thus, both Grand Design and Winnebago maintain systematic and continuous

---

[11] Winnebago, *Contact Us: Winnebago Towables*, (last visited June 11, 2025), available at https://www.winnebago.com/contact-us.

[12] LinkedIn https://www.linkedin.com/company/winnebago-industries/about/

[13] https://www.winnebago.com/shopping-tools/dealer-directory/us/indiana?selectedState=Indiana&vehicleType=Motorhomes&Group=81&Motorhomes=True&Towables=False

contacts with the state of Indiana, including contacts out of which these claims arise or relate to.

## FACTUAL BACKGROUND

I.    **The RV Industry and Defendants' Place Within It**

A.    **The RV Industry**

67.    The modern RV traces its history back to August 1915, coinciding with the rise in popularity of camping in the early twentieth century.

68.    The first RV, described then by the New York Times as a vehicle with "the power of motion and . . . a dwelling place fit for a Caliph," was quickly seen as a necessity for those desiring "to escape modern life's pressures by traveling into nature" without forsaking the "comforts of modern life."[14]

69.    As the RV gained popularity in the mid-twentieth century, several companies sought to meet this demand, producing everything from drivable motorhomes to "towable" campers.

70.    By the late twentieth century, RVs were a muti-billion-dollar industry.

71.    Manufacturers began producing a variety of different RV types, the most common being motorhomes, fifth wheels, and other towables.

72.    Motorhomes are built on a bus or commercial truck chassis and range from anywhere to 17 to 45 feet in length. Motorhomes are the largest and most expensive class of RV.

---

[14] https:/ /www.smithsonianmag.com/innovation/brief-history-rv-180970195/.

73.    A fifth wheel is a towable unit that is hitched to the truck bed of a towing vehicle. They can run over 30 feet in length and can have multiple slide outs, which typically afford a larger interior living space than motorhomes.



*Figure 1: Towable "fifth wheel" RV—Brinkley RV Model Z3100
(https://wildrvlife.com/blog/brinkley-rv-review/)*

74.    Other towables are typically smaller in size, attached to a vehicle's tow hitch, and come in a variety of forms, from "casual campers" to "teardrop trailers."

75.    Over time, consumers looking to live full- or part-time in their RVs favored fifth wheels over other RV options. This was, in part, because fifth wheels offered more usable living and storage space and were easier to tow using a pick-up truck.

76.    As a result, fifth wheels were manufactured to be taller and longer than other travel trailers. And, as pick-up trucks were designed to pull heavier weights with ease, the weight of fifth wheels increased in tandem. Thus, while the average fifth wheel in the 1990s weighed approximately 7,000 to 7,500 pounds, the average fifth wheel today typically exceeds 11,000 pounds. Grand Design's most popular towable RVs often exceed 15,000 pounds.

77.    This drive to put larger and heavier RVs on the road has not been impeded by state or federal regulations.

78.    Although motor vehicles are regulated by multiple governmental agencies, towable RVs do not fall within these agencies' regulatory purview. Amid this regulatory vacuum, the RV industry's trade association and lobbying arm—the Recreational Vehicle Industry Association

("RVIA")—publicly claimed to act as a regulatory body.

79.    The RVIA, however, has no regulatory authority.

80.    Against this background, manufacturers of motorhomes and fifth wheels compete with one another to produce the largest, most luxurious RVs possible.

**B.    Grand Design**

81.    Grand Design was founded in 2012 in Middlebury, Indiana.

82.    The company quickly became one of the fastest growing RV brands in the industry, with an annual growth rate over 80 percent between 2013 and 2016.

83.    This growth was driven in part by its popular line of supersized towable RVs. Grand Design marketed its models, including the Solitude, Influence, Reflection, and Momentum, to customers who "prioritize stability for long distance travel" and were "in it for . . . the long stay."[15]

84.    While the Solitude, Influence, Momentum, and Reflection vary in size and levels of luxury, despite these cosmetic differences, all Grand Design towable RVs have the same basic structure and functionality, and all are situated atop the same type of frame, designed by Defendants and manufactured pursuant to Defendants' design specifications by the frame-building company Lippert Components Manufacturing Industries ("Lippert").

85.    At first, Grand Design built customer loyalty through its unique approach to safety. Unlike its competitors, which often prioritized the quantity of vehicles sold over their quality, Grand Design focused on providing higher quality RVs and customer service than its competitors.

86.    Grand Design also pioneered a "unique pre-inspection process to ensure [that]

---

[15] https://www.granddesignrv.com/adventure-more/learn/which-grand-design-model-is-right-for-you.

defects [were] minimized."[16] This pre-inspection process was burdensome and time consuming.

87.    As described by Grand Design's long-time CEO, Donald Clark, this process, unlike any other in the RV industry, first required workers to "scour the vehicles for defects multiple times."[17]

88.    If the RV passed these initial inspections, it was then transported to another "pre-inspection facility," where "every unit" underwent another "198-point inspection" before it was transported to dealers.[18]

89.    The company explained the purpose of this process: "Paranoia is a pretty powerful motivator for us. . . . We don't want to disappoint our dealers, retailers[,] and customers."[19]

90.    With this meticulous attention to detail and initial commitment to safety, Grand Design earned a stellar reputation in RV communities across America as a producer of safe, reliable RVs.

91.    As a result, within just four years of its founding, Grand Design experienced unprecedented annual growth, generating over $428 million in revenue between September 2015 to August 2016.

92.    In October 2016, the company was acquired by Winnebago.

**C.    Winnebago and its Acquisition of Grand Design**

93.    Founded in 1958 in Winnebago County, Wisconsin, Winnebago quickly became

---

[16] https://www.southbendtribune.com/story/business/2016/05/08/grand-design-rv-breaks-ground-on-11-million-project-creating-100-jobs/46623669/

[17] *Id.*

[18] *Id.*

[19] *Id.*

the "the No. 1 manufacturer of travel trailers and motor homes."[20]

94.    By 2004, "Winnebago's annual sales exceeded $1 billion, and [the company] was recognized as the 'most-admired RV manufacturer' by RVBusiness magazine."[21] In an attempt to further increase its share of the RV towables market, Winnebago acquired Grand Design in 2016 in an unprecedented $500 million deal.[22]

95.    However, with new management came new priorities. Where pre-acquisition Grand Design operated with a steadfast focus on safety and customer service, under Winnebago's control, its new focus was on maximizing profits. This became painfully clear during the COVID-19 pandemic.

## II.    Grand Design, Under Winnebago's Direction and Control, Manufactures and Markets RVs with Defective Frames.

### A.    Grand Design Uses the COVID Shutdown to Supercharge Sales with Marketing Deception.

96.    In 2020, as most of the world fought to contain the COVID-19 virus, Winnebago sought to benefit from the changed business environment.

97.    The COVID pandemic created a general increase in RV interest, driven by the fact that RVs allowed people to escape crowded cities and get outdoors, while keeping the comforts of home.

98.    Defendants relentlessly exploited that interest, using a litany of marketing ploys to target customers who wanted to purchase an RV for full-time use, and what would essentially

---

[20] https://www.winnebago.com/lifestyle/winnebagolife/showroom/winnebago-milestones-pioneering-for-65-years.

[21] *Id.*

[22] *Id.*

become their new home.

99.     For example, Grand Design's content manager, Thomas Gropp III, said in a public post, "If this pandemic has taught us anything, it's that life is too short to be bound to one place forever." He urged potential customers to see the silver lining of pandemic restrictions, which "have made touring the country in an RV . . . an extremely attractive option for those of us who want to get away on the weekends—or be nomadic full-time."[23] Gropp further assured potential customers that RVs are the best option for this "nomadic" lifestyle, even going so far as to claim that "[a]n RV might save your relationship."[24]

100.    At the time, Grand Design's website, brochures, and other channels of communication echoed these sentiments, advertising its RVs as "The Cure for Full-Time Living" and offering "Full Time Living: With You for the Long Haul."[25]

101.    Grand Design's direct communications to customers made similar promises of quality, safety, and care.

102.    Its brochures leveraged Grand Design's historic reputation, promising customers that Grand Design RVs are "Quality driven. Customer focused. Built to last."[26]

103.    For example, in its Solitude RV brochure, Grand Design claimed, "With quality at the foundation of everything we do, we do more. We pay attention to detail, we focus more on our

---

[23] *See* Gropp, T., *RV or Van-Life?: Why an RV Might Be a Better Better Fit than a Campervan,* http://web.archive.org/web/20230204162515/https://gdrv4life.granddesignrv.com/rv-lifestyle/rv-or-van-life-why-rv-might-be-better-fit-campervan (last accessed on January 30, 2025).

[24] *Id.*

[25] https://hntrbrk.com/winnebago/

[26] Grand Design, Transcend Brochure (last accessed September 14, 2024), https://www.granddesignrv.com/shopping-tools/brochures/brochure-download

customers, we perform more vigorous inspections."[27]

104.    Likewise, in its Momentum RV brochure, Grand Design promises customers, "[Y]ou're investing in a lifestyle of unparalleled quality and convenience."[28]

105.    Brochures for the Reflection and Influence contained materially the same representations regarding quality.[29]

106.    Grand Design's website provides further assurances about quality, safety, and care. Information pages for the Solitude, Momentum, Reflection, and Influence models represent that these RVs are "constructed to a superior standard."[30]

107.    Grand Design's website also prominently features customer reviews for each of its RV models, which uniformly depict five-star experiences, reinforcing a positive perception of Grand Design's products and bolstering the reputation of its RVs.

108.    Further, Grand Design recognized that its RVs must be, and assured customers that its RVs were, designed to withstand the environmental pressures attendant on their intended use: "[A]nything built by humans that travels down the open road is subject to issues, but it's how those issues are addressed that make Grand Design stand out." The website added, "We take care of our

---

[27] Grand Design, *Solitude Brochure* (last accessed September 14, 2024), https://www.granddesignrv.com/shopping-tools/brochures/brochure-download

[28] *See* Grand Design, *Momentum Brochure* (last accessed September 14, 2024), https://www.granddesignrv.com/shopping-tools/brochures/brochure-download

[29] *See* https://www.granddesignrv.com/shopping-tools/brochures/brochure-download

[30] https://www.granddesignrv.com/fifth-wheels/solitude?modelName=Solitude; https://www.granddesignrv.com/fifth-wheels/influence?modelName=Influence#brand-construction-item-5d0f193fd8-tab; https://www.granddesignrv.com/toy-haulers/momentum-g-class-travel-trailers?modelName=momentum-g-class-travel-trailers; https://www.granddesignrv.com/fifth-wheels/reflection

customers after the sale. An informed customer will be a Grand Design customer."[31]

109.   Advertisements posted on YouTube and other social media channels similarly promised customers "more attention to detail, more experienced [c]raftsmen, more rigorous inspections, more focus on the customer[.] . . . [A]t Grand Design RV, we do more of what matters."[32]

110.   For its part, Grand Design's parent Winnebago made similar representations, promising the highest quality and safety of all of its RVs and assuring customers that it would "Do the right thing," "Operate with integrity and trust," "Take ownership & be accountable," "Put people first," and "Focus on safety—always."[33]

111.   Moreover, since at least 2020, Winnebago has published an annual Corporate Responsibility Report, in which it has represented to customers and potential customers that it prioritized safety and ensures its RVs operate safely.[34]

---

[31] Grand Design RV, "Our Story," available at https://www.granddesignrv.com/our-story (last visited April 26, 2021).

[32] https://www.youtube.com/watch?v=T8gQNOhG-fc

[33] https://www.winnebagoind.com/about-us

[34] *See* 2020 Corporate Responsibility Report at 19 (promising "uncompromising safety, quality and innovation"), available at https://winnebago.gcs-web.com/static-files/8a21aa63-fb49-4f57-9b57-9aa01a36f6f1?_gl=1*u3duv8*_gcl_au*NjA2MDY0OTk4LjE3MjY1MTAzMjA.*_ga*NTgxMjI0NzQ3LjE3MjY1MTAzMjA.*_ga_0MCLKH5P7Q*MTcyNjg2MDAyNC4zLjEuMTcyNjg2MTc3My4wMjc4Lj; 2021 Corporate Responsibility Report at 10 (representing that "safety is paramount"), available at https://winnebago.gcs-web.com/static-files/aa64252a-1236-4e48-a256-18767082e5a6?_gl=1*vrntur*_gcl_au*NjA2MDY0OTk4LjE3MjY1MTAzMjA.*_ga*NTgxMjI0NzQ3LjE3MjY1MTAzMjA.*_ga_0MCLKH5P7Q*MTcyNjg2MDAyNC4zLjEuMTcyNjg2MTE0Ni41Ni4wLjA/; 2022 Corporate Responsibility Report at 13 (representing that Winnebago assigns personnel "dedicated to enterprise product safety and compliance to accelerate and enhance the safety of our products"), available at https://winnebago.gcs-web.com/static-files/f56fa871-e0f3-43ee-bd8d-c023eed60d9c?_gl=1*1rhyfnc*_gcl_au*NjA2MDY0OTk4LjE3MjY1MTAzMjA.*_ga*NTgxMjI0NzQ3LjE3MjY1MTAzMjA.*_ga_0MCLKH5P7Q*MTcyNjg2MDAyNC4zLjEuMTcyNjg2MDUwMi40ODi4wLjA/; 2023 Corporate Responsibility Report at 19 (assuring that Winnebago "upholds the highest (footnote continued)

112.    Grand Design also took steps to position itself as a lifestyle brand by paying social media influencers—dubbed "Grand Design Ambassadors"—to act as company representatives and both market to and engage with potential customers about the benefits of buying a Grand Design RV on YouTube, Instagram, and other social media platforms.



*Figure 2: Matt's RV Reviews, "WORLD DEBUT - ALL New Grand Design Influence!" (*https://www.youtube.com/watch?v=UrZU88hspUU*)*

*Figure 3: Screenshot of Mylesrvs tour of Grand Design Solitude shared on Instagram*

113.    Through the "Grand Design Ambassador" marketing tactic, Grand Design told customers that they could "live the life of luxury"[35] on the open road. These company ambassadors staged virtual tours for potential buyers, showing off their RV's substantial storage areas, spacious

---

standards of safety in our products"), available at https://www.winnebagoind.com/our-impact#carousel-a7e9447843-item-2812c9a857-tabpanel.

[35] *See* ChangingLanes, *Grand Design Momentum 410TH RV Home Tour* at 3:01, https://www.youtube.com/watch?v=4IocG9Fj1kY

kitchens, high-ceiling showers, sizable bedrooms, and even gas-powered fireplaces.

114.   In one such virtual tour, a Grand Design employee told potential buyers, "[A]s we all know, this is like a house on wheels. It's going through earthquake and hurricane type conditions. You need some kind of support. So we take this into consideration."[36]

115.   Through statements made in brochures, websites, social media posts, and carefully curated reviews, Defendants exploited Grand Design's former, hard-earned reputation for ensuring reliability and quality, and knowingly withheld information about the serious, recurring issues caused by a known frame defect. As a result, consumers were led to believe—albeit incorrectly— that their RVs were just as safe and dependable as those which previously underwent Grand Design's renowned 198-point inspection.

116.   Customers said that Grand Design "sold [them] the dream."[37]

117.   Defendants understood exactly what they were selling. They knew that purchasing an RV required significant expenditure and represented an investment in the customer's desire for freedom to travel where and when they wanted in luxury.

118.   Thus, Defendants knew that potential buyers, faced with the decision to invest in a Grand Design RV, would carefully review information available from its company website, on other websites, blogs, brochures, social media, Grand Design Ambassador videos, as well as other promotional material channels.

119.   So Grand Design repeatedly promised, through its myriad channels of communication, that its towables were uniquely safe for the road and built using "superior

---

[36] https://www.youtube.com/watch?v=FaPoB9W2Mc8 at 5:03 to 5:10.

[37] https://hntrbrk.com/winnebago/

construction standards."[38]

120.    And that dream of owning an RV comes with a sizable price tag. Most of Grand Design's RV models cost upwards of $100,000. For the largest sizes, the cost is closer to $150,000.

121.    Many of Grand Design's customers took out large loans to cover the cost of their new home. Others spent a significant portion of their retirement or life savings. Others sold their homes to buy their RV.

122.    Unfortunately for these customers, it turned out that Grand Design's promises of quality and luxury were lies.

123.    Moreover, Grand Design's online marketing failed to disclose any information about the RV's frames—an omission that concealed critical defects.

124.    Uniformly, Grand Design RV frames were not only under-designed to bear the weight of the superstructure atop them, but also increasingly assembled with missing or undersized lag bolts and other quality compromises made in the interest of lowering manufacturing costs.

125.    At no time did Defendants explicitly state or otherwise acknowledge that the frames installed in Grand Design RVs were not designed to support the weight of the RV or the stress attendant to life on the road. Instead, all of Defendants' public-facing representations touted the quality craftmanship of the RVs.

126.    Defendants' failure to disclose this insidious and material defect, coupled with their

---

[38] For example, the web pages for the Reflection, Momentum, Solitude and Influence all boast that the units include features such as fully laminated walls, a double insulated roof, and double insulated floors. None of the "construction" tabs include any information about the RV frame. See https://www.granddesignrv.com/fifth-wheels/influence?modelName=Influence; https://www.granddesignrv.com/fifth-wheels/solitude; https://www.granddesignrv.com/toy-haulers/momentum-mav?modelName=momentum-mav#brand-tabs-item-68605351a9-tab; https://www.granddesignrv.com/fifth-wheels/reflection

deliberate efforts to obscure or hide the issue, renders their affirmative representations about the RVs' quality, safety, durability, and value false and misleading.

**B.      Defendants Compromise on Quality While Seeking to Capitalize on Surging Demand.**

127.    As demand for RVs surged, the pandemic also caused widespread supply chain shortages. RVIA spokesperson Monika Geraci explained that "[t]he best way to describe the supply chain issues has been a game of whack-a-mole." Manufacturers and suppliers had to "overcome" shipping delays, material shortages, and a limited workforce, by "finding different suppliers or swapping things out."[39]

128.    As part of its efforts to meet the surging demand for RVs in the face of these supply chain issues and labor shortages, Winnebago and Grand Design cut corners on quality and design.

129.    The ensuing years were chaos for Defendants' employees, who observed that Defendants' focus on maximizing revenue meant they went from making 16 RVs per day to 36 RVs per day.[40]

130.    Workers in the Grand Design manufacturing facilities described their work as "literally running everywhere all day" and "going as fast as you can possibly work" to keep up with the demand.[41]

---

[39] RV Industry Association reports best shipment year on record, wvpe.org/wvpe-news/2022-01-25/rv-industry-association-reports-best-shipment-year-on-record.

[40] *Id.*

[41] *Id.*

131.    As a result, in 2021, Defendants reported record sales, with Winnebago's deliveries of and revenue from towable RVs growing by 48 percent and 64 percent, respectively.



132.    The majority of Winnebago's 2021 RV sales were Grand Design-branded towables.

133.    But Defendants' focus on maximizing profits caused it to compromise the safety standards that Grand Design had once pioneered.

134.    By 2022, Grand Design was producing approximately 1500 percent more RVs than it had before Winnebago took over, rendering its much-heralded inspection process, which customers had come to trust and rely on, impossible to maintain.

135.    One of Grand Design's founders, Bill Fenech, excoriated Winnebago's push to keep up with demand at the expense of quality at this time, observing that RV manufacturers "made a bad mistake, they overbuilt, and they screwed themselves[.] . . . I saw it coming, I spoke to key leaders whenever I could[.] . . . [N]ot that I knew stuff others didn't, but I wanted them to not do what they did."[42]

---

[42] Profiles in Leadership with Bill Fenech, tradeonlytoday.com/profiles-in-leadership-video-
(footnote continued)

136.    But Defendants failed to heed Mr. Fenech's warnings. And thousands of customers across the country are now suffering the consequences of their corporate greed.

**C.    Grand Design RVs are Manufactured with Defective Frames**

137.    Grand Design RVs manufactured in at least model years 2020 to 2023—including the Reflection, Influence, Solitude, and Momentum (collectively referred to as "Grand Design RVs")—are plagued by a latent defect in their frame, which often leads to a problem referred to as "frame failure" or "frame flex."[43] That problem occurs when an RV's frame—which is designed to flex with and absorb the stress of traveling on the road—flexes beyond its specified parameters, resulting in significant damage to the RV, and potentially endangering the lives of those towing the RV or others on the roadway.

138.    Despite cosmetic differences between the different models, each RV shares this unifying and fundamental defect: the structural frame underlying the unit is inadequately engineered and incapable of safely supporting the RV's weight under normal, advertised, and foreseeable use. Each of the Grand Design RVs is built on the same frame with the same design specifications developed by Defendants. This common design defect renders all models inherently unsafe and predisposed to structural failure.

139.    As a result of the underlying frame defect, Grand Design RVs have experienced frame failure at unprecedented rates.

140.    This unprecedented rate of frame failure was no surprise to Defendants; indeed, Defendants knew or should have known that the Grand Design RV frames were inadequately

---

series/video-profiles-in-leadership-with-bill-fenech (8:20-8:45).

[43] Discovery may reveal additional Grand Design make or model year RVs also afflicted by frame failure and Plaintiffs reserve the right to amend the complaint accordingly.

designed to support the larger and heavier fifth wheels designed to sit atop those frames.

141.    For years, Defendants had exclusive knowledge of this defect yet made no attempt to rectify the underlying problems in their defective frames or their misrepresentations about the RVs' quality and reliability.

142.    Over time, the rate of Grand Design RV frame failure began to increase.

143.    This spike was first recognized by the National Highway Transportation Safety Administration ("NHTSA"), which, in 2020, reported to Defendants an increase in complaints related to RV frames connected to Grand Design towables.

144.    In 2021 and 2022, NHTSA recorded a similar spike in frame complaints.



*Figure 4: National Highway Transportation and Safety Administration Complaints (https://hntrbrk.com/winnebago/)*

145.    On October 9th, 2024, after receiving at least twenty-three complaints of frame failure in these models, NHTSA opened a formal investigation into reports of frame failure "on model year 2017-2023 Grand Design fifth wheel recreational trailers, models Momentum and

Solitude."[44]

146.    Grand Design RV owners reported to NHTSA, in part, that the excessive frame flex "resulted in a cargo or entry door opening while in transit, some with objects lost on roadways."[45]

147.    Six complainants also reported that their RV's slideouts—which allow owners to extend their RV living space while the vehicle is stationary—extended out partially while they were driving.[46] According to Grand Design's owners' manuals for the Solitude and Momentum RVs, if the slideout is not in the closed position while the RV is being towed, it "could result in serious injury or death."[47]

148.    NHTSA warned that these reported defects "increase the risk of injury or a crash."[48]

149.    Of course, the number of complaints to NHTSA is only a small fraction of the true rate of frame failure.

150.    As a result of this significant frame defect, customers now say that their Grand Design RVs have become a "fulltime nightmare."

### 1.    Understanding RV Frames and Frame Failure

151.    The core problem with Grand Design RVs is their defective frame.

152.    Like the foundation of a house, all RVs require a sturdy frame, which can support the weight of the structure on top of it.

153.    All RVs are built on a frame, to which the axle, suspension, and tires are attached,

---

[44] https://www.nhtsa.gov/?nhtsaId=PE24029

[45] https://www.nhtsa.gov/?nhtsaId=PE24029

[46] *Id.*

[47] See Owner's Manual Solitude RV at 174; Owner's Manul Momentum RV at 178.

[48] https://www.nhtsa.gov/?nhtsaId=PE24029

and upon which the living space sits. And while all RV frames are designed to be flexible—allowing the vehicle to absorb impacts and stress inherent to road travel—the frame must also be strong enough to support the weight that sits on top.



*Figure 6: Diagram illustrating component parts of a Towable RV*
*(http://www.cliffschinkel.com/wp/portfolio/komfort-rv-trailer-construction/)*

154.    Approximately 70 percent of all RV frames are built by Lippert.

155.    But Lippert does not design the frames. Rather, Lippert simply builds the frames according to specifications provided by RV manufacturers like Defendants.

156.    Most manufacturers design the specifications for the frame based on the floorplan of their RV models.

157.    Each model has a "Gross Vehicle Weight Rating" ("GVWR") that determines how much weight can safely be loaded onto the RV.

158.    The floorplan, which lays out the interior design of the RV, functionally determines how that weight will be distributed across the RV.



*Figure 7: Examples of floor plans for Grand Designs' Momentum (top) and Influence (bottom) RVs. (**https://www.granddesignrv.com/toy-haulers/momentum/397th/**; https://www.granddesignrv.com/fifth-wheels/influence/3804ds)*

159.    Therefore, the frame designed for each model of RV must be strong enough to support each RV's weight at all points across the vehicle.[49]

160.    RV manufacturers like Winnebago and Grand Design are responsible for ensuring that the frame specifications sent to Lippert are designed to support the RV's anticipated weight, as well as how that weight is distributed across the RV structure that the frame will carry.

---

[49] *See* Video: Lippert Responds to 'Frame Flex' Issue – Part 2 - RVBusiness - Breaking RV Industry News, at 5:30 - 9:30.

161.   According to Lippert, the structure that RV manufacturers build on top of the frame is "super critical to the successful function" of the RV.[50]

162.   This issue is particularly significant because an RV can remain under its GVWR while still experiencing dangerous stress on its frame, depending on how the weight is distributed. For example, a floor plan may concentrate heavy components like appliances and storage compartments in centralized areas, creating localized stress points. Lippert engineers have acknowledged that, from a structural engineering standpoint, such concentrated weight distribution "is not advisable."[51]

163.   Despite this, under the direction and control of Winnebago, Grand Design continued to develop and sell increasingly larger and heavier RVs—featuring expanded storage capacity and additional appliances—without ensuring that the underlying chassis frames were properly redesigned or engineered to handle the added weight and structural demands. As a result, the frame specifications Defendants provided to Lippert were inadequate for the actual load-bearing requirements of the RVs. Defendants failed to ensure that the frames used in Grand Design RVs could safely support the real-world weight of the vehicles or withstand the stresses associated with normal and foreseeable use.

164.   Grand Design actively markets its RVs as spacious, livable, and capable of supporting full-time residency—emphasizing their storage capacity and residential-style amenities. However, these RVs lack the structural integrity necessary to safely support the weight associated with those very features. This mismatch between marketing and reality misled

---

[50] https://rvbusiness.com/video-lippert-responds-to-frame-flex-issue-part-2/ Part 1 at 7:15–7:40

[51] https://www.youtube.com/watch?v=UiumIq0OBpE at 6:30–7:16.

consumers, including Plaintiffs, who reasonably relied on Defendants' representations and purchased RVs under the belief that they were structurally equipped to handle the weight and usage promoted by Defendants. What's more, many customers report that the actual weight of their vehicle, even when completely empty, exceeds the GVWR.

165.    Other customers have received notifications that the pre-purchase GVWR of their RVs has been retroactively reduced, indicating that Grand Design knew or should have known that the original weight ratings were inaccurate or unsustainable.

166.    In effect, customers, including Plaintiffs, are now being told (or otherwise coming to understand) that their RVs are not safe by design.

167.    Customers, including Plaintiffs, are now being told (or otherwise coming to understand) that their RV frames are not able to safely support the actual weight of their RV, as originally represented at the time of sale, rendering Defendants' representations about the safety of the Grand Design RVs materially false and misleading.

168.    Customers have also identified substandard design and manufacturing practices contributing to the structural instability of the RVs. These include the use of lag bolts (used to secure the RV walls to the frame) being inserted into alternating holes rather than every available hole, and the use of lag bolts or screws that appear too short to properly anchor the RV body to the frame. These deficiencies significantly increase the risk of frame failure during normal use.

169.    Indeed, numerous customers report that when Grand Design technicians perform repairs, they often add lag bolts to previously unused holes and replace 3/8-inch screws with 1/2-inch screws. These corrective actions suggest that the original construction standards were insufficient and are now being addressed in a piecemeal, stopgap manner. However, such measures fail to remedy the underlying defect in the frame itself.

170.    As Dustin Simpson, an experienced RV repair technician, explained, Grand Design sold these RVs as "a full-time unit that you and your family can live in, you can work out of it," resulting in people "using them more for more rigorous traveling and full timing."[52] But, unbeknownst to customers, Grand Design was "overselling" the capacity of its vehicles.

171.    One owner of a 2023 Grand Design Momentum that has suffered serious frame failure put it succinctly: "I feel like they sold a lifestyle of being able to … use these larger rigs as homes. And I don't know if the rigs were built to sustain that, or if they tried to jam as much into them as possible to sell and market that idea."[53]

172.    Indeed, Defendants failed to disclose this material defect in their RVs frames across the product line, and instead uniformly misrepresented the quality, safety, and durability of the Grand Design RVs, thereby omitting critical information that would have materially impacted customers' purchasing decisions.

173.    When asked about the rise in frame failures on a recent 2024 earnings call, a Lippert executive singled out Grand Design RVs, denying that Lippert's construction of the frame was a cause of Grand Design's frame failure and stating that the frame failure is due, in part, to the way that Grand Design designs their RVs.

174.    On that call, Lippert executives confirmed that Grand Design RVs have had "flex issues over the years."[54]

175.    The Lippert executive further stated that frame failure was "especially" prevalent

---

[52] https://hntrbrk.com/winnebago/

[53] https://www.youtube.com/watch?v=rownphniqFA

[54] LCI Industries (via Public) / Q1 2024 Earnings Call - Form 8-K, https://www.publicnow.com/view/C03A98200884E113D23904F3449D1FF2B8983A34?171529 1175/

in Grand Design's "heavier units," which he described as "just giant houses moving down the road."[55]

176.    As part of its current investigation, NHTSA contacted both Grand Design and Lippert about the increasing complaints of frame failure. In its investigation bulletin, the agency noted that Grand Design reported that "the frame flex is only occurring in the upper deck area of the fifth wheel and is resulting in cosmetic defects such as moving sidewalls, damage to cabinets, binding doors, etc. However, Lippert believes that the effects of frame flex may also extend back to the front axle of the trailer."[56]

177.    Indeed, according to NHTSA, "while Lippert provides frames for multiple trailer manufacturers, the majority of complaints are for these Grand Design products."[57]

### 2.    The "Dreaded Frame Failure"[58]

178.    The defect that Grand Design has baked into its frames sometimes leads to frame failure shortly after purchasers begin driving their Grand Design RV. But for others, it may take years before problems emerge.

179.    Commonly reported warning signs of frame failure include loose bolts, creaky floors, bowing walls, plumbing issues, persistent leaks, damage to the roof, spider-cracking on the RV nose, screws pushing up from the flooring, or fixtures that appear to have shifted after the RV is towed.

---

[55] *Id.*

[56] https://www.nhtsa.gov/?nhtsaId=PE24029

[57] https://www.nhtsa.gov/?nhtsaId=PE24029

[58] See Facebook Post from Pete West, September 19, 2024.



*Figure 8: Early warning signs of frame failure. Left: front cabinetry moving against wall. Right: door side trim shifting out of place. (Photos from Facebook Post made by a member of Grand Design RVs with Major Issues showing damage to their Solitude RV.)*

180.    While many customers may not initially understand these problems to be signs of a poorly designed frame, once these problems start appearing, the RV is headed down the road toward catastrophic damage.

181.    In its more advanced stages, slide-outs may extend while the RV is being towed, critical springs may flatten or snap, the axle can shift out of place, the frame may crack or break, and the upper deck may fail, rendering the RV unlivable, not to mention dangerous.



*Figure 9: Photos of more advanced symptoms of frame failure. Left: front cap damage on a customer's Solitude RV discovered by a repair shop. Right: interior damage discovered by the repair shop. (Photos from Facebook Post made by a member of Grand Design RVs with Major Issues showing damage to their Solitude RV.)*

182.    According to independent engineers and RV repair specialists, once an RV's frame fails, the RV is dangerous to operate on the road because the frame is no longer able to support the heavy structure that sits on top of it.

183.    Addressing frame failure can cost customers tens of thousands of dollars, and even then, the underlying frame defect remains, and repairs do not guarantee a long-term solution.

184.    In fact, once the frame fails, repair options can be extremely limited. Many RV dealerships, including authorized Grand Design dealerships, are not equipped to handle frame failure and will refuse to even attempt to fix it. As a result, Grand Design has advised its customers to take their RVs to Grand Design's lone service center, located in Middlebury, Indiana.

185.    But in many cases, because a Grand Design RV with frame failure is not safe to haul to Indiana, these RV owners effectively have no recourse.

186.    Moreover, given the prevalence of Defendants' defect, even if such travel is possible, customers are often forced to wait months for an appointment with the Grand Design service center. And once there, it can take weeks or even months for Grand Design technicians to diagnose and repair the frame failure.

187.    For many full-time RV owners—the very demographic to which Defendants targets their marketing—frame failure leaves them immobile, and in many cases, unhoused for weeks or months at a time.

188.    In some cases, Grand Design will send a Special Repair Team ("SRT") to a customer's location to inspect the RV for damage. However, numerous customers have reported that the SRT conducted an incomplete or otherwise deficient inspection—failing to take all prescribed steps necessary to evaluate the full scope of frame flex in the unit. As a result, customers with frame failure may be told by Grand Design that their unit is safe.

35

189. To make matters worse, once frame failure occurs, it is more likely to happen again in that vehicle, not least of all because the underlying defect remains unchanged.

190. Many RVs have experienced multiple frame failures, even after repairs at the Grand Design service center. Grand Design technicians have advised customers that the frame failure "fix" is evolving.

191. The fact that frame failure often recurs significantly diminishes the resale or trade-in value of Grand Design RVs, which, in turn, may be economically devastating to Grand Design's customers, many of whom are saddled with large outstanding loans. And the existence of a defect common to Grand Design frames means the value of Grand Design RVs is diminished even before frame failure has occurred.

**D.     Public Denial and Private Censorship: How Grand Design Has Tried to Dodge Liability**

192. Defendants knew prior to manufacturing the 2020 model year RVs that the frames were insufficient to support the weight of the fifth wheels designed to sit atop them. The design specifications for the 2020 frames were simply taken from older, lighter Grand Design RVs and Defendants failed to update these earlier design specifications to account for the additional weight and expected road stress.

193. Further, since at least 2020, Defendants have known that the Grand Design RV frames were, in fact, failing at elevated rates. Frame failure was reported to Defendants by their customers and reported to NHTSA. As reports of failure spread among the RV community, consumers took to online platforms to discuss their issues. However, Defendants often monitored and censored these discussions, engaging in a sustained misinformation campaign to downplay or discredit complaints. They routinely characterized the reported problems as "normal wear and tear" or merely cosmetic, in an effort to protect Grand Design's reputation and conceal or obfuscate

the existence of the defect. As a result, even when customers noticed issues with their RVs that were likely related its faulty frame, many were unaware that the damage was due to frame failure.

194.    Indeed, high-level personnel at Winnebago monitor Facebook groups and YouTube channels that document purchasers' problems with Grand Design frames and have discussed these complaints in public and private meetings with customers.

195.    One Facebook group, "Grand Design RV Owners with Issues," has over 15,000 members. The group description reads: "This group was started as a support group for Grand Design RV owners that have had issues with their campers due to either poor construction, non-existent quality control, or a failed warranty program."

196.    Another Facebook group, "Grand Design RV Major Issues," was created in 2024, has more than 6,900 members, and has been growing by roughly 100 members per week. Among members, frame failure in model year RVs manufactured in 2020 to 2023 is prevalent.

197.    There are also more than 30 YouTube channels that discuss frame failure in Grand Design RVs.

198.    These social media groups were not founded until large numbers of Defendants' customers began experiencing frame failure.

199.    What's more, many Grand Design RV owners are older, possibly retired adults, who may not be aware that these social media groups and channels exist. Accordingly, most of Grand Design's customers (unlike the company itself) were unaware of the frame defect in the RV they purchased.

200.    Defendants, but not their customers, were also made aware of the systemic problem with Grand Design RVs by skyrocketing warranty claims.

201.    Winnebago saw a 278 percent increase in warranty claims between 2017 and 2023.

202.    In 2024, Grand Design's warranty claims amounted to approximately $102 million, its highest amount since 2017.

203.    And on March 27, 2025, in a Q2 Financial Results Call, Brian Hughes, Winnebago's Senior Vice President and Chief Financial Officer, stated, "[O]ur Winnebago towables business is going through a reconstruction or revitalization as we've talked about earlier in the call here. And as we address the ***historical quality issues*** that this business has had, ***we are certainly experiencing elevated warranty expense as a percent of sales***, and we hold this to be more transitory. In our Grand Design Towables business, I'll remind you of the longer history as it relates to warranty expense and experience in this business, where we had a couple of years, fiscal twenty twenty three and fiscal twenty twenty four, where warranty expense as a ratio of sales was notably lower relative to the long term trend. In fiscal twenty twenty five now, we have seen warranty expense ratio of sales rise as sales gone through the trough of the cycle to maybe call it 30 to 50 basis points higher than historical levels ***as a result of addressing some broader quality campaigns***."[59]

204.    In other words, Defendants are well aware of the ongoing, self-characterized "quality issues" with their Grand Design RVs, and the increasing frequency of frame failure in their RVs.

205.    But Defendants never issued a recall of these defective and dangerous RVs.

206.    Rather than recalling their dangerous RVs or warning past purchasers and potential customers of the known risks, Defendants have repeatedly and publicly denied that frame failure

---

[59] Earnings call transcript: Winnebago Q2 2025 sees stock surge on EPS beat (emphasis added), https://www.investing.com/news/transcripts/earnings-call-transcript-winnebago-q2-2025-sees-stock-surge-on-eps-beat-93CH-3952471

is an ongoing issue, brushing it off as "rumors" and "misinformation."[60]

207.    For example, on a 2024 investor call, Winnebago CEO Mike Happe dismissed the frame failure claims as "misinformation that has been disseminated on social media."[61]

208.    Happe asserted that "[l]ess than 1% of all Grand Design fifth wheels built in the entire history of its company have experienced any sort of excessive frame flex issue." He further claimed that the issue is "not as large in actuality from a unit impact standpoint, nor in financial impact as several stakeholders perceive it to be."

209.    Grand Design's customers disagree.

210.    Happe has likewise misstated the cost and reality of repairs, stating that Winnebago "do[es] have some, of course, experience where we've seen it," but that "the cost per fix is . . . not meaningful."[62] He also claimed that "Grand Design has always taken care of the customers," as part of its "goodwill practices."

211.    Grand Design's customers again disagree.

212.    Defendants have also sought to shift blame to customers. Grand Design's website has a page dedicated to Frequently Asked Questions about frame failure, which states that "numerous factors may contribute to excessive frame flex," such as use-related causes like "road impacts, collisions, loading and weight distribution." [63]

---

[60] Winnebago Industries (WGO) Q3 2024 Earnings Call Transcript, https://www.fool.com/earnings/call-transcripts/2024/06/20/winnebago-industries-wgo-q3-2024-earnings-call-tra/#:~:text=Third%20quarter%20consolidated%20net%20revenue,adjusted%20EBITDA%20of%20%20%2458%20million/

[61] *Id.*

[62] *Id.*

[63] https://www.granddesignrv.com/owners/resources/frame-faq

213.    However, Grand Design RVs are intended to travel the road and serve as a home on wheels—so customers reasonably expect that their frames can handle normal road stress and bear the load that full-time living necessarily entails. And how weight is distributed across the frame is directly tied to the floorplans that Grand Design has designed for its RVs.

214.    Ultimately, Defendants' public statements are a façade. Even as they have sought to deny the existence of a problem and shift blame when frame failure occurs, Defendants have privately discussed the growing complaints of frame failure.

215.    High-level personnel at both Winnebago and Grand Design have known for years about the hardship their customers experience in trying to address frame failure and the other problems caused by the defect in Grand Design frames.

216.    Repairing a fifth wheel frame is an expensive and risky undertaking. And according to the RVIA, 43 percent of full-time RVers are retired and 72 percent have an income of under $65,000 per year.[64] Thus, for many Grand Design customers, the thousands of dollars they spend on repairs—due to Defendants' defectively designed frames and failure to warn their customers of this defect—represents a significant, potentially bank-breaking expense. And this does not even account for the out-of-pocket expenses associated with losing access to their home while it is being repaired.

217.    Grand Design's inability to fix its defective frames endangers the public and piles additional burdens on its customers.

218.    Furthermore, Defendants' failure to disclose the existence and prevalence of these defective frames in the Solitude, Momentum, Reflection, and Influence, and their continued

---

[64] Go RVing RV Owner Demographic Profile, https://www.rvia.org/go-rving-rv-owner-demographic-profile

actions aimed at burying the truth, render their affirmative statements of quality, safety, and durability misleading.

219.     But while Defendants have continued to deny the problem in public, in private, they have worked to cover-up their lie, now removing articles and references from Grand Design's website promoting its RVs as fit "for Full-Time Living."[65]

220.     Defendants' cover-up extends far beyond their own websites; they also work to silence disgruntled customers who are vocal about the problems they have faced, all with the goal of concealing the systemic defect in Grand Design RVs.

221.     Grand Design frequently censors customers with non-disclosure agreements ("NDAs") in an attempt to avoid liability and conceal the defect in its RV frames.

222.     Some customers report that they have been offered free repairs from Grand Design in exchange for signing an NDA. This would appear to be what Winnebago CEO Happe was referring to when he referenced Grand Design's "goodwill practice."

223.     The NDAs imposed by Grand Design are unique and notable in that they include a clause requiring customers to remove all online posts criticizing the company or its RVs and prohibiting customers from posting critical content ever again.[66]

224.     These NDAs thus harm the public by preventing potential victims and purchasers from learning about the danger of frame failure in Grand Design RVs. NDAs that shield the truth about defective products from the public are often (and rightly) unenforceable.

225.     The use of NDAs in these circumstances is especially pernicious because social

---

[65] *See* https://hntrbrk.com/winnebago/.

[66] "Grand Deception"—Winnebago Muzzles Outcry Over Major Problem That Owners Say Makes RVs Dangerous, Untowable, Worthless, https://hntrbrk.com/winnebago/

media posts are one of the few mediums through which customers can learn about the systemic frame defects in Grand Design RVs. By requiring victims to remove their prior posts, Grand Design is removing one of the only sources of information available that might counteract the misleading marketing that Defendants direct toward customers and potential customers.

226.    In addition to forcing customers to take down their posts on social media and third-party online forums, Grand Design deletes the majority of posts with negative feedback about Grand Design frames on the forums that the company itself manages.

**E.    Grand Design's Technical Service Bulletin and New Warranty Are Insufficient to Resolve the Issue.**

227.    In March 2024, Grand Design issued a Technical Service Bulletin ("TSB") to service technicians and dealers addressing the frame failure issue.

228.    Generally, an automaker will issue a TSB when it "becomes aware of common problems" recurring in a particular make or model of their vehicle. A TSB "typically covers parts or processes that malfunction but aren't considered safety issues."[67]

229.    Grand Design's TSB states that the frame issue may cause "cosmetic damage" due to "miniscule" frame flex. However, it then instructs dealers and service technicians to contact Grand Design if they observe "any structural damage," including broken welds or cracked and torn steel.

230.    Grand Design only issued this TSB for its Solitude and Momentum models, but not its Reflection and Influence models. Some customers suspect Grand Design excluded the Reflection line of RVs in particular—which is known to have frame failure issues—to avoid

---

[67] *CARFAX*, What is a TSB (Technical Service Bulletin), available at https://www.carfax.com/blog/tsb-technical-service-bulletin (last accessed September 14, 2024).

reputational harm to its best-selling RV.

231.    For Grand Design, the benefit of issuing a TSB, as opposed to a recall, is that it is not obligated to notify customers or pay for repairs out of warranty.

232.    What's more, while the TSB purportedly instructs RV technicians, including Grand Design's SRTs, on how to inspect for signs of frame failure, customers report that Grand Design agents only check the measurement from the pin box to the lower front corner of the RV to evaluate for excessive frame flex. But this metric fails to capture excessive flex across the entirety of the frame, such as failure in the front upper deck.

233.    Grand Design has thus hidden from its customers and/or publicly denied that the RVs they are towing and living in are compromised by a dangerous latent defect.

234.    Further, although Defendants issued a TSB encompassing certain Grand Design RVs, they do not acknowledge the structural defects within Grand Design RV frames and refuse to issue a recall.

235.    In contrast to a TSB, which is only provided to Grand Design dealerships, a recall would require Defendants to notify all purchasers of the defective frame, thereby providing much more appropriate notification to their customer base, many of whom are likely unaware that their Grand Design RVs sit atop frames that are highly likely to fail.

236.    In June 2024, Defendants attempted to placate concerned customers by announcing a new, extended warranty for Grand Design RVs. Under this "Five Year Limited Towable Frame Warranty" ("Warranty"),[68] consumers could now utilize a five-year retroactive warranty, which was made transferable to one other purchaser. All prior warranties issued by Grand Design had

---

[68] See Grand Design Five Year Limited Towable Frame Warranty,
https://www.granddesignrv.com/1-3-5-warranty

excluded frames from coverage entirely.

237.    All 2020 and later model-year Grand Design RVs could purportedly be covered by the Warranty, which was triggered from the original date of purchase by the consumer who first bought the RV, so long as they were (somehow) "registered to the vehicle owner's name with thirty (30) days of the date of purchase."

238.    Defendants touted this move as demonstrative of their unprecedented stance on the quality of Grand Design RVs. The new Warranty was also promoted as a boost to the resale value of Grand Design RVs.

239.    But what the Warranty really does is confirm Defendants' understanding of the defect in their frames and reveal their interest in minimizing their responsibility for it. That's for multiple reasons.

240.    *First*, because the frame defect is a latent one, there is no way to predict when an RV's frame will fail, and thousands of customers may not experience frame failure until they are outside the warranty window. The Warranty also offers no relief to those customers whose frames failed prior to June 2024 and who were forced to deal with the defect on their own, often at great expense.

241.    *Second*, Defendants have loaded the Warranty with preconditions and procedural requirements that are next to impossible for any customer to follow. As noted above, the Warranty only takes effect if "registered to the vehicle owner's name with thirty (30) days of the date of purchase," a seemingly impossible task for anyone who purchased an RV earlier than 30 days before the Warranty was first issued in June 2024. Additionally, the Warranty is limited to the original purchaser or the person to whom the Warranty was transferred within the warranty period, and it cannot be transferred more than once. This automatically excludes many purchasers of

Grand Design RVs. And the Warranty also requires Grand Design to be notified of the covered defect within 20 days of when the defect "was discovered or *should have been discovered by a reasonable person exercising reasonable care*." This language sets up an escape hatch, allowing Grand Design to avoid repairing a customer's RV if it decides that the customer should reasonably have discovered the defect earlier.

242.    *Third*, even customers who could overcome these initial hurdles face various reasons for denying coverage that Defendants have embedded into the Warranty itself. The Warranty excludes "[d]amage caused by overloading, excess weight or improper weight distribution," as well as "[d]amage caused by road surface conditions, including, but not limited to . . . gravel/sand, ruts, or pot holes."[69] But those purported sources of damage involve the basic function of Grand Design RVs, which customers expect to be able to handle normal road conditions as well the weight associated with full-time living. And, as outlined above, the purported weight capacity and distribution are directly tied to the floorplan designed by Defendants. In other words, because Grand Design has not designed a frame that lives up to its RVs' intended use, its Warranty excludes such use from coverage.

243.    *Fourth*, the Warranty also excludes "[a]ny and all components that are attached to the frame assembly in final stage production, including axles . . . sidewalls or any other body structural component, any components installed in the underbelly area between the frame rails or any other components not considered to be part of the welded frame assembly."[70] In this way, Grand Design's Warranty expressly excludes all foreseeable damage caused by its defective frame,

---

[69] *Id.*

[70] See Grand Design Limited Five Year Towable Frame Warranty, https://www.granddesignrv.com/1-3-5-warranty

aside from damage to the frame itself.

244.    *Finally*, customers attempting to exercise the Warranty have faced a series of practical challenges, citing red-tape restrictions from the company that make it difficult to obtain the repairs within a reasonable time. In fact, some customers report that the wait times were so long—either because Grand Design failed to respond or due to an extensive backlog for repairs—that by the time they were able to have the repairs completed, their Warranty had expired and Grand Design refused to honor it. Moreover, because many consumers must take their RV to Grand Design's facility in Indiana to address frame failure, consumers who are unable to haul their towable to that destination are foreclosed from exercising their Warranty rights.

245.    In short, the Warranty coverage is largely illusory to many customers.

III.    **Plaintiffs' Experiences with Grand Design RVs and Frame Failure**

A.    **Matthew Auble**

246.    Plaintiff Matthew Auble purchased a new Momentum 399 TH in August 2022 from Orangewood RV (since acquired by Lazydays RV) in Surprise, Arizona. At the time of sale, Orangewood RV was an authorized Grand Design RV dealer; Lazydays RV is currently an authorized Grand Design RV dealer.

247.    Prior to purchasing his RV and in connection with this purchase, Plaintiff conducted significant research into Grand Design and its RV models. This research included reading materials shared on the Grand Design website, attending an in-person factory tour at Grand Design; engaging in the online factory tour, investigating some of Grand Design's manufacturing processes, and reading online representations regarding the quality and reputation of Grand Design RVs.

248.    At no point while researching Defendants' RVs was Plaintiff aware of or notified

by Defendants, in any manner, about issues with Grand Design RVs' frames.

249.    In June 2024, Plaintiff travelled with his RV to Ohio. Upon arriving at his destination, Plaintiff observed severe damage to the interior of the bedroom, including damage to the frame extensions and walls. The RV bedroom "looked like it was eating itself."

250.    Upon examining the RV, Plaintiff discovered, among other things, multiple damaged welds in the front of his RV. Plaintiff determined that these issues were caused by excessive frame flex.

251.    Plaintiff was forced to cut his trip short and haul the RV back to Arizona so he could stay with friends and family while his RV was repaired. During this journey, the RV's condition continued to deteriorate: cargo doors opened while Plaintiff was driving on the road, trim molding and seals on the RV peeled away from their position, and Plaintiff observed a large gap in the hitch that connects the truck pulling the fifth wheel and the base of the king pin.

252.    Upon arriving in Arizona, and based on Grand Design's recommendation, Plaintiff found the closest Grand Design dealership and dropped off his RV for repairs in August 2024. The repairs on Plaintiff's RV were not completed until March 14, 2025—more than seven months later. Because Plaintiff lives full-time in his RV, he relied on the hospitality of friends and family while he waited for his home to be repaired.

253.    Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable.

**B.  Joseph Alterman**

254.    Plaintiff Joseph Alterman purchased a new 2022 Momentum 376THS in from  Palm Beach RV in West Palm Beach in or around May 2021.

255.    Prior to purchasing his RV and in connection with this purchase, Plaintiff

researched Grand Design RVs by, among other things, reading Grand Design RV brochures and speaking with a representative from Grand Design about Grand Design's RVs.

256.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about issues with Grand Design RVs' frames.

257.    The problems in Plaintiff's RV began when his RV left the lot, including damage to the cabin main door and door frame, and cracked wood in the interior of the RV.

258.    Around November 2021, a transporter hauled Plaintiff's RV more than 850 miles to his location in Florida. Plaintiff arrived to inspect his RV and observed that multiple doors and latches in his unit were unable to lock. Plaintiff further observed wall damage on the corners and trim and detected a water leak in the forward pass-through compartment, even though the water had not yet been connected.

259.    In or around December 2021, a Grand Design representative conducted a pre-delivery inspection of Plaintiff's RV. During this inspection, Plaintiff noticed, among other things, excessive squeaking in the floors. Making these initial repairs required multiple trips to an authorized dealership, Palm Beach RV.

260.    In 2022, Plaintiff was driving his RV through Orlando. While traveling on a busy highway, the doors to the storage compartment where Plaintiff stores propane tanks suddenly popped open. The propane locked doors opened while Plaintiff was driving with his RV on at least two occasions. Additionally, the front locked compartment of Plaintiff's RV, where the generator is stored, also popped open while Plaintiff was towing his RV

261.    Around October 2022, Plaintiff drove with his RV to South Carolina. After this trip, Plaintiff noticed that the front slides boxes of his unit were damaged, and the problems with his floors persisted. As Plaintiff continued to use his RV, the issues worsened.

262.     Plaintiff had planned to take a trip with his family to Tennessee in his RV in summer 2023. However, due to concerns that his RV was not safe to drive, Plaintiff chose to fly and rent a car instead.

263.     In 2024, Plaintiff brought his RV in for a routine warranty inspection. He informed the technicians of the problems he was seeing in his unit, including the trim coming off the front of his unit, and the floors creaking loudly and moving excessively when walked on. No technician informed Plaintiff at this time that his RV frame was defective or told him that Grand Design issued the TSB.

264.     In addition to this damage, Plaintiff has also observed, among other things, that his front stabilizers were misaligned; the doors of his RV are broken or loose; the slide boxes appeared to have excessive wear; and screws and wood trim were falling off inside his vehicle. Plaintiff requested that his dealership in Palm Beach repair these damages. However, he was informed that he would have to bring his RV to General RV in Orlando—a long trip, which he did not feel safe making given the RV's condition.

265.     Plaintiff believes this damage is all caused by frame failure in his RV. Plaintiff is concerned about his safety in traveling with his RV to have this evaluated, and moreover, is concerned that his problems will be dismissed by Grand Design as part of the company's cover-up of the widespread frame failure among its RVs.  As a result of these damages, Plaintiff has not used his RV since October 2024.

266.     Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

**C.  Don Bilyeu**

267.     A Plaintiff Don Bilyeu purchased a new 2022 Grand Design Solitude 372WB in 2022 from a dealership in Oregon. Plaintiff and his spouse live full-time in their RV.

268.     Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design RVs by among other things, reading information on the Grand Design website and Consumer Reports.

269.     Shortly after purchasing the RV, Plaintiff began noticing problems. The walls to the bedroom were moving and popping off, the bedroom steps were pulling away, and the bedroom slide did not move smoothly.

270.     Plaintiff further observed the door to the generator popping open while driving; and observed sawdust coming down from the cabinetry, which shifted around during transit causing friction.

271.     Additionally, while the sliding door to the bathroom in the front cap had originally been flush to the doorjamb, as Plaintiff used his RV, a significant gap developed at the bottom of the door. Other doors in the RV shifted as well; for example, the closet doors in the front cap also developed a gap at the bottom, and the lock on the door began to pop out of the floor during travel, pulling up the flooring around the door. Plaintiff attempted to install an additional lock at the top of the closet, but that locked became displaced as well.

272.     The floors in Plaintiffs RV also began to creak loudly throughout the entire unit.

273.     While on a trip from Oregon to Arizona to spend the winter, Plaintiff stopped at Busted Knuckle, an RV mechanic in Las Vegas, to have his RV inspected. Plaintiff was immediately told not to drive his RV any further. The technicians at Busted Knuckle diagnosed Plaintiff's RV with frame failure.

274.     During this inspection, the RV technicians also discovered there were multiple

missing lag bolts throughout Plaintiff's unit.

275.    Because Plaintiff and his spouse live full-time in their RV, they were displaced for three months during these repairs and had to rely on family hospitality while they waited for their home to be functional again.

276.    At his own expense, Plaintiff asked the mechanic to add cross-supports for more stability at the axels. While these repairs have resolved some of Plaintiff's problems, he remains concerned that the frame failure will recur.

277.    Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

**D. Stephen Clay**

278.    Plaintiff Stephen Clay, a citizen of South Carolina, purchased his new 2022 Grand Design Momentum 397TH-R RV from Lifestyle RV in Kansas City, Missouri in or around January 2022.

279.    Prior to purchasing his Grand Design RV and in connection with that purchase, Plaintiff conducted extensive research on Grand Design RVs. This research included reviewing information on Grand Design's website and reading Grand Design's RV brochures, watching YouTube videos from Grand Design Ambassadors, reading online representations regarding the quality and reputation of Grand Design RVs, and consulting with representatives at Grand Design-authorized dealerships.

280.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

281.    In or around 2023, while at Grand Design's national rally in Indiana, Plaintiff noticed that the front cap of his RV was separating, and the floor was creaking. A Grand Design representative told Plaintiff this was considered normal wear and tear. However, over time, the symptoms throughout Plaintiffs RV continued to worsen.

282.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

283.    In or around March 2024, Plaintiff attended the Grand Design rally in Myrtle Beach. While there, he informed a Grand Design representative about the continued issues he was experiencing in his RV, including, among other things, creaking floors and separation along the wall seams and moldings throughout the RV. Grand Design made an appointment for Plaintiff's RV to be brought to their factory in Indiana in August 2024.

284.    While there, Grand Design replaced the RV's carriage bolts, completed structural welding, replaced the linoleum floor in the bedroom and sought to address the creaking floor. However, Grand Design did not provide Plaintiff with a full work order, and therefore Plaintiff is unsure of the type or extent of work completed on his RV. These repairs took approximately one month, during which time Plaintiff had to pay out-of-pocket for his wife to stay at a hotel while their RV—where she normally lives while traveling for work—was being repaired.

285.    In or around 2025, the generator in Plaintiff's RV stopped working. Once again, Plaintiff brought his RV to Grand Design's factory in Indiana for repairs. These repeated trips caused inconvenience and resulted in out-of-pocket expenses.

286.    Moreover, while repairs may provide temporary relief, given the nature of the underlying frame defect, the problems in Plaintiff's RV will inevitably recur.

287.    Plaintiff has considered trading in the RV, only to learn that its value has significantly declined, making it impossible to obtain a fair resale price. He is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

**E. Warren Colburn**

288.    Plaintiff Warren Colburn, a citizen of Kentucky, purchased his new 2022 Grand Design 397THS Momentum RV from Lazydays RV in Nashville, Tennessee in or around September 2022.

289.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff conducted extensive research on Grand Design RVs by, among other things, reviewing floor plans, promotional materials and other information on Grand Design's website, as well as consulting with representatives at Grand Design-authorized dealerships.

290.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

291.    Shortly after acquiring the RV, Plaintiff began noticing a series of troubling issues: cabinets were coming apart, molding and trim pieces were detaching, the closet showed visible signs of shifting, and the cargo doors no longer aligned correctly with their frames.

292.    In March 2024, while traveling from Arizona to Kentucky, Plaintiff's RV experienced a catastrophic suspension failure. Upon arriving at a campground and setting up for the night, Plaintiff discovered that one of the axles had come loose and that one leaf spring had completely failed. The following morning, Plaintiff was forced to slowly tow his damaged RV to the nearest visitor center, where he contacted a mechanic who came to the site and made emergency repairs.

293.    As Plaintiff continued his journey, he observed that the remaining leaf springs on his RV were progressively flattening the more he towed his RV.

294.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

295.    When Plaintiff became aware of the widespread frame failure issues afflicting Grand Design RVs, he learned of the TSB issued for his unit and subsequently brought his RV to Adventure Camper Sales in Oak Grove, Kentucky for inspection in or around April 2024. The dealership conducted the TSB inspection and diagnosed Plaintiff's RV with excessive frame flex.

296.    The dealership contacted Grand Design to arrange for the necessary repairs. It took approximately one month for Grand Design to dispatch an SRT to the dealership. Upon inspection, the SRT confirmed the excessive frame flex. The technician ultimately replaced all of the lag bolts in Plaintiff's unit, replaced the flattened leaf springs, and purportedly repaired the frame.

297.    However, despite Grand Design's repair attempt, the RV's frame failed again in 2025—this time, while Plaintiff traveling through a remote area. Plaintiff was forced to leave his trailer in a parking lot and drive to the nearest town in search of a replacement part to make an emergency repair.

298.    Upon returning home, Plaintiff brought the RV back to Adventure Camper Sales for professional assessment. The dealership discovered further extensive damage related to frame flex. As a result, Plaintiff's RV remained out of service and stranded at the dealership for approximately three months while awaiting repairs.

299.    Plaintiff no longer has confidence that his RV is capable of performing as advertised. He is now afraid to use his Momentum RV for its intended toy-hauler purpose—despite

having purchased the RV specifically for that function and having acquired recreational vehicles to haul based on the representation that the RV was suitable for such use.

300.     Plaintiff has considered trading in the RV, only to discover that its value has significantly declined, making a fair resale price unattainable. He is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

## F. Leo Critchfield

301.     Plaintiff Leo Critchfield purchased a new 390 RK Solitude in Nevada in July 2020. At the time of this purchase, Plaintiff was a resident of California.

302.     Prior to purchasing his RV and in connection with this purchase, Plaintiff researched the manufacturers of these RVs and researched the different RV models; Plaintiff conducted this research by, among other things, reading information posted on Grand Designs' website and reading the warranty.

303.     At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about issues with Grand Design RVs' frames.

304.     Within the first six months of owning his RV, Plaintiff began experiencing issues with the slides that extended the RV's kitchen space.

305.     Plaintiff brought his RV to Blue Dog RV of Nevada, an authorized Grand Design dealership. His RV sat at this dealership, unusable, for eight months out of the first one-and-a-half years he owned the vehicle. Ultimately, Blue Dog purportedly repaired the RV and returned it to Plaintiff's control. Plaintiff was not informed that the problems were caused by excessive frame flex.

306.     Despite these repairs, new issues continued to arise in Plaintiff's RV. For example, Plaintiff observed interior flex on the walls, including the wall where his TV and fireplace are

located. Additionally, Plaintiff's TV swings out when he is traveling, even though he has taken steps to secure the TV. Likewise, the front of Plaintiff's fireplace falls off every time he travels.

307.    On one occasion, while driving down the road, the glass shower door in Plaintiff's RV spontaneously shattered, even though the vehicle had been properly prepared for travel.

308.    In approximately March 2024, the slides on Plaintiff's RV broke again. This time, the damage occurred while Plaintiff was using the RV on vacation. As a result of this defect, Plaintiff was unable to use half of his kitchen during his trip, including being unable to access cabinets and most of his sink.

309.    In June 2024, Plaintiff brought his RV to a repair shop in Mohave, Arizona. At this time, although Defendants issued a TSB in March 2024, no one associated with Grand Design told Plaintiff about the TSB or the reasons it was issued. The RV was not repaired until approximately October or November 2024. Upon information and belief, the problems exhibited in Plaintiff's RV are caused by excessive frame flex.

310.    Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

**G.  Michael Croteau**

311.    Plaintiff Michael Croteau purchased a new Momentum 376 THS from a dealership, Country Camper (since acquired by Blue Compass), in June 2020 in Montpelier, Vermont. At the time of purchase, Plaintiff was a resident of New Hampshire.

312.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff conducted research into these RVs by, among other things, reading Grand Design's RV brochures.

56

313.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

314.    Approximately one-and-a-half years after purchasing the RV, Plaintiff began noticing significant cosmetic damages to his unit: the closet frame separated from the wall; the facial trim, doors and drawers no longer shut correctly; and the doors to his bathroom and bedroom were crooked. At the time, Plaintiff was unaware that these are symptoms of frame failure.

315.    In the summer 2024 while performing routine maintenance, Plaintiff identified a broken shackle on the rear axle of his RV. He contacted Grand Design and brought his unit to the Blue Compass dealership in Vermont from which he purchased the RV, where the RV was repaired. At this time, although Defendants issued a TSB in March 2024, no one associated with Grand Design told Plaintiff about the TSB or the reasons it was issued.

316.    After these repairs were made, Plaintiff believed his RV would be safe to drive to Florida for the winter. However, while driving through North Carolina around October 31st, 2024, the shackle on the opposite axel of his RV broke. Plaintiff had to haul his RV to Performance Trailers in Mooresville, North Carolina to have it repaired, and pay for the work out-of-pocket. The repairs were completed on November 2nd, 2024.

317.    Plaintiff arrived in Florida in November 2024, and returned to New Hampshire in approximately late April 2025. Upon returning to New Hampshire, Plaintiff brought his RV to the Blue Compass dealership in Vermont for additional repairs. The dealership informed Plaintiff that the structure of his vehicle is compromised beyond repair. Upon information and belief, the problems exhibited in Plaintiff's RV are caused by excessive frame flex.

318.    Due to the underlying frame defect, the market value of Plaintiffs RV has

significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

### H. Alessandro D'Alessandro

319.    Plaintiff Alessandro D'Alessandro, a citizen of New York, purchased his new 2022 Grand Design Reflection RDS from Meyers RV in Syracuse, New York in or around December 2021.

320.    Prior to purchasing his Grand Design RV, and in connection with that purchase, Plaintiff conducted extensive research into Grand Design RVs. This research included reviewing Grand Design's official website and online brochures, watching promotional content from Grand Design ambassadors such as Changing Lanes RV, and speaking directly with Grand Design representatives at RV shows.

321.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

322.    In 2024, Plaintiff began noticing accumulations of sawdust in and around the RV's bedroom area. He also observed that several interior doors had shifted and were misaligned within their frames. Plaintiff further noticed that the RV's floors creaked loudly when stepped upon. While walking barefoot inside his RV, Plaintiff felt nails protruding through the carpeting, and to avoid injury, he was forced to hammer the nails back into place himself.

323.    Plaintiff further discovered that the bolts securing the frame were too short, which caused the bolts to come loose. Furthermore, the cabinet doors and cabinet drawers frequently swung open while the RV was in motion, and the ceiling track for the sliding bathroom door became detached from the ceiling. Plaintiff noticed water leaking from the shower tub where the

frame for the sliding glass door had shifted and seemingly detached from the shower tub. Additionally, Plaintiff observed significant movement in the pin box when he drove with his RV.

324.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

325.    In early 2025, Plaintiff observed that the molding around the interior of the slide-outs one and two had begun to peel away.

326.    Despite having driven his RV only approximately 3,000 miles, Plaintiff now questions whether the RV remains suitable for its intended use, given the widespread reports of frame failure. However, due to the amount he still owes on the RV, selling it at this time would result in a financial loss, as its resale value is now less than the outstanding loan balance.

### I.    John Drake

327.    Plaintiff John Drake, a citizen of North Carolina, bought his new 2021 Grand Design 373FB-R Solitude RV from Sonny's Camp-N-Travel in North Concord, North Carolina in 2021. Plaintiff purchased this RV to live in full-time during the months of April through October, when he visits family in other parts of the country.

328.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff conducted extensive research on Grand Design RVs. This research included, among other things, reviewing Grand Design's website; reading Grand Design's RV brochures; reading information online to compare different RV brands; watching YouTube videos about Grand Design RVs; and viewing RVs in person at a Grand Design authorized dealership.

329.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's

RVs.

330.    The same year Plaintiff purchased his RV, he began noticing a series of troubling issues: the floors creaked; gaps developed in the RV's walls joints; the storage area doors would not close properly and would open during travel; moldings around the windows in the master bedroom peeled away, allowing water to leak in; the  main entrance door became difficult to open and close; trim in the slide out areas loosened; the seating in the RV's theatre became loose and the theatre floor became scored; the interior storage area doors fell off; and the RV's leveling system stopped functioning properly. In or around November 2021, Plaintiff brought his RV to a dealership to address these issues.

331.    Despite these attempted repairs, the problems in Plaintiff's RV persisted. In approximately April 2023, Plaintiff brought his RV to Blue Compass RV after noticing smoke coming from his RV's tires while braking. During these repairs, a mechanic at the dealership discovered that several bolts securing the RV's leaf springs were missing critical parts, and at least one bolt was entirely missing. Plaintiff paid for these repairs out-of-pocket.

332.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

333.    In or around May 2024, while Plaintiff was in Wisconsin, his RV experienced a catastrophic axle failure when the wet bolt for the RV's axle broke in half, causing the axle to shift out of place and the support springs along the RV's undercarriage to become misaligned. The RV's tires were also damaged. Despite the severity of the issue, Grand Design delayed authorizing the local Grand Design dealer in Wisconsin to retrieve the RV for inspection and repairs until mid-July 2024. The dealer subsequently completed the axle-related repairs and returned the RV to

Plaintiff in October 2024, at which point Plaintiff was able to transport the RV back to North Carolina. Upon his return, Plaintiff brought the RV to his local dealership for its biannual inspection and winterization.

334. At the dealership, the mechanic discovered this damage was just the tip of the iceberg. The mechanic found that the RV's nose was experiencing excessive flexing, and the front cap showed signs of cracking. Additionally, there were other signs of excessive flexing throughout the RV: the RV's floor was buckling, moving, and creaking; the cabinets were separating; there were gaps between the ceiling and walls in the bathroom, throughout the closets, and across other panels of the RV; and the corner trims along the right side of the camper were peeling away. The mechanic also discovered that several screws meant to connect the RV unit to the frame were entirely missing.

335. Plaintiffs RV remained at the dealership for approximately 8 months while repairs were made. Plaintiff was finally able to retrieve his RV in May 2025.

336. However, Plaintiff no longer felt safe using his RV. Frustrated by these recurring and seemingly unfixable problems—and after having been unable to use his RV for over 10 months from 2024 to 2025—Plaintiff traded in his RV, incurring a loss of approximately $30,000. Plaintiff no longer owns a Grand Design RV.

**J. Lori Fay**

337. Plaintiff Lori Fay, a citizen of Ohio, purchased a new 2023 Grand Design Momentum travel trailer from Blue Compass RV (formerly Colerain RV) in Cincinnati, Ohio, in or around May 2023. Plaintiff purchased this RV with the intention of living in it full-time.

338. Prior to purchasing her Grand Design RV and in connection with this purchase, Plaintiff conducted extensive research on Grand Design RVs. This included reviewing online

materials comparing different RV brands, touring multiple Grand Design models at authorized dealerships, and completing a full walk-through of the RV before finalizing the sale.

339.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

340.    Almost immediately after moving into the RV, Plaintiff began encountering serious issues. Plaintiff observed that the RV's windows were improperly sealed, resulting in water intrusions during rainfall, and her RV experienced repeated electrical system failures.

341.    As Plaintiff continued to live in and travel with the RV, she further observed that the rear portion of the RV's frame appeared to pop out or bend as she was driving and noticed that the leveling system repeatedly failed to properly stabilize the RV. Plaintiff also observed that the bathroom door was damaged near the bottom of the doorframe. Additionally, rainfall would consistently cause leaks in the slide-out areas, suggesting structural separation in those portions of the RV.

342.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that her issues were caused by the Defendants' defective frame.

343.    In or around July 2025, Plaintiff discovered that the front cap of the RV had begun to separate from the main body. She also observed damage to the RV's flooring, including significant rotting and deterioration. Throughout the entire time she has owned the RV, Plaintiff has experienced repeated problems with water intrusion and ongoing electrical malfunctions across the unit.

344.    The accumulating damage has substantially disrupted Plaintiff's ability to maintain

a full-time RV lifestyle. The persistent electrical failures, water leaks, and structural degradation have made it stressful and financially burdensome to use or transport the RV safely.

345.    Plaintiff now lives with constant anxiety regarding the safety, stability, and livability of the RV given the widespread reports of frame failure, and the symptoms her RV has exhibited. Plaintiff's RV no longer provides the security and reliability she reasonably expected when investing in what was marketed and sold as a brand-new, full-time residential travel trailer.

346.    Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

**K. John Garcia**

347.    Plaintiff John Garcia, a citizen of Louisiana, purchased his 2021 Grand Design 351M Momentum RV in or around April 2021.

348.    Prior to purchasing his Grand Design RV, and in connection with this purchase, Plaintiff conducted extensive research into Grand Design RVs. This included attending camper shows and speaking with current Grand Design owners; reviewing Grand Design's website; watching YouTube videos made by Grand Design Ambassadors; and reading Grand Design's RV brochures.

349.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

350.    In 2023, Plaintiff began noticing a series of troubling issues with his RV: sawdust would accumulate throughout the unit when it was towed; walls and bedroom closets began warping; and wallpaper crumpled where cabinets shifted against the walls. During routine

maintenance, Plaintiff also discovered that the RV's leaf springs were flattening, forcing him to replace the springs in order to continue safely using the unit. Eventually, the closets and cabinets of Plaintiff's RV began to completely fall apart.

351.    Plaintiff further observed that even when empty, the RV's weight was at or near its GVWR. In other words, it is effectively impossible for Plaintiff to use the RV for its intended and advertised purpose—living and traveling with personal belongings—without exceeding the GVWR.

352.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

353.    It was not until 2024 that Plaintiff learned Grand Design RVs suffer from the pervasive problem of frame failure. Upon discovering this, Plaintiff brought his RV to a shop in Louisiana for inspection. The shop performed diagnostic tests and found excessive flexing in the frame. These findings were sent to Grand Design, which confirmed the RV had excessive flex, and directed the shop to attempt repairs.

354.    Despite the attempted repairs, Plaintiff has scarcely used the RV since, fearing a catastrophic frame failure during towing. Concerned for his safety and seeking a resolution, Plaintiff explored trading in the RV, only to learn that its value had plummeted and a fair resale price was unattainable. He is now burdened with an RV that is both devalued and unfit for its intended use.

### L.  Joseph Graver

355.    Prior Plaintiff Joseph Graver, a citizen of Pennsylvania, purchased his new 2021 Grand Design Momentum RV from Tom Schaeffer's RV in Pennsylvania, in or around February

2021.

356.    Prior to purchasing the new Grand Design RV and in connection with that purchase, Plaintiff conducted extensive research on Grand Design RVs. This research included reviewing Grand Design's website and brochures, watching YouTube videos from Grand Design Ambassadors, reading online representations regarding the quality and reputation of Grand Design RVs, and speaking with representatives at Grand Design authorized dealerships.

357.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

358.    In or around 2022, Plaintiff began noticing accumulations of sawdust throughout his RV, without any clear source or explanation.

359.    In or around 2024, the condition of Plaintiff's RV had deteriorated further: the roof liner detached from the front cap of the RV, the bedroom cabinets and nightstands began separating from the wall, and the living room slide ceased to fully close.

360.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

361.    Plaintiff brought his RV to a Pennsylvania dealership to have the roof repaired and paid for these repairs out-of-pocket as emergency maintenance.

362.    Despite these efforts, the structural problems persisted. Plaintiff observed abnormal swaying while towing the RV and noted that the cabinets and nightstands had become further detached and damaged.

363.    In or around July 2025, Plaintiff took his RV to a Forest River dealership seeking

repairs for the detached cabinets and nightstands. After inspecting the unit – including conducting the Grand Design TSB evaluation for frame flex – the dealership determine that Plaintiff's RV was suffering from extreme frame flex. Consistent with the TSB protocol, the dealership reported the findings to Grand Design. However, Grand Design declined to provide further assistance.

364.    In or around August 2025, Plaintiff obtained a second opinion from an independent RV technician, who confirmed the presence of severe frame flex. The technician advised that significant welding and structural reinforcement would be necessary to stabilize the RV.

365.    Following the second inspection, Plaintiff again contacted Grand Design for support. Grand Design agreed to transport the RV to its Elkhart, Indiana facility for repairs, but has failed to disclose the specific nature or scope of the intended repairs.

366.    Moreover, while such repairs may provide temporary relief, given the nature of the underlying frame defect, the problems in Plaintiff's RV will inevitably recur.

367.    Plaintiff has considered trading in the RV, only to learn that its value has significantly declined, making it impossible to obtain a fair resale price. He is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

**M. Andrew and Lucy Hallberg**

368.    Plaintiffs Lucy and Andrew Hallberg sold their home and purchased a new 378 Solitude MBS in September 2021 in Acworth, Georgia. Plaintiffs live full time in their RV.

369.    Prior to purchasing their RV and in connection with this purchase, Plaintiffs researched Grand Design RVs extensively by, among other things, watching YouTube videos of Grand Design ambassadors, reading reviews shared online, and speaking with a representative from Grand Design about Grand Design's RVs.

370.    At no point while researching Defendants' RVs was Plaintiff aware of or notified

by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

371.    Less than one year after purchasing their RV, Plaintiffs noticed movement in the frame of their walk-in closet. Plaintiffs further observed fasteners coming through the floor; the interior walls and corners of the unit were pulling away from the exterior walls; and the trim strips began popping off.

372.    As time progressed, the condition of Plaintiffs' RV continued to deteriorate. Plaintiffs observed bowing in the floorboards. The slide was off center and caught on the floor, causing damage. The structure of the rear wall of the unit detached, causing both side panels to pinch and bend. Fasteners continued to come loose, with screwheads popping out from behind the couch and rolling across the floor.

373.    In or around August 2024, Plaintiffs took their RV to a dealership. Plaintiffs were informed that the dealership was unable to fix their unit for several months.

374.    After spending seven months without their home, around February 2025 Plaintiffs retrieved their RV from the dealership where it was being kept, and towed it to Pleasureland RV Center in Sioux Falls, South Dakota, hoping to have repairs made so they could return to full-time living in their RV.

375.    The RV service technicians at Pleasureland RV informed Plaintiffs that the condition of their RV was due to excessive frame flex. For the next several months, technicians at Pleasureland RV corresponded with Grand Design regarding the status of Plaintiffs' RV.

376.    In April 2025, Grand Design notified Plaintiffs that a representative from Grand Design was going to travel to Pleasureland to inspect the RV. Grand Design informed Plaintiffs of a specific date when they would arrive for such work, and Plaintiffs intended to be present for this

inspection to oversee the work done on their unit. Grand Design was aware of this intent.

377.    However, the Grand Design technician arrived two weeks earlier than stated and did not notify Plaintiffs of this change of plan. Instead, the Grand Design representative contacted Plaintiffs *after* finishing their visit to notify Plaintiffs that the matter was completed. Despite the evaluation from the Pleasureland RV technician, Grand Design claimed the issue arose from Plaintiffs' use of the vehicle, and not the frame.

378.    Plaintiffs were not afforded the opportunity to look at their unit before Grand Design representatives instructed the technicians at Pleasureland to close the RV, and the matter was determined "finished." Grand Design has repeatedly refused to provide Plaintiffs with a copy of the report associated with its inspection of the unit.

379.    Plaintiffs' RV is still at Pleasureland RV. Plaintiffs have not been able to verify that the frame issues have been resolved.

380.    Since August 2024, Plaintiffs have been unable to live in their RV due to its defective condition. Instead, Plaintiffs have been living at a property that they typically rent out as a source of income. Due to the ongoing nature of this issue, Plaintiffs lost income, and continue to lose income, that they otherwise would have received from the rental property.

381.    As a result of these problems, Plaintiffs' insurance company declared their RV a total loss.

## N.  Deana Jansa

382.    Plaintiff Deana Jansa purchased a new Solitude 310GK in February 2024 in Green Bay, Wisconsin.

383.    Prior to purchasing the new Grand Design RV and in connection with that purchase, Plaintiff conducted extensive research on Grand Design RVs. This research included reviewing

Grand Design's website, watching YouTube videos from Grand Design Ambassadors about Grand Design's Solitude RV, and speaking with representatives at an RV show about Grand Design's Solitude RV.

384.    At no point while researching Defendants RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

385.    However, almost immediately after purchase, Plaintiff observed that screws were missing along the trim molding on the RV's cap, and other screws in the unit were coming loose or falling off. Plaintiff also observed screws protruding on top of the RV's slides.

386.    In or around May 2024, Plaintiff took her RV on its first camping trip and discovered that the skylight was cracked and there was a leak in the roof near the antenna, resulting in water intrusions. Most troubling, during this trip, Plaintiff observed that the RV's walls were beginning to separate near the front cap of the RV.

387.    During this time, Defendants failed to notify their customers about the known issues with their RV's frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that her issues were caused by the Defendants' defective frame.

388.    In or around June 2024, Plaintiff brought her RV to Grand Design's dealership in Green Bay, Wisconsin, located approximately 2.5 hours from her home, to have the unit repaired. At this appointment, no one from Grand Design told Plaintiff that the problems in his RV were caused by a defective frame, or that the defective frame remained installed in his RV.

389.    Moreover, despite these purported repairs, the problems with Plaintiff's RV persisted. Plaintiff continued to observe the doors and other covers inside her RV, including the cabinet doors, the pantry doors, and the garbage cabinet door, warping and swinging open during

transit. Additionally, while the RV was being towed, the kitchen faucet would spin out of place and leak, causing damage to property inside Plaintiff's RV, including her dining table.

390.    After learning that these issues are early signs of frame failure, Plaintiff became concerned and feared that the problems would escalate and cause additional harm. Given that repairs provide only temporary relief, Plaintiff is concerned that the problems in her RV will inevitably recur.

391.    Plaintiff has considered trading in the RV, only to learn that its value has significantly declined, making it impossible to obtain a fair resale price. She is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

### O.  Matt Johnson

392.    Plaintiff Matthew Johnson, a citizen of Oklahoma, purchased his new 2021 Grand Design Reflection 150 RV from McClain's RV in Oklahoma City in or around 2021.

393.    Prior to purchasing his Grand Design RV and in connection with that purchase, Plaintiff conducted extensive research on Grand Design RVs. This research included reviewing Grand Design's website and brochures, watching YouTube videos created by Grand Design Ambassadors, reading online representations about the quality and reputation of Grand Design RVs, and consulting with representatives at Grand Design-authorized dealerships.

394.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

395.    After taking possession of his RV, Plaintiff began to observe a series of troubling issues, including accumulations of sawdust inside cabinets, peeling interior wall trim, shelves shifting and warping, loose or missing bolts, and separation of the exterior wall paneling at the

front of the RV.

396. During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, or reasonably believe that his issues were caused by the Defendants' defective frame.

397. In or around May 2024, the slide-outs on Plaintiff's RV began malfunctioning. On at least one occasion, Plaintiff observed the slide-outs partially open while the RV was being towed. While traveling through Nevada, he also noticed that the rear quarter of the RV was visibly lower than the rest of the trailer, and the back cap was beginning to separate. Plaintiff took the RV to a Nevada dealership for inspection and repair.

398. A dealership mechanic diagnosed structural damage to the RV's frame and reported the issue to Grand Design. In response, Grand Design sent a technician to repair the frame but refused to authorize repairs to other components of the RV that had been damaged as a result of the broken frame.

399. Plaintiff's RV remained at the dealership for frame repairs until approximately September 2024, leaving him without the use of his RV for nearly five months. Additionally, the repairs performed addressed only the frame and did not remedy the collateral damage sustained by other parts of the RV.

400. Plaintiff's RV is currently being stored in Nevada, and he has not used it for over a year due to concerns about its safety. Moreover, while any frame repairs may provide temporary relief, given the nature of the underlying frame defect, Plaintiff is concerned that the problems with his RV will inevitably recur.

401. Plaintiff has considered trading in the RV, only to learn that its value has significantly declined, making it impossible to obtain a fair resale price. He is now burdened with

an RV that is both substantially devalued and unfit for its intended purpose.

**P. Michael Mangum**

402.    Plaintiff Michael Mangum, a citizen of Maryland, purchased his new 2022 Grand Design Momentum RV from General RV in Ashland, Virginia, in or around January 2022.

403.    Prior to purchasing his Grand Design RV and in connection with that purchase, Plaintiff conducted extensive research on Grand Design RVs. This research included reviewing Grand Design's brochures, attending RV shows, watching YouTube videos from Grand Design Ambassadors, and reading online representations regarding the quality and reputation of Grand Design RVs.

404.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

405.    Shortly after he began to use his RV, Plaintiff started to notice the following issues: the slides would leave visible marks and even tear the floor when used; the floors in the upper bedroom creaked loudly; there were leaks in the galley slide, and the exterior wall began to delaminate; and the cabinets would open when the vehicle was towed. Plaintiff further observed protruding nails and found a small crack in the RV's nose. On several occasions, the RV slides opened while Plaintiff was towing the RV.

406.    In November 2022, Plaintiff brought his RV to General RV to have these issues repaired. The RV remained at the dealership for approximately five months, until April 2023.

407.    However, upon retrieving his RV from the dealership, Plaintiff noticed that many of the issues he reported remained unresolved. The trim on the RV was falling off; bolts once again became loose; and water leaks continued. Additionally, the slides still dragged across the floor.

Plaintiff attempted to repair the cosmetic issues himself, but despite his efforts, the problems persisted. Plaintiff also had to replace the RV's leaf springs and tires several times.

408.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

409.    In need of repairs, Plaintiff contacted Grand Design and arranged to bring his RV to Grand Design's factory in Indiana around August 2024. While at the factory in Elkhart, Grand Design determined that Plaintiff's RV was experiencing flexing but claimed it was within tolerable limits. Grand Design informed Plaintiff that they made repairs to his RV; however, despite Plaintiff's numerous requests for documentation of the work performed, Grand Design refused to provide such paperwork—leaving Plaintiff in the dark about what repairs were made by Grand Design while his RV was at the factory.

410.    Despite these purported repairs, the same issues continued to affect Plaintiff's RV. Among other things, the slides still dragged; the doors appeared misaligned within their frames; and Plaintiff repeatedly found loose lag bolts.

411.    In August 2025, Plaintiff attended Grand Design's national rally in Indiana. While there, Grand Design representatives offered to inspect and repair the issues with Plaintiff's RV. A representative opened a drawer and discovered several loose lag bolts. The representative also conducted a test for frame flex, during which Plaintiff observed the pin box in his RV moving. After the inspection, the Grand Design representative expressed concern about the condition of Plaintiff's RV and recommended that it be brought to the factory in Elkhart, Indiana for repairs. However, Grand Design would not specify what they had found that warranted this concern.

412.    Plaintiff's RV is scheduled to be repaired once again at Grand Design's factory in

Indiana on November 10, 2025; however, Grand Design has not disclosed what they intend to fix. They have only informed Plaintiff that they will need to keep his RV for 3–4 weeks.

413.    Moreover, while such repairs may provide temporary relief, given the nature of the underlying frame defect, the problems in Plaintiff's RV will inevitably recur.

414.    Plaintiff has considered trading in the RV, only to learn that its value has significantly declined, making it impossible to obtain a fair resale price. He is now burdened with an RV that is both substantially devalued and unfit for its intended purpose and a reasonable lifespan.

### Q. Robin Myers

415.    Plaintiff Robin Myers, a citizen of Rhode Island, purchased her new 2022 Grand Design 395 Momentum RV from Wilkins RV in or around November 2021. Plaintiff and her husband purchased this RV with the intention of living in it full-time.

416.    Prior to purchasing her Grand Design RV and in connection with that purchase, Plaintiff conducted extensive research into Grand Design RVs. This research included, among other things, reviewing information on Grand Design's website, reading promotional brochures, and speaking with representatives at authorized Grand Design dealerships.

417.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

418.    Around 2024, Plaintiff began experiencing a series of problems throughout her RV. She observed sawdust accumulating inside her RV and further noticed that the cabinets were damaged; the closets and the overhead lights above the bed had broken; the doors in the slide-out area were misaligned; and the drawers within the slide-out area would not remain closed.

419.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

420.    In April 2025, while preparing for a cross-country trip from Oregon to Rhode Island, Plaintiff and her husband received a recall notice concerning a defect in the propane line of their RV. Plaintiff took the RV to a dealership for inspection, where it was discovered that the RV's frame had completely cracked and was rubbing against the propane system, creating a serious safety hazard. The dealership also found that the closet doors were misaligned, and several of the lag screws in the RV had snapped or broken in half. Grand Design was notified of these conditions and, around June 2025, sent an SRT to inspect the unit.

421.    Upon initial inspection, Grand Design's SRT informed Plaintiff that the RV could be repaired at the dealership. However, after further evaluation, Grand Design determined that the unit would need to be transported to their factory in Indiana. Grand Design estimated that the repairs would take approximately four weeks; however, that timeline was repeatedly extended.

422.    While at the factory, Plaintiff's RV underwent extensive repairs. Grand Design replaced the RV's floor; the interior and exterior walls; the furniture, fixtures, and flooring in the bedroom; and the cabinets. It also repaired the RV's slide-outs. In addition, while making these repairs, Grand Design discovered that the RV's frame had cracked on both the left and right side; thus, it purportedly repaired the entire frame of the RV by adding additional structural support.

423.    Plaintiff's RV remained at the Indiana factory for approximately eight weeks. During the entire period that the RV was at Grand Design's factory, Plaintiff and her husband—who live full-time in their RV—were forced to pay out-of-pocket for hotel accommodations while awaiting repairs. This extended displacement caused significant disruption to Plaintiff's summer

plans, including preventing her from watching her grandchildren. The RV's condition and the prolonged repair process imposed a substantial emotional and financial burden on both Plaintiff and her husband.

424.    By August 2025, although some cosmetic damage remained unrepaired, Plaintiff could no longer afford to stay in hotels. As a result, she was finally permitted to retrieve her RV.

425.    However, while such repairs may provide temporary relief, given the nature of the underlying frame defect, Plaintiff is concerned that the problems in her RV will recur.

426.    Plaintiff has considered trading in the RV, only to learn that its value has significantly declined, making it impossible to obtain a fair resale price. She is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

**R.  John P. Nowak**

427.    Plaintiff John P. Nowak, a resident of Louisville Kentucky, purchased his 2020 model-year 3740BH-R Solitude fifth wheel RV on June 12, 2020, from Summit R.V. in Ashland Kentucky for a total price of $57,226.28.

428.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff conducted research including, among other things, reading information on the Grand Design website, watching content about the RVs created by Grand Design ambassadors on YouTube, and speaking with representatives at an authorized Grand Design dealership.

429.    In early 2022, Plaintiff noticed a manufacturing problem with the plumbing in his RV. Soon after he noticed those issues, Plaintiff took his RV for repairs at the Grand Design RV Service Shop in Elkhart, Indiana. Grand Design tested and repaired the plumbing issues and, inexplicably, replaced the RV's axels, bearings, seals, leaf springs, and brakes.

430.    Grand Design never asked Plaintiff if he wanted these extra repairs done, and

despite Plaintiff's queries about why they were completed, Grand Design never explained why it undertook additional, seemingly precautionary repairs. Plaintiff still awaits a response from Grand Design as to the reason why it made those structural repairs.

431.    At the time, Plaintiff did not know, and had no reason to think, that these additional repairs were related to a frame defect in the RV. Plaintiff now believes that these repairs were Grand Design's first attempt at concealing the frame defect of which Grand Design was aware was present in his RV and other models.

432.    In September 2024, Plaintiff became aware of the frame defect in his RV when he noticed issues with the RV's shelving and cabinetry. Plaintiff also became aware of a mold smell throughout the RV.

433.    On September 30, 2024, Plaintiff contacted Defendants about the frame defect, and they advised him to take the RV to Stinnet's Campers Inn RV in Clarksville, Indiana ("Campers Inn").

434.    In late October 2024, Campers Inn advised that it was able to take the RV in for repairs.

435.    On November 5, 2024, a Campers Inn representative confirmed the frame failure to Plaintiff. They diagnosed the issue by the distance of the pin box to the ground on the driver's side and passenger's side. They also discovered cracks in the welds of the frame, including several missing bolts on the bottom of the frame and on the interior side of the frame on both the driver's and passenger's sides.

436.    In December 2024, a Campers Inn representative notified Plaintiff that the RV was ready for pickup. Campers Inn had added multiple bolts to attach the frame to the body of the camper to get the tolerance of the frame flex within safe levels. The bolts were too long, though,

and caused punctures in the fiberglass exterior. Further, the RV was still damaged from the frame defect: cabinets were broken, and more cracks appeared in the exterior. Defendants' approved repair center was unable to cure the defects that they attempted to conceal two years earlier.

437.    On January 11, 2025, Defendants advised that Campers Inn was unable to complete the frame defect repairs, so Defendants needed to transport the RV back to the Grand Design factory in Indiana to replace an entire side wall of the RV.

438.    Defendants did not pick up the RV from Campers Inn to transport it to the factory until January 27, 2025.

439.    In April 2025, counsel for Defendants advised that the work on the RV was complete and that Defendants would ship it back to Campers Inn.

440.    When Plaintiff attempted to pick up the RV from Campers Inn, he discovered several issues, including that the landing gear pin on the passenger's side was changed to a cotter pin, the stairs would not close properly with a weakness at the riveted joint, the closet shelving was not attached, and several workmanship issues.

441.    When Plaintiff did not feel comfortable taking the RV back with these obvious problems, Campers Inn threatened to charge Plaintiff storage fees if he did not take possession.

442.    After Plaintiff raised these issues with Defendants through counsel, Defendants advised that they were going to send a SRT to assist with further repairs.

443.    In early June 2025, Plaintiff continued to advise Defendants of ongoing issues, including damaged bedroom shelving, lower bathroom water leaks from the toilet and sink faucet, upper bathroom toilet leak, the trailer connector too short, and issues with the newly replaced cotter pin set up.

444.    Through counsel, Defendants advised that the SRT was not available until late June

2025.

445.    In mid-July 2025, Plaintiff picked up the RV from Campers Inn, but the RV still has issues, including issues with the front closet cabinetry edges falling off, the ever-present mold smell, and water spraying from the toilet and faucet.

446.    Plaintiff has continued to advise Defendants of these issues, but Defendants have failed to address them.

447.    So, after multiple attempts by Defendants to repair the RV, the defect remains. Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

**S.  Michael O'Neal**

448.    Plaintiff Michael O'Neal purchased his Solitude 390 RKR in 2022 from General RV in Cleveland, Ohio. He purchased the RV two-months used for approximately $100,000.

449.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff conducted research including, among other things, reading information on Grand Design and Winnebago's websites; reading about Grand Design's SRT teams; watching content created by Grand Design ambassadors discussing the RVs; and reviewing information provided in Grand Designs' brochures.

450.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

451.    Mr. O'Neal was and remains an Ohio resident. However, he is also a full-time RVer, and purchased his Grand Design RV with the intention of travelling the country.

452.    Within the first 1.5 months of owning the RV, Mr. O'Neal noticed that the rear

kitchen slides were becoming increasingly difficult to open and close. As the slides failed, the floor of the RV became ripped up, and the fiberglass on the exterior of the RV cracked. Because Mr. O'Neal had purchased his RV two months used, Grand Design initially declined to repair the RV for being out of warranty. Mr. O'Neal hired several RV repair technicians to address the issue, but none were successful.

453.    In or around December 2022, Grand Design acquiesced and offered to take Mr. O'Neal's RV to its factory in Indiana and attempt repairs. The RV remained at the factory for one week until repairs were complete. At this time, no one from Grand Design told Plaintiff that the problems in his RV were caused by a defective frame, or that the defective frame remained installed in his RV.

454.    Just five days after retrieving the RV from the Grand Design factory, Mr. O'Neal once again began to observe major problems in his RV.

455.    Over the next several months Grand Design sent three SRTs out to Mr. O'Neal to fix his unit; each time, the RV began experiencing problems again shortly after the repair. When the third SRT arrived to evaluate the problem, they informed Mr. O'Neal that his RV would need to go back to Grand Design's Indiana factory for repairs. However, Grand Design informed Mr. O'Neal he would have to wait six months for an appointment.

456.    Again, none of Grand Design's representatives told Plaintiff at any time that the problems in his RV were caused by a defective frame, or that the defective frame remained installed in his RV.

457.    During the interim six months, Mr. O'Neal's RV continued to deteriorate. He found loose screws, unattached lag bolts, cracks through which daylight could be seen, and more. As put by Mr. O'Neal: "We lost our home. It literally fell apart around us while we were driving down

the road."

458.    But when Mr. O'Neal was finally able to bring his RV to the Indiana factory for repairs, Grand Design informed him that the damage to his RV was not covered under their extended 5-year warranty. Grand Design refused to repair Mr. O'Neal's RV and insisted that his insurance declare the unit a "total loss." This process took nine weeks, during which time Mr. O'Neal—a full time RVer—lived in hotels or relied on family and friends for housing.

459.    After having his RV declared a total loss, Mr. O'Neal no longer owns his Grand Design RV.

**T. Daniel Peabody**

460.    Plaintiff Daniel Peabody purchased his Momentum 397 TH in or around May 2022. He purchased the RV from its previous owner, who had owned it for one year.

461.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design RVs by, among other things, reading Grand Design's RV brochures, attending RV shows where Grand Design had exhibitions, reading information on the Grand Design website, and watching content created by Grand Design ambassadors.

462.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

463.    At the time of purchase, Mr. Peabody was a resident of Arizona. However, he purchased the RV with the intention of using the RV to move to Florida, and indeed, two months after purchasing the RV, Plaintiff sold his home and used his RV to move to Florida.

464.    In approximately February 2023, Plaintiff discovered spider-cracking in the front nose column of his RV. He contacted Grand Design about this issue, but did not hear back.

465.    Problems with Plaintiff's RV continued to worsen: the RV's interior wall covering began wrinkling; pieces of interior trim came loose; screws were protruding from the floor in the master bedroom; and Plaintiff noticed scratches on the upper walls where the 90-degree joints of the RV connected. Beyond these cosmetic issues, the lower cargo door of Plaintiff's RV came open during travel on at least two occasions. On one such occasion, Plaintiff lost cargo that was stowed beneath the vehicle.  Unbeknownst to Plaintiff, these symptoms are all telltale signs of frame failure.

466.    In April 2024, after reporting these increasing issues to Grand Design, Plaintiff was advised to haul his RV to Ocala, Florida to have the unit inspected. At the inspection, the Grand Design service repair technician ("SRT") diagnosed Plaintiff's RV with excessive frame flex.

467.    Grand Design informed Plaintiff that he could not leave with his RV until repairs were complete. During this time, Plaintiff had been living full-time in his RV and therefore had to pay out-of-pocket for accommodation while his RV was repaired. The repairs were not completed until July 20th, 2024—nearly four months later.

468.    During this time, Plaintiff purchased a home in Florida. When the repairs on his RV were completed, he hauled the unit back to his new home. After this time, Plaintiff  no longer felt comfortable hauling his RV due to concerns about its safety and operability. Plaintiff has since sold his RV for a significant loss.

**U.  Gary Pfeiffer**

469.    Plaintiff Gary Pfeiffer purchased a new 2022 Momentum from Pontiac RV in Pontiac, Illinois in January 2022.

470.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design and its RVs by, among other things, reading Grand Design RV

brochures, attending RV shows where Grand Design had exhibitions and discussing the quality of Grand Design's RVs with its representatives, and performing extensive research on the Grand Design website.

471.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

472.    In roughly September 2023, Plaintiff noticed the slides rubbing and requested that a Grand Design SRT inspect the RV. The SRT represented that he fixed the slide and Plaintiff thereafter took the Momentum down to Texas.

473.    In Texas, Plaintiff noticed more problems with the slide and requested that a SRT come to inspect the RV. The SRT advised Plaintiff to contact Grand Design to repair the slide. At Grand Design's recommendation, Plaintiff hauled his Momentum to Grand Design headquarters in Elkhart.

474.    In December 2023, Grand Design personnel identified the problem as frame flex and kept Plaintiff's RV for nearly two weeks to allegedly conduct repairs. Plaintiff was advised that technicians repaired the slide and re-welded the frame, among other things.

475.    When the Momentum was ready, Plaintiff retrieved it and headed down to Florida for the holidays. By the time he arrived in Florida, however, the Momentum was exhibiting more problems. The slide was dragging and making grinding noises, sawdust littered the inside floors, and the cabinets would not open or close. Unbeknownst to Plaintiff, these were telltale signs of frame failure.

476.    Frustrated with this recurring, seemingly unfixable problem, Plaintiff traded in his Momentum at approximately $20,000 to $30,000 loss. Plaintiff no longer owns a Grand Design

RV.

### V. Kennth Pierce

477.    Plaintiff Kenneth Pierce, a citizen of Idaho, purchased his new 2021 363G Momentum in September 2020 from Blue Compass RV in Post Falls, Idaho

478.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff conducted research on Grand Design RVs including, among other things, reading about Grand Design's superior build quality, consulting with representatives at Grand Design-authorized dealerships, and touring the RV in person.

479.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

480.    In the summer 2023, Plaintiff traveled with his RV to Canada. During this trip, Plaintiff observed sawdust accumulating in the corners of the bedroom and noticed that the cabinets above the bed and the passenger-side door were shifting, rubbing against the ceiling, and could not fully open due to the misalignment. As the trip continued, the damage worsened. The RV's cabinets were scraping against the walls, the steps were shifting and leaving marks on the RV, and the countertop adjacent to the stove began to separate. On the return trip, the RV's slide-out near the closet would not close properly, and Plaintiff further observed that the paneling beneath the kingpin of the RV had begun to separate.

481.    Based on these concerning observations, Plaintiff scheduled an appointment in August 2023 to bring his RV to Blue Compass RV for inspection and repair.

482.    Blue Compass kept Plaintiff's RV in its shop for three months. During this time, the dealership discovered that the RV's frame was cracked and twisted, bolts were missing, and a

leaf spring had broken. Unable to complete the necessary repairs, the dealership contacted Grand Design and requested assistance from their SRT. After months of waiting for repairs, a Grand Design SRT representative inspected Plaintiff's unit and confirmed that multiple bolts were missing and that all bolts in the frame near the kingpin were undersized. Grand Design proceeded to weld the frame back together.

483.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame or related to frame failure.

484.    Plaintiff first learned about the excessive frame flex problem plaguing Grand Design RVs in or around 2024. However, Plaintiff believed that any problems in his unit had already been resolved by on Grand Design's prior repairs.

485.    However, in March 2025, Plaintiff traveled with his RV from Idaho to the Oregon coast—and almost immediately, his RV began experiencing the same issues with the cabinets shifting and the doors failing to open properly. Coincidentally, a Grand Design SRT representative was in the area and agreed to inspect the RV. Upon inspection, the SRT representative informed Plaintiff that screws in the cabinets were either missing or had sheared off. Plaintiff brought his RV back to Blue Compass, where it was further discovered that the cabinets had been installed with incorrectly sized screws.

486.    Plaintiff and his family no longer feel safe using the RV. Plaintiff explored options to sell or trade in his RV, only to learn that its value had plummeted and a fair resale price was unattainable due to the underlying frame defect. Plaintiff is now burdened with an RV that is both devalued and unfit for its intended use.

**W. Collin Reese**

487.    Plaintiff Collin Reese purchased a new Solitude 310GK in November 2021 in Grand Junction, Colorado.

488.    Prior to purchasing his Solitude, Plaintiff researched Grand Design and its RVs by, among other things, attending Grand Design exhibitions at RV shows, touring the Solitude, speaking to other Solitude owners, performing extensive research on the Grand Design website, and watching content created by Grand Design ambassadors.

489.    At no point while researching the Solitude was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

490.    In approximately September 2024, Plaintiff discovered several troubling issues in his RV, including nail-heads popping up through the flooring, wall trim shifting from its original location, walls warping, lag bolts falling out of place and disengaging, as well as fractures and splitting of the RV's frame.

491.    In approximately September 2024, Plaintiff brought his RV to Centennial RV, LLC, where he had purchased the Solitude, for assessment and repairs. There, a service associate noted that the metal was coming apart and emphasized that the RV was experiencing "serious frame issues" that required manufacturer's repairs. Shortly thereafter, Grand Design sent an SRT to assess the damage.

492.    The SRT subsequently oversaw the removal of the front undercarriage of Plaintiff's RV and confirmed that there were broken screws and metal in the framing, several bolts and nails protruding through the linoleum, and that the Seal Plate was fractured.

493.    At this time, although Defendants issued a TSB in March 2024, no one associated with Grand Design told Plaintiff about the TSB or the reasons it was issued.

494.    Grand Design informed Plaintiff that he could not leave with his RV until repairs

were complete. Plaintiff's RV remained at Centennial from approximately September 2024 through January 2025.

495.    However, after reinstallation, the phylon on Plaintiff's RV began showing signs of waves.

496.    Accordingly, Plaintiff does not feel fully safe using his RV and his use of the vehicle has decreased accordingly.

497.    Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

**X.  Jim Rieber**

498.    Plaintiff Jim Rieber purchased a new Momentum 351M RV in August 2020 in Minnesota.

499.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design and its RVs by, among other things, reading Grand Design RV brochures, attending a tour of the Grand Design RV plant, attending RV shows where Grand Design had exhibitions and discussing the quality of Grand Design's RVs with Grand Design representatives, and reading information about the RVs on Grand Design's website.

500.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

501.    In approximately October 2023, Plaintiff was traveling with his RV when one of the slides dropped out and the springs broke. Plaintiff had the springs replaced; however, he began noticing other issues, including shifting cabinets.

502.    In approximately June 2024, Plaintiff brought his RV to Pleasureland RV, a Grand Design authorized dealership in Minnesota, to have repairs made. Grand Design personnel diagnosed his RV with excessive frame flex and kept the unit for three weeks to identify and repair the problems.

503.    After these initial repairs were made, Plaintiff continued to use his RV. Shortly thereafter, Plaintiff noticed loose bolts, problems with his cabinets, and spider-cracking in the nose cap of his RV.

504.    Grand Design picked up Plaintiff's RV from Minnesota in September 2024 and hauled it to the Grand Design center in Indiana to make repairs. Plaintiff's RV remained in Indiana through the end of October, during which time Grand Design added approximately 300 pounds of metal reinforcement to the RV.

505.    Plaintiff retrieved his RV in late October 2024 and hauled it to Arizona for the winter. While Plaintiff plans to haul the RV back to his home in Minnesota this spring, after this final trip, he will no longer use his RV for travel due to his concerns that the unit will break down again.

506.    Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

### Y.  Matthew Thompson

507.    Plaintiff Matthew Thompson purchased a new 2022 Reflection on December 16, 2022.

508.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design and its RVs by, among other things, reading Grand Design RV

brochures, attending RV shows where Grand Design had exhibitions and discussing the quality of Grand Design's RVs with its representatives, and conducting extensive research on Grand Design's website.

509.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

510.    However, Plaintiffs' nightmare began immediately after purchase. On the day of pick up, the leveling system on Plaintiff's RV was not functional, thus requiring immediate repairs. One week later, in approximately late-December 2022, the couch slide out would not go in or out correctly.

511.    Plaintiff notified Grand Design, who subsequently confirmed that his RV again needed immediate repair. Plaintiff was instructed to return his RV to the dealer where it remained for two months. Due to the amount of time his RV spent in the shop, Grand design offered him one three-month warranty extension. Grand Design did not use the term frame flex when discussing the damage to Plaintiff's RV at that time, nor did Plaintiff have a reason to believe that his RV was experiencing frame failure at that time.

512.    However, problems with Plaintiff's RV persisted and between January 2023 and July 2024, Plaintiff sought repairs on at least four separate occasions to address issues related to the back wall bending, sagging, and falling apart, the outriggers collapsing, dips and slopes in the floor of his RV, interior panels bowing and detaching from the walls, and the RV's walls shifting off of the RVs frame, as well as a litany of other issues. Further, during that time, Plaintiff noticed that several pieces of trim in his RV have shifted and fallen off, and that his outrigger is bent.

513.    At this time, although Defendants issued a TSB in March 2024, no one associated

with Grand Design told Plaintiff about the TSB or the reasons it was issued.

514. In total, since December 2022, Plaintiff's RV has required approximately 10 months of repairs, during which time Plaintiff spent thousands on monthly payments, yet was unable to use his RV.

515. Due to the underlying frame defect, the market value of Plaintiff's RV has significantly declined, making a fair resale or trade-in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose.

**Z. Kermit Trotter**

516. Plaintiff Kermit Trotter, a citizen of Indiana, purchased his new 2020 375RES Solitude RV in August 2019 at Evans & Son RV Sales in Petersburg, Indiana. Plaintiff and his wife sold their home to buy their RV and now live in their RV full-time.

517. Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design RVs by, among other things, reading Grand Design's RV brochures, conducting research on Grand Design's website, and speaking to representatives at Grand Design authorized dealerships.

518. At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

519. However, between 2020 and 2023, Plaintiff began noticing cosmetic damage throughout his RV, including unusual creaking in the floors throughout the bedroom and bathroom; cabinets shifting and causing wear on the walls; the doors of the RV began shifting, creating gaps between the frame and the side walls, and making it difficult to open and close the doors; and the molding on the RV began peeling away.

520.    Over time, the problems in Plaintiff's RV worsened. While hauling his RV, Plaintiff watched as the door to the propane compartment of his RV suddenly popped open. Additionally, bolt heads began protruding through the RV's Filon siding.

521.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

522.    In early 2024, Plaintiff learned that Grand Design RVs were plagued by the pervasive problem of frame failure. Plaintiff attempted to contact RV technicians to inspect his unit but was repeatedly told that he would need to transport his RV for such repairs, which he did not feel safe doing.

523.    In September 2024, Grand Design sent an SRT to inspect Plaintiffs' RV. The SRT found cracks in the welds on Plaintiff's RV frame and re-welded those cracks on site. The SRT also noted that half of the lag screws in Plaintiff's RV were missing. As part of the repairs, the SRT removed all the old lag screws and added new ½ inch lag screws in every hole.

524.    Plaintiff requested a copy of Grand Design's inspection report, but Grand Design refused to share this information, even though it directly concerned the safety and functionality of Plaintiff's RV.

525.    Despite these "repairs", the slides in Plaintiff's unit have started twisting.

526.    In June 2025, Plaintiff had a mobile repair team—this time, not from Grand Design—come out to inspect and repair his RV's slides. The technician advised Plaintiff that he would need to haul his RV to a repair shop for further work.

527.    Plaintiff subsequently discovered that cracks had developed in the side walls of the RV's slide-outs.

528. Plaintiff continues to have serious concerns regarding the safety of transporting the RV. Although certain repairs may offer temporary relief, the underlying defect in the frame leads Plaintiff to reasonably fear that the structural failures will persist and the associated issues will worsen over time.

529. Plaintiff has explored the option of trading in his RV, only to learn that its market value has substantially diminished. As a result, obtaining a fair resale price is no longer feasible. Plaintiff is now left with an RV that is both significantly devalued and unsuitable for its intended use.

**AA.     Gustav Vanzyl**

530. Plaintiff Gustav Vanzyl purchased a new 2022 Momentum 397 in California in approximately May 2022.

531. Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design and its RVs by, among other things, reading Grand Design RV brochures, discussing Grand Design's RVs with Grand Design representatives by phone, performing extensive research on the Grand Design website, and watching content created by Grand Design ambassadors on YouTube.

532. At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

533. Shortly after purchase, Plaintiff noted that the pin box assembly was receding into the trailer. However, he was repeatedly assured by dealers that the cracking and popping noises associated with putting weight on the pinbox were a common occurrence and there was no cause for concern. Approximately six months later, Plaintiff's closet doors began moving and shifting

from their original locations, significant amounts of trim began falling off the inside of his RV, and his propane door began opening suddenly in transit. Plaintiff again brought these issues up to local dealers, who again told him that these were common occurrences and nothing to be concerned about.

534.    And yet, Plaintiff's problems persisted. In 2024, he brought his RV to a dealership in Salt Lake City because he was unable to get his RV level. When the issue was escalated to Grand Design, a Grand Design representative confessed that because the generator was supported only by the pin box, it had caused a twist and sag in his frame.

535.    At this time, although Defendants issued a TSB in March 2024, no one associated with Grand Design told Plaintiff about the TSB or the reasons it was issued.

536.    Later in 2024, Plaintiff noticed that the phylon was separating from the front cap of his RV. Accordingly, Plaintiff has not driven his RV since and intends to bring his RV to the Busted Knuckle dealership in Nevada to address the issues with his RVs frame.

537.    Due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined, making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

**BB.    David Wobser**

538.    Plaintiff David Wobser, a citizen of New Jersey, purchased his new 2021 Grand Design Momentum from Bill Plemmons RV World (now Blue Compass RV) in the spring of 2021. At the time of purchase, Plaintiff was a resident of New Jersey.

539.    Prior to purchasing his Grand Design RV and in connection with this purchase, Plaintiff researched Grand Design RVs by, among other things, reading about Grand Design's founders, mission, and reading quality control process, conducting research on Grand Design's

website, and speaking to representatives at Grand Design authorized dealerships.

540.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

541.    However, between 2021 and 2024, Plaintiff began noticing cosmetic damage throughout his RV, including sawdust accumulating in the corners of the cabinets, sawdust around the bed in the primary bedroom, and cabinets that opened while the RV was being towed.

542.    In approximately April 2024, Plaintiff and his family drove with the RV from New Jersey to Florida. Upon arriving in Florida, Plaintiff observed rub marks covering his RV's walls; broken brackets from the shifting cabinets; and pieces of broken wood inside the cabinets that had snapped off during transit. Plaintiff also discovered that the lag bolts holding the body of the RV onto the frame had come loose or broken; observed stress cracks in the RV's cap; and found there was damage to the RV's gutter. In short, Plaintiffs RV was in an unusable condition.

543.    Grand Design ultimately retrieved Plaintiff's RV from Florida and transported it to Elkhart, Indiana for repairs. Despite denying that the RV was suffering from excessive frame flex—this, in the face of numerous and well-documented symptoms consistent with frame failure—Grand Design proceeded to weld a gusset and plate kit onto the frame in an apparent attempt to reinforce its structural integrity.

544.    Even after these structural modifications, Plaintiff and his family remain deeply apprehensive about using the RV, particularly for long-distance travel, fearing that the vehicle may again suffer frame failure.

545.    Due to these unresolved safety concerns, Plaintiff intended to sell the RV. However, due to the underlying frame defect, the market value of Plaintiffs RV has significantly declined,

making a fair resale or trade in price unattainable. As a result, Plaintiff is now burdened with an RV that is both substantially devalued and unfit for its intended purpose

**CC.**      **Matthew Yeoman**

546.    Plaintiff Matthew Yeoman, a citizen of Texas, purchased his new 2022 Grand Design Momentum RV from Holiday World RV, located in Katy, Texas, in or around January 2022.

547.    Plaintiff had previously owned a Grand Design Reflection RV; having been satisfied with its quality and wanting an upgrade, Plaintiff decided to purchase another Grand Design RV. Prior to purchasing his 2022 Momentum and in connection with this purchase, Plaintiff conducted extensive research on Grand Design RVs by, among other things, reviewing information on Grand Design's website, reviewing Grand Design RV floor plans, and reading information shared online about the quality of these RVs.

548.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

549.    In the fall 2023, Plaintiff began noticing problems throughout his RV. The back of the cabinets located in the nose of the camper appeared broken, and the RV's doors were no longer functioning properly. Plaintiff also noticed scrape marks along the interior walls. When observing his RV from the exterior, Plaintiff noticed significant movement in the pin box, particularly when hitching the RV to his truck for towing.

550.    Plaintiff reported these issues to Grand Design and was instructed to take the RV to a dealership for inspection and repair. In or around November 2023, Plaintiff delivered the RV to the dealership, where technicians discovered substantial frame damage. In or around December

2023, Grand Design transported the RV to its factory in Indiana for further repair work.

551.    Plaintiff's RV remained at the Indiana factory for approximately four months. In the spring 2024, Plaintiff was notified that the repairs had been completed; however, Grand Design failed to provide any details regarding the extent of the damage they had uncovered, or the specific repairs performed.

552.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

553.    In or around April 2025, Plaintiff once again began observing signs of excessive frame flex. The interior walls of his RV appeared to be shifting, and Plaintiff noticed damage to the RV's cabinets. Plaintiff reported these issues to Grand Design and was directed to take his RV to Blue Compass RV in Tyler, Texas.

554.    A mechanic at Blue Compass RV determined that the lag bolts securing the RV's walls to the frame had come loose. The mechanic replaced some of these bolts with larger ones, and per Grand Design's instructions, sealed the bolt holes using silicone. However, the mechanic warned Plaintiff that this solution was likely only a temporary fix.

555.    And indeed, after retrieving his RV from the dealership, Plaintiff attempted to travel with it during the summer 2025. During these trips, the lag bolts loosened once again, and the structural damage to the RV's walls continued to worsen.

556.    Plaintiff is now seriously concerned about the safety of his RV for its intended use. He has considered trading it in but is concerned that the RV's market value has significantly depreciated due to the frame defect. What's more, because Plaintiff believes his RV is no longer safe to use, he does not want to impose this risk upon another purchaser. As a result, Plaintiff is

left with an RV that is both substantially devalued and no longer fit for its intended purpose.

**DD.    Cynthia Yungclas**

557.    Plaintiff Cynthia Yungclas, a citizen of South Dakota, purchased her new 2022 Grand Design Solitude 390RK from Great Escapes RV in or around May 2022. Plaintiff purchased her RV with the intention of living in it full-time.

558.    Prior to and in connection with this purchase, Plaintiff conducted extensive research on Grand Design RVs. This research included, among other things, reviewing information on Grand Design's website, reading Grand Design RV brochures, reading information shared online regarding the quality and reputation of Grand Design's RVs, and consulting with representatives at Grand Design authorized dealerships.

559.    At no point while researching Defendants' RVs was Plaintiff aware of or notified by Defendants, in any manner, about known or reported issues with the frame of Grand Design's RVs.

560.    Shortly after acquiring the RV, Plaintiff began noticing a series of troubling issues: sawdust accumulated throughout the RV, rub marks appeared on the wallpaper in multiple areas; and she observed separation between the wall and the stairs. The front cap of the RV also had begun to detach. After towing the RV, the kitchen slide-out failed to close properly, and Plaintiff was forced to manually push the slide closed.

561.    While traveling with her RV to Michigan, Plaintiff stopped in Indiana for a tour of the Grand Design RV factory, where she requested assistance from Grand Design in fixing her RV's slide. However, Grand Design declined to make this repair. As Plaintiff continued on her trip, the trim around the bed fell off and the closet door broke.

562.    Plaintiff contacted Grand Design regarding these problems, and Grand Design

approved repairs to be made at a dealership in Kentucky. These repairs were completed in or around July 2022. During this time, Plaintiff and her husband were displaced from their RV for approximately three weeks and primarily relied on the hospitality of family for housing while their RV – their full-time home – was under repair.

563.    In or around the fall 2022, after traveling to Maine with the RV, the slide-out on the opposite side of the kitchen malfunctioned and became stuck in the open position. Plaintiff again contacted Grand Design, who authorized her to contact a mobile repair technician. The technician replaced several protruding screws. Plaintiff paid for this repair out of pocket. Around this time, Plaintiff also began to observe that the leaf springs were flattening.

564.    Plaintiff again attempted to travel with her RV, but by December 2022, both kitchen slide-outs began to malfunction once more. Additionally, the storage compartment doors beneath the RV became misaligned and grew increasingly difficult to open and close. Plaintiff was forced to make emergency repairs in order to continue using her RV.

565.    In or around April 2023, Plaintiff brought her RV to Precision Trailer Braking in Oklahoma—a company Grand Design promoted at its rallies—to have the axles upgraded to 8,000 lbs, the springs replaced and upgraded, and disc brakes installed, hoping this would resolve the ongoing problems.

566.    Later that spring, Plaintiff brought her RV to Coachlite RV, a dealership in Carthage, Missouri, for inspection after reading online reports from other Solitude RV owners who had experienced similar issues. The dealership's mechanic discovered that the RV's frame was cracking and that several lag bolts were missing. The dealership rebuilt the frame under the kitchen floor. These repairs took approximately six weeks. Plaintiff and her husband were once again displaced and during this time, had to pay out-of-pocket for hotel accommodations and rely on

family members for a place to stay.

567.    In the summer of 2023, Plaintiff traveled with the RV to Utah, where the slide-outs again stopped functioning. Plaintiff requested that Grand Design dispatch a mobile repair team, but Grand Design refused and instead required that the RV be returned to Missouri for service. Plaintiff transported the RV back to Missouri and, in the fall 2023, dropped it off at the dealership. The dealership repaired all the slides except the one adjacent to the kitchen on the passenger side. That particular repair required consultation with Grand Design, as the hull of the RV was found to be crooked, and Grand Design sent an SRT to assist. These repairs took approximately ten weeks to complete. During this period, Plaintiff and her husband were again forced to pay out-of-pocket for hotels and to rely on family for housing. Plaintiff did not receive her RV back until January of 2024.

568.    During this time, Defendants failed to notify their customers about the known issues with their RVs' frames. Accordingly, Plaintiff did not know, suspect, nor reasonably believe that his issues were caused by the Defendants' defective frame.

569.    In or around April 2024, Plaintiff drove her RV to Kansas. During the drive, she noticed that the front cap of the RV was separating at the top. Plaintiff and her husband were forced to perform the repairs themselves in order to continue using their RV

570.    Plaintiff and her husband subsequently traveled with the RV to Minnesota. Upon arrival, Plaintiff discovered that the bottom portion of the front cap was also coming loose. Plaintiff contacted Coachlite RV and returned to Missouri for repairs in or around October 2024. Upon inspection, Coachlite discovered that the front frame of Plaintiff's RV was cracked and broken, and that numerous lag bolts were entirely missing. Coachlite diagnosed the RV with excessive frame flex and attempted to repair the frame. To enable these repairs, Plaintiff had to completely

unload all of her belongings from the RV. While the RV was empty, Plaintiff weighed it and discovered that it had only about 340 lbs of available payload capacity—far below the advertised capacity of over 3,000 lbs. Plaintiff's RV remained at the dealership for approximately three weeks, during which time Plaintiff and her husband, once again displaced, stayed with relatives.

571.    After these attempted repairs, Plaintiff traveled to California with the RV and arrived in or around November 2024. Once again, however, the kitchen slide-outs failed, and this time, Plaintiff found broken components from the kitchen slide on the RV floor. Plaintiff contacted Grand Design, which refused to help. Plaintiff transported her RV back to Coachlite RV in Missouri for additional repairs. During this journey, one of the RV's slides repeatedly opened while the RV was in transit, forcing Plaintiff to stop approximately every 50 miles to manually close the slide out.

572.    Plaintiff arrived in Missouri in the spring 2025, where Coachlite once again attempted to repair the RV. These repairs took approximately five weeks, during which time Plaintiff was once again displaced from her home.

573.    Plaintiff is now concerned about the safety of using or transporting the RV, fearing further failure of the frame or slide systems. Based on reports in the RV community, Plaintiff believes the RV cannot be traded in due to its significantly diminished market value stemming from the frame defect. As a result, Plaintiff is left with an RV that is substantially devalued, unsafe, and no longer fit for its intended purpose.

## CLASS ACTION ALLEGATIONS

574.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the classes. This action satisfies the requirements set forth in Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3).

575.     Plaintiffs bring this action on behalf of the following classes (collectively, the "Class"):

> **Nationwide Class:** All individuals in the United States who purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

> **Arizona Subclass:** All individuals who resided in Arizona and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

> **California Subclass:** All individuals who resided in California and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

> **Colorado Subclass**: All individuals who resided in Colorado and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

> **Florida Subclass:** All individuals who resided in Florida and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

> **Georgia Subclass:** All individuals who resided in Georgia and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

> **Idaho Subclass:** All individuals who resided in Idaho and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

> **Illinois Subclass:** All individuals who resided in Illinois and purchased

one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Indiana Subclass:** All individuals who resided in Indiana and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Kentucky Subclass:** All individuals who resided in Kentucky and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Louisiana Subclass:** All individuals who resided in Louisiana and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Maryland Subclass:** All individuals who resided in Maryland and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Minnesota Subclass:** All individuals who resided in Minnesota and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**North Carolina**: All individuals who resided in North Carolina and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**New Hampshire Subclass:** All individuals who resided in New Hampshire and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**New Jersey Subclass:** All individuals who resided in New Jersey and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**New York Subclass**: All individuals who resided in New York and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Ohio Subclass:** All individuals who resided in Ohio and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Oklahoma Subclass**: All individuals who resided in Oklahoma and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Oregon Subclass**: All individuals who resided in Oregon and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Pennsylvania Subclass**: All individuals who resided in Pennsylvania and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Rhode Island Subclass**: All individuals who resided in Rhode Island and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**South Carolina Subclass**: All individuals who resided in South Carolina and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or

after March 2024.

**South Dakota Subclass**: All individuals who resided in South Dakota and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Texas Subclass**: All individuals who resided in Texas and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

**Wisconsin Subclass**: All individuals who resided in Wisconsin and purchased one or more model year 2020-2023 Grand Design RVs and (a) continue to own the RV or (b) sold or disposed of the RV either (i) after it experienced frame failure and/or excessive frame flex or (ii) on or after March 2024.

576.    For purposes of the class definitions set forth above, "Grand Design RV" shall be defined as the following RV models: Reflection, Influence, Solitude, and Momentum.

577.    Excluded from the Class are Defendants, their legal representatives, assigns and successors, and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

578.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

579.    <u>Numerosity (Rule 23(a)(1))</u>: Although the actual size of the Class is uncertain, Plaintiffs are informed and believe that the Class is comprised of at least thousands of purchasers of Grand Design RVs, making joinder impracticable. The disposition of the claims of the Class in a single action will provide substantial benefits to the parties and the Court.

580.    <u>Commonality (Rule 23(a)(2))</u>: Questions of law and fact common to Plaintiffs and

the Class include, but are not limited to, the following:

     *1.*  Whether Defendants owed a duty of care to Plaintiffs and the Class;

     *2.*  Whether Grand Design RVs were manufactured with defective frames;

     *3.*  Whether Defendants knew or should have known that Grand Design RVs were manufactured with defective frames;

     *4.*  Whether Defendants failed to disclose and/or warn that Grand Design RVs were manufactured with defective frames;

     *5.*  Whether Defendants represented that the frames installed in Grand Design RVs were not defective;

     *6.*  Whether Defendants marketed Grand Design RVs as being fit for a use inconsistent with what the fame could handle;

     *7.*  Whether reasonable consumers would believe that the frames installed in Grand Design RVs were fit for their intended use;

     *8.*  Whether Defendants continued to manufacture and sell Grand Design RVs manufactured with defective frames even after they reasonably knew or should have known that the frames were defective;

     *9.*  Whether Defendants' omission of the presence of defective frames was likely to mislead, deceive, confuse, or confound consumers acting reasonably;

     *10.* Whether Defendants unjustly enriched themselves at consumers' expense;

     *11.* Whether Plaintiffs and the Class are entitled to actual, statutory, and treble damages; and

     *12.* Whether Plaintiffs and the Class are entitled to declaratory and injunctive relief.

     581.  <u>Typicality (Rule 23(a)(3))</u>: The claims of the representative Plaintiffs are typical of

the claims of members of the Class, in that the representative Plaintiffs, like all members of the Class, purchased Grand Design RVs without knowing that they were manufactured with defective frames. If Plaintiffs had known that information, they would not have purchased the Grand Design RVs. All members of the Class are in a similar position. Thus, the representative Plaintiffs, like all members of the Class, have suffered a common injury. The factual basis of Defendants' misconduct is common to all members of the Class.

582.    Adequacy (Rule 23(a)(4)): Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving consumer fraud and false advertising, product defects, and violation of consumer protection statutes. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

583.    Predominance of Common Questions (Rule 23(b)(3)): The aforementioned common questions of law and fact predominate over any questions involving individualized analysis. There are no fundamental questions of law or fact that are not common to members of the Class.

584.    Superiority (Rule 23(b)(3)): Plaintiffs and members of the Class have suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most members of the Class likely would find the cost of litigating their individual claims to be prohibitive and will have no adequate remedy at law. Thus, absent a class action, members of the Class will continue to incur damages and Defendants' misconduct will

proceed without remedy. Class treatment of common questions of fact and law is superior to multiple individual actions or piecemeal litigation because it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication. There is no impediment to the management of this action as a class action because the questions of fact and law are virtually identical for Plaintiffs and all Class members.

585.    Injunctive Relief (Rule 23(b)(2)): Defendants have engaged in, and continue to engage in, practices that are unfair and fraudulent by, among other things, failing to disclose the material fact that the frames installed in Grand Design RVs are defective and prone to failure. Plaintiffs seek class-wide injunctive relief on grounds consistent with the standards articulated in Rule 23(b)(2) that establish final injunctive relief as an appropriate class-wide remedy, in that Defendants continue to deny that Grand Design RV frames are defective and refuse to issue a recall, which would sufficiently inform purchasers that Grand Design RVs are defective. The injuries suffered by Plaintiffs and the Class as a result of Defendants' actions are ongoing.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of the Indiana Deceptive Consumer Sales Act**
**(On Behalf of Plaintiffs and the Nationwide Class, or alternatively the Indiana Subclass)**

586.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

587.    This claim for relief is brought by Plaintiffs, individually and on behalf of the Nationwide Class (or alternatively, on behalf of the Indiana Subclass), against Defendants.

588.    In the alternative, this claim for relief is brought on behalf of the Indiana Subclass.

589.    Grand Design and Winnebago are "persons" and "suppliers" within the meaning of

Ind. Code § 24-5-0.05-2(a)(3).

590.    Plaintiffs' purchases of Grand Design RVs are "consumer transactions" within the meaning of Ind. Code § 24-5-0.05-2(a)(1).

591.    Under Indiana's Deceptive Consumer Sales Act ("Indiana DCSA"), Defendants are prohibited from "commit[ting] an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction," including "both implicit and explicit misrepresentations" that "occur[ ] before, during, or after the transaction." Ind. Code. § 24-5-0.5-3(a).

592.    The Indiana DCSA serves to protect Indiana's interest in, among other things, protecting consumers from Indiana suppliers that engage in deceptive conduct and applies to sales to consumers outside of Indiana.

593.    Under the Indiana DCSA, "deceptive trade practices," include, but are not limited to, representations and omissions that: "(1) That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection it does not have; (2) That such subject of a consumer transaction is of a particular standard, quality, grade, style or model if it is not and if the supplier knows or should reasonably know that it is not; . . . (7) That the supplier has a sponsorship, approval or affiliation in such consumer transaction that the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have; . . . (b) Any representations on or within a product or its packaging or in advertising or promotional materials which would constitute a deceptive act shall be the deceptive act both of the supplier who places such a representation thereon or therein, or who authored such materials, and such suppliers who shall state orally or in writing that such representation is true if such other

supplier shall know or have reason to know that such representation was false."

594. Deceptive trade practices also include implied misrepresentations or omissions on which a reasonable person would rely.

595. Defendants participated in misleading, false, or deceptive acts that violated the Indiana DCSA, including both express and implicit misrepresentations and omissions. By systematically concealing the extent and prevalence of the frame defect in Grand Design RVs, Defendants engaged in deceptive business practices prohibited by the Indiana DCSA. Defendants also engaged in unlawful trade practices by: (1) representing that Grand Design RVs have characteristics, uses, benefits, and qualities that they do not have; (2) representing that Grand Design RVs are of a particular standard and quality when they are not; (3) advertising Grand Design RVs with the intent not to sell them as advertised; (4) failing to acknowledge the frame defect present in Grand Design RVs; (5) representing that frame defects in the Grand Design RVs could be repaired; (6) representing that the frame defects had been repaired when they had not been and, in fact, could not be repaired; (7) omitting from consumer communications information as to the frame defect in the Grand Design RVs; (8) censoring from public forums information as to the frame defect in the Grand Design RVs; and (9) otherwise engaging in conduct likely to deceive. The defects in each RV include not only the specific frame defect but also include the defective processes through which Defendants built and repaired the RVs, processes that included cost-cutting, minimizing the importance of safety issues, failing to follow acceptable manufacturing processes, and failing to design RV frames that were fit for their intended purpose. All of these defective processes would be material to a reasonable consumer.

596. Defendants' actions, as set forth herein, occurred in the conduct of trade or

commerce.

597.    In the course of their business, Defendants concealed the defects in Grand Design RVs before and after the sales thereof as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs.

598.    From at least 2020, Defendants knew the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs.

599.    And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

600.    Defendants also represented to Plaintiffs that the frame defect could be repaired, and Plaintiffs relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiffs relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

601.    Instead of disclosing these frame defects, Defendants both omitted the defects from its communications with Plaintiffs and actively concealed them.

602.    Instead of disclosing these frame defects, Defendants continued marketing the RVs as safe, reliable, and fit-for-purpose.

603.    However, it is not possible to have a safe, reliable, fit-for-purpose RV if the frame— upon which the living quarters, walls, and weight of the vehicle rests—is not able to support that

weight.

604.    Thus, Defendants actively concealed the fact that it was not possible to purchase a safe, reliable, or fit-for-purpose Grand Design RV.

605.    However, this information and knowledge was not shared with customers, and instead remained within the sole possession, custody, and control of Defendants.

606.    The failure to disclose this knowledge represents an unfair and deceptive business practices in violation of the Indiana DCSA.

607.    Defendants' unfair or deceptive business practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their Grand Design RVs.

608.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

609.    Defendants intentionally and knowingly misrepresented material facts regarding the Grand Design RVs with the intent to mislead Plaintiffs and reasonable consumers.

610.    Plaintiffs relied on these misrepresentations and omissions to purchase the defective Grand Design RVs, to use the defective Grand Design RVs, to delay more extensive repairs to their vehicles resulting in continued deterioration, and to otherwise delay taking action to address the defects in Grand Design RVs. Because of Defendants' deceptive acts, Plaintiffs have been left far worse off than they would have been if Defendants had been truthful in dealing with

Plaintiffs and their promotion of the Grand Design RVs.

611.    Defendants knew or should have known that their conduct violated the Indiana DCSA.

612.    Defendants owed Plaintiffs and all reasonable consumers a duty to disclose the true safety and reliability of the Grand Design RVs because Defendants (i) possessed exclusive knowledge about the frame defects in the Grand Design RVs; (ii) intentionally concealed the foregoing from Plaintiffs and their customers; and/or (iii) made incomplete representations about the safety and reliability of the Grand Design RVs, while purposefully withholding material facts from Plaintiffs and their customers that contradicted these representations.

613.    Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the proposed class members were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiffs' and proposed class members have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiffs and proposed class members have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiffs and the proposed class members been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them.  Plaintiffs and the proposed class members would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

614.    Plaintiffs and the proposed class members were also harmed by Defendants' unfair and deceptive trade practices since their RVs are and/or were worth less as the result of

Defendants' concealment of, and failure to remedy, the frame defect. Further, once the truth came out about the frame defect, the value of Grand Design RVs greatly decreased to well below the value the RVs would have had in the absence of the defect. This diminished value is directly attributable to Defendants' dishonesty and omissions with respect to the quality and safety of Grand Design RVs.

615.    Defendants' concealment of the frame defect was material to Plaintiffs and proposed class members.

616.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

617.    As a direct and proximate result of Defendants' violations of the Indiana DCSA, Plaintiffs and the proposed class members have suffered injury in fact and/or actual damages as alleged above. As a direct result of Defendants' misconduct, all Plaintiffs and proposed class members incurred damages in at least the form of lost time and money required to repair their RVs.

618.    Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff, including treble damages up to $1,000 for Defendants' willfully deceptive acts.

619.    Plaintiffs also seek punitive damages based on the outrageousness and recklessness of Defendants' conduct.

620.    On March 17, 2025, Plaintiffs sent a letter complying with Ind. Code § 24-5-0.5-

5(a) on behalf of the Nationwide Class, Indiana subclass, and several Plaintiffs, including Plaintiffs Auble, Critchfield, Croteau, O'Neal, Peabody, Pfeiffer, and Rieber.

621.    On May 23, 2025, Plaintiffs sent a second letter complying with Ind. Code § 24-5-0.5-5(a) on behalf of the Nationwide Class, the Indiana subclass, and Plaintiff Trotter.

622.    Because Defendants failed to remedy their unlawful conduct within the requisite time period demanded in either letter, Plaintiffs and the proposed classes seek all damages and relief to which they are entitled.

**SECOND CAUSE OF ACTION**
**Violation of the Minnesota Prevention of Consumer Fraud Act**
**Minn. Stat. § 325F.69 *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class, and the Minnesota Subclass)**

623.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

624.    This claim for relief is brought by Plaintiffs, individually on behalf of the Nationwide Class, against Defendants.

625.    In the alternative, this claim for relief is brought on behalf of the Minnesota Subclass.

626.    Grand Design RVs, as defined herein, constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

627.    The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1). Defendants engaged in

misleading, false, or deceptive acts that violated the Minnesota CFA.

628.    By concealing the known defects in Plaintiffs' Grand Design RVs, Defendants engaged in deceptive business practices prohibited by the Minnesota CFA. Each Grand Design RV was manufactured with a defective frame, which caused customers' RV frames to fail or is likely to cause frame failure. Furthermore, the existence of this defect has significantly reduced the resale value of Grand Design RVs owned by Plaintiffs and the Class. The existence of the frame defect was concealed and would be material to a reasonable consumer.

629.    Defendants' actions, as set forth herein, occurred in the conduct of trade or commerce.

630.    In the course of their business, Defendants concealed defects in Plaintiffs' Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or maintenance of Grand Design RVs.

631.    At all times relevant hereto, Defendants knew or should have known of the frame failure defect in Grand Design RVs because Defendants (i) designed the specifications for the Grand Design RV frames and knew or should have known that the frames were not capable of supporting the weight of the RV, (ii) received reports of actual frame failure at alarming rates, including through warranty claims, NHTSA complaints, and customer feedback, and (iii) took steps to actively conceal the alarming rate at which Grand Design RV frames were failing. Indeed,

to this day, Defendants disparage reports of frame failure, calling it "rumor" or "misinformation."

632.    Instead of disclosing these frame defects, Defendants actively concealed them.

633.    Instead of disclosing these frame defects, Defendants continued marketing the RVs as safe, reliable, and fit-for-purpose.

634.    However, it is not possible to have a safe, reliable, fit-for-purpose RV if the frame—upon which the living quarters, walls, and weight of the vehicle rests—is not able to support that weight.

635.    Thus, Defendants actively concealed the fact that it was not possible to purchase a safe, reliable, or fit-for-purpose Grand Design RV.

636.    And this information and knowledge was not shared with customers. Rather, it remained within the sole possession, custody, and control of Defendants.

637.    By failing to disclose and by actively concealing the defects in Plaintiffs' Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Minnesota CFA.

638.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiffs' Grand Design RVs.

639.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their RVs.

640.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiffs.

641.    Defendants knew or should have known that their conduct violated the Minnesota

CFA.

642.    As alleged herein, Defendants made material statements about the safety and reliability of Grand Design RVs that were either false or misleading.

643.    Defendants owed Plaintiffs a duty to disclose the true safety and reliability of Grand Design RVs' frames because Defendants possessed exclusive knowledge about the frame defect; intentionally concealed the existence of the defect from Plaintiffs; and made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

644.    Because Defendants fraudulently concealed the frame defect in Grand Design RVs, Grand Design RV owners were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if they were free from defects. Further, Plaintiffs and Class members had to spend their time and money to attempt to repair RVs in which the frame failed. Had Grand Design RV owners been aware of the defects in their RVs, they would have either not bought the RV or would have paid less for it.

645.    Defendants' violations present a continuing risk to Plaintiffs as well as the general public. In particular and as alleged herein, Defendants have refused to recognize the frame failure defect, which poses significant risks to the safety of Grand Design RV owners and others on the road. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

646.    As a direct and proximate result of Defendants' violations of the Minnesota CFA,

Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above.

647.    Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

648.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights and safety of others.

### THIRD CAUSE OF ACTION
**Violation of Minnesota Uniform Deceptive Trade Practices Act**
**Minn. Stat. § 325D.43-48, *et seq.***
**(On Behalf of Plaintiffs and the Nationwide Class, and the Minnesota Subclass)**

649.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

650.    This claim for relief is brought by Plaintiffs, individually and on behalf of the Nationwide Class, against Defendants.

651.    In the alternative, this claim for relief is brought on behalf of the Minnesota Subclass.

652.    The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices, which occur, *inter alia*, when a person "represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," or "represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," or "advertises goods or services with intent not to sell them as advertised." Minn. Stat. § 325D.44.

653.    In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not

have; represented that Grand Design RVs are of a particular standard, quality, or grade, or that Grand Design RVs are of a particular style or model, when they were of another; and advertised Grand Design RVs with intent not to sell them as advertised.

654.    Defendants participated in misleading, false, or deceptive acts that violated the Minnesota DTPA. By concealing the known defects in Plaintiffs' Grand Design RVs, Defendants engaged in deceptive business practices prohibited by the Minnesota DTPA. The frame defect in each RV includes not only the specific defect, but also the defective process through which Defendants built the RVs, a process that included minimizing the importance of safety and inspection, building faster at the cost of quality, and the failure to appropriately design and engineer parts to perform for their intended task. All of these defective processes would be material to a reasonable consumer.

655.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

656.    In the course of their business, Defendants concealed the frame defect in Grand Design RVs and otherwise engaged in activities with a tendency or capacity to deceive. Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs.

657.    At all times relevant hereto, Defendants knew or should have known of the frame failure defect in Grand Design RVs because Defendants (i) designed the specifications for the Grand Design RV frames and knew or should have known that the frames were not capable of supporting the weight of the RV, (ii) received reports of actual frame failure at alarming rates,

including through warranty claims, NHTSA complaints, and customer feedback, and (iii) took steps to actively conceal the alarming rate at which Grand Design RV frames were failing. Indeed, to this day, Defendants disparage reports of frame failure, calling it "rumor" or "misinformation.

658.    By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Minnesota DTPA.

659.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

660.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their Grand Design RVs.

661.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiffs.

662.    Defendants knew or should have known that their conduct violated the Minnesota DTPA.

663.    As alleged herein, Defendants made material statements about the safety and reliability of Grand Design RVs that were either false or misleading.

664.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, Defendants have refused to recognize the frame failure defect, which poses significant risks to the safety of Grand Design RV owners and others on the road. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are

therefore still defective.

665.    As a direct and proximate result of Defendants' violations of the Minnesota DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above.

666.    Pursuant to Minn. Stat. § 8.31(3a) and 325D.45, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota DTPA.

667.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that Defendants' acts show deliberate disregard for the rights or safety of others.

## FOURTH CAUSE OF ACTION
### Violation of the Arizona Consumer Fraud Act
### Arizona Rev. Stat. § 44-1521 *et seq.*
### (Individually and On Behalf of the Arizona Subclass)

668.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

669.    This claim for relief is brought by Plaintiff Auble, individually and on behalf of the Arizona Subclass, against Defendants.

670.    Defendants are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

671.    The Grand Design RVs are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

672.    The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, . . . misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale . . . of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat.

§ 44-1522(A).

673.    In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

674.    Defendants participated in misleading, false, or deceptive acts that violated the Arizona CFA. By concealing the known defects in the Grand Design RVs, and making misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs, Defendants engaged in deceptive business practices prohibited by the Arizona CFA. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

675.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

676.    In the course of their business, Defendants concealed the frame defect in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices,

fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs.

677.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the Arizona subclass, yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs. Defendants also represented that the frame defect could be repaired, and Plaintiff and the Arizona Subclass relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiff and the Arizona Subclass relied on Defendants' deceptive representations, they were

deprived of the use of their Grand Design RVs for extended periods of time.

678.    By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Arizona CFA.

679.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

680.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Arizona Subclass, about the true safety and reliability of their Grand Design RVs.

681.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

682.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and the Arizona Subclass.

683.    Defendants knew or should have known that their conduct violated the Arizona CFA.

684.    As alleged herein, Defendants made material statements about the safety and reliability of Grand Design RVs that were either false or misleading.

685.    Defendants owed Plaintiff and the Arizona Subclass a duty to disclose the true condition of their RVs because they:

a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

b.  Intentionally concealed the foregoing from Plaintiff and the Arizona Subclass; and

c.  Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiff and the Arizona Subclass that contradicted these representations.

686.  Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the Arizona Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. Due to Defendants' continued misrepresentations and omissions, the Grand Design RVs have continued to decline in value since Plaintiff and the Arizona Subclass purchased them. Further, Plaintiff and the Arizona Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and the Arizona Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiff and the Arizona Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

687.  Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

688.  Defendants' concealment of these defects was material to Plaintiff and the Arizona Subclass.

689.    Defendants' violations present a continuing risk to Plaintiff and the Arizona Subclass as well as to the general public. In particular and as alleged herein, Defendants have refused to recognize the frame failure defect, which poses significant risks to the safety of Grand Design RV owners and others on the road. Defendants' unlawful acts and practices complained of herein affect the public interest.

690.    As a direct and proximate result of Defendants' violations of the Arizona CFA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

691.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.

692.    Plaintiff and the Arizona Subclass seek monetary relief against Defendants in an amount to be determined at trial. Plaintiff and the Arizona Subclass also seek punitive damages because Defendants engaged in aggravated and outrageous conduct with an evil mind.

693.    Plaintiff and the Arizona Subclass also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

### FIFTH CAUSE OF ACTION
**Violation of the California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**(Individually and On Behalf of the California Subclass)**

694.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

695.    This claim for relief is brought by Plaintiffs Critchfield, Thompson, and Vanzyl

(collectively "California Plaintiffs"), individually and on behalf of the California Subclass, against Defendants.

696.    California Business and Professional Code 17500 broadly prohibits false advertising by making it unlawful to make or disseminate to the public any publications or advertisement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…" Cal. Bus. & Prof. Code §§ 17500 et seq.

697.    Defendants' acts and practices, as described herein, have deceived and misled and/or are likely to continue to deceive and mislead California Subclass members and the public. In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing in publications and advertisements that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

698.    By its actions, Defendants disseminated uniform advertising and made uniform representations regarding Grand Design RVs to and across California and the public within the meaning of the statute. The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of California Business & Professions Code § 17500 *et seq.* Such advertisements were intended to and likely did deceive the consuming public for the reasons described herein.

699.    The above-described false, misleading, and deceptive advertising and representations Defendants disseminated continues to have a likelihood to deceive in that Defendants failed to disclose that the Grand Design RVs contain a defective frame that can and is likely to lead to frame failure.

700.    Defendants continue to misrepresent that the Grand Design RVs are free from frame defects. But that is not the case.

701.    In making and disseminating these statements and representations, Defendants knew, or should have known, their advertisements and statements were untrue and/or misleading in violation of California law. California Plaintiffs and other members of the California Subclass based their purchasing decisions on Defendants' misrepresentation and omission of material facts. California Plaintiffs and members of the California Subclass were injured in fact and lost money and property as a result.

702.    The misrepresentations and non-disclosures by Defendants of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of California Business & Professions Code § 17500 *et seq.*

703.    As a result of Defendants' wrongful conduct, California Plaintiffs and the California Subclass lost money in an amount to be proven at trial. California Plaintiffs and members of the California Subclass are therefore entitled to restitution as appropriate for this case of action.

704.    California Plaintiffs and members of the California Subclass seek all monetary and non-monetary relief permitted by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs; injunctive relief; and other appropriate and equitable relief.

705.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the full premium price, and an injunction requiring (1) adequate disclosure of the frame defect; and (2) a recall of the affected RVs, will ensure that California Plaintiffs and members of the California Subclass are in the same place they

would have been had Defendants' wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of an RV absent omissions and misrepresentations as described herein.

## SIXTH CAUSE OF ACTION
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code § 17200 *et seq.*
### (Individually and On Behalf of the California Subclass)

706.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

707.    This claim for relief is brought by Plaintiffs Critchfield, Thompson, and Vanzyl (collectively "California Plaintiffs"), individually and on behalf of the California Subclass, against Defendants.

708.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice." For the reasons discussed herein, Defendants have engaged in unlawful, unfair, and fraudulent business acts or practices in violation of California Business & Professions Code § 17200.

709.    Defendants' conduct as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentation, concealment, suppression and omission of material facts in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 as to the California Subclass. These violations include, but are not limited to, Defendants' misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to

consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

710.    Defendants have violated the UCL's proscription against engaging in unlawful business practices because of their violations of California's Song-Beverly Act and California's False Advertising Law, in addition to violations of common law.

711.    As described herein, Defendants' misleading marketing and advertising of the Grand Design RVs is likely to deceive reasonable consumers. In addition, Defendants have committed unlawful business practices by, *inter alia*, making the representations and omissions of material facts, as set forth more fully herein, and violating the common law.

712.    In the course of its business, Defendants' knowingly and systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in connection with the sale or lease of Grand Design RVs.

713.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects

affecting the Grand Design RVs owned or leased by California Plaintiffs and the California subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide Plaintiffs with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

714.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

715.    By failing to disclose and by actively concealing the known defects in California Plaintiffs' and the California Subclass' vehicles, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the California UCL.

716.    In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

717. Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including California Plaintiffs and members of the California Subclass, about the true safety and reliability of their RVs.

718. Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

719. Defendants owed California Plaintiffs and the California Subclass a duty to disclose the true condition of their RVs because they:

   a. Possessed exclusive knowledge about the defects in Grand Design RVs;

   b. Intentionally concealed the foregoing from California Plaintiffs and the California Subclass; and

   c. Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from California Plaintiffs and the members of the California Subclass that contradicted these representations.

720. Because Defendants improperly concealed the frame defect in the Grand Design RVs, California Plaintiffs and members of the California Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects.  The Grand Design RVs have continued to decline in value since California Plaintiffs and members of the California Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, California Plaintiffs members of the California Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to

deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had California Plaintiffs and members of the California Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Moreover, they would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

721.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

722.    Defendants' concealment of these defects was material to the California Plaintiffs and the members of the California Subclass.

723.    Defendants' violations present a continuing risk to California Plaintiffs, the California Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective. California Plaintiffs and members of the California Subclass reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

724.    Defendants have also violated the UCL's proscription against engaging in unfair business practices. Defendants' act, omissions, misrepresentations, practices and non-disclosures, as alleged herein, constitute "unfair" business acts and practices within the meaning of Business

& Professions Code § 17200 *et seq.*, in that Defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

725.    There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

726.    Defendants have further violated the UCL's proscription against engaging in fraudulent business practices. Defendants' claims, nondisclosures, and misleading statements with respect to the Grand Design RVs were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

727.    California Plaintiffs and the members of the California Subclass suffered a substantial injury by virtue of purchasing the Grand Design RVs that they would not otherwise have purchased, or by paying more than they otherwise would have for those RVs, absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Grand Design RVs.

728.    There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Grand Design RVs.

729.    California Plaintiffs and other members of the California Subclass had no way of reasonably knowing that the Grand Design RVs they purchased were not as marketed and/or advertised. Thus, they could not have reasonably avoided the injury each of them suffered.

730.    The gravity of the consequences of Defendants' conduct as described outweighs any justification, motive, or reason for engaging in this conduct, particularly considering the available legal alternatives which exist in the marketplace, and Defendants' conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff

and members of the California Subclass.

731.    As a direct and proximate result of Defendants' violations of the UCL, California Plaintiffs and members of the California Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

732.    Pursuant to California Business & Professions Code § 17203, California Plaintiffs and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendants to (a) provide restitution to Plaintiff and the members of the California Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay attorney fees and costs.

### SEVENTH CAUSE OF ACTION
**Violation of the California Consumer Legal Remedies Act**
**CA Civ. Code §§ 1750 *et seq.***
**(Individually and On Behalf of the California Subclass)**

733.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

734.    This claim for relief is brought by Plaintiffs Critchfield, Thompson, and Vanzyl (collectively "California Plaintiffs"), individually and on behalf of the California Subclass, against Defendants.

735.    Defendants are "persons" under CAL. CIV. CODE § 1761(c).

736.    Plaintiffs are "consumers," as defined by CAL. CIV. CODE § 1761(d), who purchased or leased one or more Grand Design RV.

737.    The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" CAL. CIV. CODE § 1770(a).

738.    Defendants participated in unfair and deceptive trade practices that violated the CLRA by engaging in deceptive acts or practices, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

739.    Defendants' actions, as set forth herein, occurred in the conduct of trade or commerce.

740.    In the course of its business, Defendants' knowingly and systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in connection with the sale or lease of Grand Design RVs.

741.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs.

And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by California Plaintiffs and members of the California subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

742.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

743.    By failing to disclose and by actively concealing the frame defect in the Grand Design RVs, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the CLRA.

744.    In the course of business, Defendants willfully failed to disclose and actively

concealed the dangerous risks posed by the defects in Grand Design RVs.

745.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including California Plaintiffs and members of the California Subclass, about the true safety and reliability of their vehicles.

746.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

747.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead California Plaintiffs and members of the California Subclass.

748.    Defendants knew or should have known that its conduct violated the CLRA.

749.    As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

750.    Defendants owed California Plaintiffs and the California Subclass a duty to disclose the true condition of their RVs because they:

   a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

   b.    Intentionally concealed the foregoing from California Plaintiffs and the California Subclass; and

   c.    Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from California Plaintiffs and

the California Subclass that contradicted these representations.

751.    Because Defendants unreasonably concealed the frame defect, California Plaintiffs and members of the California Subclass were deprived of the benefit of their bargain since the Grand Design RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since California Plaintiffs' and the California Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, California Plaintiffs and the California Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had California Plaintiffs and the California Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. California Plaintiffs and the California Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

752.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

753.    Defendants' concealment of these defects was material to the California Plaintiffs and the members of the California Subclass.

754.    Defendants' violations present a continuing risk to California Plaintiffs, members of the California Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported

"fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

755.     As a direct and proximate result of Defendants' violations of the CLRA, California Plaintiffs and members of the California Subclass have suffered injury-in-fact and/or actual damage as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

756.     Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused California Plaintiffs and members of the California Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, California Plaintiffs and members of the California Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

757.     Under CAL. CIV. CODE § 1780(a), Plaintiffs seek monetary relief against Defendants for the harm caused by Defendants' violations of the CLRA as alleged herein.

758.     Under CAL. CIV. CODE § 1780(b), Plaintiffs seek an additional award against Defendants of up to $5,000 for each Plaintiff who qualifies as a "senior citizen" or "disabled person" under the CLRA. Defendants knew or should have known that its conduct was directed to one or more Plaintiffs who are senior citizens or disabled persons. Defendants' conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more Plaintiffs who are senior citizens or disabled persons are substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

759.    Plaintiffs also seek punitive damages against Defendants because they carried out reprehensible conduct with willful and conscious disregard of the rights and safety of others, subjecting Plaintiffs to potential cruel and unjust hardship as a result. Defendants intentionally and willfully deceived Plaintiffs on critical safety matters, and concealed material facts that only Defendants knew. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages under CAL. CIV. CODE § 3294.

760.    Plaintiffs further seek an order enjoining Defendants' unfair or deceptive acts or practices, restitution, punitive damages, costs of court, attorneys' fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

761.    On May 23, 2025, Plaintiffs sent a letter complying with CAL. CIV. CODE § 1780(b) on behalf of California Plaintiffs. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs and the proposed class seek all damages and relief to which they are entitled. Indeed, Defendants failed to even respond to Plaintiffs' CLRA letter.

### EIGHTH CAUSE OF ACTION
**Violation of Colorado Consumer Protection Act**
**CO Rev. Stat. § 6-1-101 *et seq.***
**(Individually and On Behalf of the Colorado Subclass)**

762.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

763.    This claim is brought by Plaintiff Reese, individually and on behalf of the Colorado Subclass, against Defendants.

764.    Defendants are "persons" as that term is defined in CO Rev. Stat § 6-1-102(6) § 1345.01(C).

765.    Plaintiff and members of the Colorado Subclass are "consumers" as that term is used in CO Rev. Stat. § 6-1-105(1) and viewed "advertisements" as defined in CO Rev. Stat. § 6-

1-102(1),

766.    Plaintiff's RV is both "property" and a "good," as the terms are defined and used, respectively, in CO Rev. Stat. § 6-1-102, and his purchase of a Grand Design RV was a "sale" within the meaning of CO Rev. Stat. § 6-1-102(10).

767.    The Colorado Consumer Protection Act ("CCPA"), CO Rev. Stat. § 6-1-105(1), broadly prohibits a person from engaging in a deceptive trade practice in the course of the person's business, vocation, or occupation. Specifically, and without limitation of the broad prohibition, the CCPA prohibits persons from (i) representing that goods are of a particular standard, quality, or grade if they know or should know that they are of another; (ii) advertising goods, services, or property with intent not to sell them as advertised; and (iii) fails to disclose material information concerning goods or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction. Defendants' conduct as alleged herein constitutes unfair and/or deceptive consumer sales practices in violation of Colorado Rev. Stat. § 6-1-105.

768.    In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

769.    Defendants participated in misleading, false, or deceptive acts that violated the CCPA. By concealing the known defects in the Grand Design RVs, Defendants engaged in deceptive business practices prohibited by the CCPA. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing

production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

770.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

771.    In the course of their business, Defendants' knowingly and systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in connection with the sale or lease of Grand Design RVs.

772.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the Colorado subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected

by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

773.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

774.    By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the CCPA.

775.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

776.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and members of the Colorado Subclass, about the true safety and reliability of their Grand Design RVs.

777.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about

new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

778.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and the Colorado Subclass.

779.    Defendants knew or should have known that their conduct violated the CCPA.

780.    As alleged herein, Defendants made material statements about the safety and reliability of Grand Design RVs that were either false or misleading.

781.    Defendants owed Plaintiff and the Colorado Subclass a duty to disclose the true condition of their RVs because they:

   a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

   b.    Intentionally concealed the foregoing from Plaintiff and the Colorado Subclass; and

   c.    Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiff and the Colorado Subclass that contradicted these representations.

782.    Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the Colorado Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiff and the Colorado Subclass purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and members of the Colorado Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiffs and the members of the Colorado Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs

or paid less for them. Plaintiff and the Colorado Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

783.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

784.    Defendants' concealment of these defects was material to the Plaintiff and the members of the Colorado Subclass.

785.    Defendants' violations present a continuing risk to Plaintiff and the Colorado Subclass as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

786.    As a direct and proximate result of Defendants' violations of the CCPA, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

787.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and members of the Colorado Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and the Colorado Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

788.    As a result of the foregoing wrongful conduct of Defendants, Plaintiff and members of the Colorado Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendants' deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees pursuant to CO Rev. Stat. § 6-1-101 *et seq*.

### NINTH CAUSE OF ACTION
**Violation of Florida's Deceptive Trade Practices Act**
**Fla. Stat. § 501.201 *et seq.***
**(Individually and On Behalf of the Florida Subclass)**

789.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

790.    This claim for relief is brought by Plaintiffs Daniel Peabody and Joseph Alterman ("Florida Plaintiffs"), individually and on behalf of the Florida Subclass, against Defendants.

791.    Florida Plaintiffs and members of the Florida Subclass are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

792.    Defendants engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

793.    The Florida Unfair & Deceptive Trade Practices Act ("FUDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

794.    Defendants participated in unfair and deceptive trade practices that violated the FUDTPA by engaging in deceptive acts or practices, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs

include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

795.    Defendants' actions, as set forth herein, occurred in the conduct of trade or commerce.

796.    In the course of its business, Defendants' knowingly and systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in connection with the sale or lease of Grand Design RVs.

797.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Florida Plaintiffs and members of the Florida subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the

prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

798.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

799.    By failing to disclose and by actively concealing the frame defect in the Grand Design RVs, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the FUDTPA.

800.    In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

801.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Florida Plaintiffs and members of the Florida Subclass, about the true safety and reliability of their vehicles.

802.    Defendants' numerous, repeated, and frequent representations about the safety and

reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

803.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Florida Plaintiffs and members of the Florida Subclass.

804.    Defendants knew or should have known that its conduct violated the FUDTPA.

805.    As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

806.    Defendants owed Florida Plaintiffs and the Florida Subclass a duty to disclose the true condition of their RVs because they:

    a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.    Intentionally concealed the foregoing from Florida Plaintiffs and the Florida Subclass; and

    c.    Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Florida Plaintiffs and the Florida Subclass that contradicted these representations.

807.    Because Defendants unreasonably concealed the frame defect, Florida Plaintiffs and members of the Florida Subclass were deprived of the benefit of their bargain since the Grand Design RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Florida Plaintiffs and

the Florida Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, Florida Plaintiffs and the Florida Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Florida Plaintiffs and the Florida Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Florida Plaintiffs and the Florida Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

808.     Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

809.     Defendants' concealment of these defects was material to the Florida Plaintiffs and the members of the Florida Subclass.

810.     Defendants' violations present a continuing risk to Florida Plaintiffs, members of the Florida Subclass, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants' purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

811.     As a direct and proximate result of Defendants' violations of the FUDTPA, Florida Plaintiffs and members of the Florida Subclass have suffered injury-in-fact and/or actual damage as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket

losses, and lost time.

812.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Florida Plaintiffs and members of the Florida Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Florida Plaintiffs and members of the Florida Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

813.    Florida Plaintiffs and members of the Florida Subclass are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

814.    Florida Plaintiffs and members of the Florida Subclass also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

**TENTH CAUSE OF ACTION**
**Violation of the Georgia Fair Business Practices Act**
**Ga. Code §§ 10-1-390 through 10-1-407**
**(Individually and On Behalf of the Georgia Subclass)**

815.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

816.    This claim for relief is brought by Plaintiffs Andrew and Lucy Hallberg ("Georgia Plaintiffs"), individually and on behalf of the Georgia Subclass, against Defendants.

817.    Georgia Plaintiffs and members of the Georgia Subclass are "consumers" within the meaning of the Georgia Fair Business Practices Act ("GFBPA"), Ga. Code § 10-1-392(a)(6).

818.    Defendants are "persons" within the meaning of Ga. Code § 10-1-392(a)(24), and they engaged in "consumer acts or practices" and "consumer transactions" within the meaning of Ga. Code § 10-1-392(a)(7) and (a)(10) by marketing and selling RVs to Plaintiffs and the Georgia Subclass.

819.    The GFBPA is intended "to protect consumers" from "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce." Ga. Code §§ 10-1-391; 10-1-393(a). This includes, but is not limited to, (i) representing that goods or services have characteristics, uses, or benefits that they do not have; (ii) representing that goods or services are of a particular standard, quality, or grade if they are of another; and (iii) advertising goods or services with the intent not to sell them as advertised. *See* Ga. Code § 10-1-393(b). Moreover, a person commits an "intentional violation" when the "person committing the act or practice knew that his or her conduct was in violation" of the GFBPA. Ga. Code § 10-1-392(b).

820.    Defendants intentionally violated the GFBPA by engaging in unfair and deceptive acts or practices including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer. Defendants' actions, as set forth above, occurred in the course of trade or commerce.

821.    In the course of its business, Defendants' knowingly and systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses,

or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in connection with the sale or lease of Grand Design RVs.

822.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Georgia Plaintiffs and the members of the Georgia Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

823.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

824.    By failing to disclose and by actively concealing the frame defect in the Grand Design RVs, which Defendants marketed as safe, reliable, durable, and of high quality, Defendants engaged in unfair and violative consumer acts or practices in violation of the GFBPA.

825.    In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

826.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Georgia Plaintiffs and members of the Georgia Subclass, about the true safety, reliability, durability, and quality of their RVs.

827.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

828.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Georgia Plaintiffs and members of the Georgia Subclass.

829.    Defendants knew or should have known that its conduct violated the GFBPA.

830.    As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or

misleading.

831.    Defendants owed Plaintiffs a duty to disclose the true condition of their RVs because they:

      a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

      b.    Intentionally concealed the foregoing from Georgia Plaintiffs and members of the Georgia Subclass; and

      c.    Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

832.    Because Defendants unreasonably concealed the frame defect, Georgia Plaintiffs and members of the Georgia Subclass were deprived of the benefit of their bargain since the Grand Design RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Georgia Plaintiffs and members of the Georgia Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiffs and proposed class members have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Georgia Plaintiffs and members of the Georgia Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Georgia Plaintiffs and members of the Georgia Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

833.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

834.    Defendants' concealment of these defects was material to the Georgia Plaintiffs and the members of the Georgia Subclass.

835.    Defendants' violations present a continuing risk to Georgia Plaintiffs, the members of the Georgia Subclass, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

836.    As a direct and proximate result of Defendants' violations of the GFBPA, Georgia Plaintiffs and members of the Georgia Subclass have suffered injury-in-fact and/or actual damage as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

837.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Georgia Plaintiffs to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Georgia Plaintiffs and the members of the Georgia Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

838.    Georgia Plaintiffs and members of the Georgia Subclass are entitled to recover pursuant to GA Code § 10-1-399 (a)-(d).

839.    Georgia Plaintiffs and members of the Georgia Subclass also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the GFBPA.

840.    On May 23, 2025, the Hallberg Plaintiffs sent a letter complying with Ga. Code Ann. §§ 10-1-399. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs and the proposed class seek all damages and relief to which they are entitled. Indeed, Defendants did not even respond to this letter.

**ELEVENTH CAUSE OF ACTION**
**Violation of the Illinois Consumer Fraud and**
**Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* and 720 ILCS 295/1A**
**(Individually and On Behalf of the Illinois Subclass)**

841.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

842.    This claim for relief is brought by Plaintiff Pfeiffer, individually and on behalf of the Illinois Subclass, against Defendants.

843.    Defendants are "persons" as that term is defined in 815 ILCS 505/1(c).

844.    Plaintiff and members of the Illinois Subclass are "consumers" as that term is defined in 815 ILCS 505/1(e).

845.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

846.    Defendants participated in misleading, false, or deceptive acts that violated the

Illinois CFA. By concealing known defects in the Grand Design RV frames, Defendants engaged in deceptive business practices prohibited by the Illinois CFA, including, but not limited to, making misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

847.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

848.    In the course of its business, Defendants' knowingly and systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in connection with the sale or lease of Grand Design RVs.

849.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs.

And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the Illinois subclass, yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem— Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

850. Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

851. By failing to disclose and by actively concealing the defects in the Grand Design RVs owned by Plaintiff and the Illinois Class, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Illinois CFA.

852. In the course of Defendants' business, it willfully failed to disclose and actively

concealed the frame defect and the risks of frame failure in Grand Design RVs.

853.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of their Grand Design RVs.

854.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

855.    Defendants intentionally and knowingly misrepresented material facts regarding the Grand Design RVs with the intent to mislead Plaintiff and Illinois Subclass members.

856.    Defendants made efforts to conceal the frame defect in Grand Design RVs, refusing to repair customers' frames unless those customers signed non-disclosure agreements committing themselves to silence.

857.    Defendants knew or should have known that their conduct violated the Illinois CFA.

858.    As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

859.    Defendants owed Plaintiff and the Illinois Subclass a duty to disclose the true condition of their RVs because:

    a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.    Intentionally concealed the foregoing from Plaintiff and the Illinois Subclass; and

     c.    Made incomplete representations about the safety and reliability of Grand Design

RVs, while purposefully withholding material facts from Plaintiff and the Illinois

Subclass that contradicted these representations.

860.    Because Defendants improperly concealed the defects in the Grand Design RVs,

Grand Design RV owners were deprived of the benefit of their bargain since the RVs they

purchased were worth less than they would have been if they were free from defects. The Grand

Design RVs have continued to decline in value since Plaintiffs' and proposed class members have

purchased them due to Defendants' continued misrepresentations and omissions. Further,

Plaintiffs and proposed class members have spent their time and money to attempt to repair their

Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand

Design RVs following frame failure. Had Plaintiff and Illinois Subclass been aware of the frame

defects in their Grand Design RVs, they would have either not purchased those RVs or paid less

for them. Plaintiff and the Illinois Subclass would not have used the defective RVs and would have

either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than

when they actually did so.

861.    Furthermore, once the truth about the defects in Grand Design RVs became public,

the market value of these RVs dropped significantly, falling well below the value they would have

retained had the defects not existed. This diminished value is directly attributable to Defendants'

misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand

Design RVs.

862.    Defendants' concealment of these defects was material to Plaintiff and the Illinois

Subclass.

863.    Defendants' violations present a continuing risk to Plaintiff, the Illinois Subclass,

and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

864.    As a direct and proximate result of Defendants' violations of the Illinois CFA, Plaintiff and the Illinois Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

865.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and the Illinois Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and the Illinois Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

866.    Pursuant to 815 ILCS 505/10a(a), Plaintiff seeks monetary relief against Defendants in the amount of actual damages, as well as punitive damages because Defendants acted with fraud and/or malice and/or were grossly negligent.

867.    Plaintiff also seeks an order enjoining Defendants' unfair and/or deceptive acts and compelling a recall, punitive damages, and attorneys' fees, and any other just and proper relief available under 815 ILCS § 505/1 *et seq*.

**TWELTH CAUSE OF ACTION**
**Violation of New Hampshire Consumer Protection Act**
**N.H. Rev. Stat. Ann. § 358-A:1, *et seq.***
**(Individually and On Behalf of the New Hampshire Subclass)**

868.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

869.    This claim is brought by Plaintiff Croteau, individually and on behalf of the New Hampshire Subclass, against Defendants.

870.    Plaintiff and Defendants are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

871.    Defendants' actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

872.    The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but . . . not limited to, the following: . . . (V) Representing that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, . . . if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

873.    In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

874.    Defendants participated in misleading, false, or deceptive acts that violated the New Hampshire CPA by knowingly concealing the defects in Grand Design RVs, representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. The defects in these RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections,

164

failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

875.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

876.    In the course of their business, Defendants concealed the frame defect in Grand Design RVs and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs.

877.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the New Hampshire Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—

Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

878.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiffs relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

879.    By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the New Hampshire CPA.

880.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

881.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and members of the New Hampshire Subclass, about the true safety and reliability of their Grand Design RVs.

882.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their

RVs.

883.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the New Hampshire Subclass.

884.    Defendants knew or should have known that their conduct violated the New Hampshire CPA.

885.    As alleged herein, Defendants made material statements about the safety and reliability of Grand Design RVs and the Grand Design brand that were either false or misleading

886.    Defendants owed Plaintiff and the New Hampshire Subclass a duty to disclose the true condition of their RVs because they:

a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

b.    Intentionally concealed the foregoing from Plaintiff and New Hampshire Subclass; and

c.    Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiff and members of the New Hampshire Subclass that contradicted these representations.

887.    Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and the New Hampshire Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects.  The Grand Design RVs have continued to decline in value since Plaintiff and New Hampshire Subclass have purchased them due to Defendants' continued misrepresentations and omissions.  Further, Plaintiff and members of the New Hampshire Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by

their Grand Design RVs following frame failure. Had Plaintiffs and the proposed class members been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiff and members of the New Hampshire Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

888.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

889.    Defendants' concealment of these defects was material to Plaintiff and the members of the New Hampshire Subclass.

890.    Defendants' violations present a continuing risk to Plaintiff and the New Hampshire Subclass as well as to the general public. In particular and as alleged herein, Defendants have refused to recognize the frame failure defect, which poses significant risks to the safety of Grand Design RV owners and others on the road. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

891.    As a direct and proximate result of Defendants' violations of the New Hampshire CPA, Plaintiff and the New Hampshire Subclass suffered injury-in-fact and/or actual damage as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses,

and lost time.

892.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and members of the New Hampshire Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

893.    Because Defendants' willful conduct caused injury to Plaintiff's property through violations of the New Hampshire CPA, Plaintiff and the New Hampshire Subclass seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining Defendants' unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

## THIRTEENTH CAUSE OF ACTION
### Violation of Ohio Consumer Sales Practices Act
### Ohio Rev. Code Ann. §§ 1345.01 *et seq.*
### (Individually and On Behalf of the Ohio Subclass)

894.    Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

895.    This claim is brought by Plaintiffs Michael O'Neal and Lori Fay ("Ohio Plaintiffs"), individually and on behalf of the Ohio Subclass, against Defendants.

896.    Defendants are "suppliers" as that term is defined in Ohio Rev. Code § 1345.01(C).

897.    Ohio Plaintiffs and members of the Ohio Subclass is a "consumer" as that term is defined in Ohio Rev. Code § 1345.01(D), and his purchase of a Grand Design RV is a "consumer transaction" within the meaning of Ohio Rev. Code § 1345.01(A).

898.    The Ohio Consumer Sales Practices Act ("Ohio CSPA"), Ohio Rev. Code § 1345.02, broadly prohibits unfair or deceptive acts or practices in connection with a consumer

transaction. Specifically, and without limitation of the broad prohibition, the Act prohibits suppliers from representing (i) that goods have characteristics or uses or benefits which they do not have; (ii) that their goods are of a particular quality or grade they are not; and (iii) the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not. Defendants' conduct as alleged herein constitutes unfair and/or deceptive consumer sales practices in violation of Ohio Rev. Code § 1345.02.

899.    In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

900.    Defendants participated in misleading, false, or deceptive acts that violated the Ohio CSPA by knowingly concealing the defects in Grand Design RVs, representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. The defects in these RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

901.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

902.    In the course of their business, Defendants systematically concealed the frame

defect in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs.

903.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Ohio Plaintiffs and the Ohio subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time

and resources) than quickly capitalizing on increased demand for RVs.

904. Defendants also represented to that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

905. By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Ohio CSPA.

906. In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

907. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Ohio Plaintiffs and the Ohio Subclass, about the true safety and reliability of their Grand Design RVs.

908. Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

909. Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Ohio Plaintiffs and the Ohio Subclass.

910. Defendants knew or should have known that their conduct violated the Ohio CSPA.

911. As alleged herein, Defendants made material statements about the safety and

reliability of Grand Design RVs and the Grand Design brand that were either false or misleading.

912.    Defendants owed the Ohio Plaintiffs and the Ohio Subclass a duty to disclose the true condition of their RVs because they:

    a.   Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.   Intentionally concealed the foregoing from Ohio Plaintiffs and the Ohio Subclass; and

    c.   Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Ohio Plaintiffs and the Ohio Subclass that contradicted these representations.

913.    Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the proposed class members were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Ohio Plaintiffs and the Ohio Subclass purchased them due to Defendants' continued misrepresentations and omissions. Further, Ohio Plaintiffs and the Ohio Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Ohio Plaintiffs and the Ohio Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them.  Ohio Plaintiffs and the Ohio Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

914.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have

retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

915.    Defendants' concealment of the defects was material to Ohio Plaintiffs and the Ohio Subclass.

916.    Defendants' violations present a continuing risk to Ohio Plaintiffs, the Ohio Subclass, and the general public. In particular and as alleged herein, Defendants have refused to recognize the frame failure defect, which poses significant risks to the safety of Grand Design RV owners and others on the road. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

917.    As a direct and proximate result of Defendants' violations of the Ohio CSPA, Ohio Plaintiffs and the Ohio Subclass have suffered injury-in-fact and/or actual damage as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

918.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Ohio Plaintiffs and the Ohio Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Ohio Plaintiffs and the Ohio Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

919.    As a result of the foregoing wrongful conduct of Defendants, Ohio Plaintiffs and members of the Ohio Subclass have been damaged in an amount to be proven at trial, and seek all

just and proper remedies, including, but not limited to, actual and statutory damages, an order enjoining Defendants' deceptive and unfair conduct, treble damages, court costs, and reasonable attorneys' fees pursuant to Ohio Rev. Code § 1345.09 *et seq.*

### FOURTEENTH CAUSE OF ACTION
**Violation of Oregon Unlawful Trade Practices Act
Or. Rev. Stat. §§ 646.605 *et seq.*
(Individually and On Behalf of the Oregon Subclass)**

920. Plaintiffs incorporate by reference all preceding allegations in this Complaint.

921. This claim is brought by Plaintiff Don Bilyeu, individually and on behalf of the Oregon Subclass, against Defendants.

922. Defendants are "persons" as that term is defined in OR Rev. Stat. § 646.605(4), and their marketing and sale of RVs to Plaintiff and members of the Oregon Subclass constitutes "trade" or "commerce" of "Real estate, goods, or services" as those terms are defined in OR Rev. Stat. § 646.605(6)(a) and (8).

923. The Oregon Unlawful Trade Practices Act ("OUTPA"), OR Rev. Stat. § 646.608, broadly prohibits any person from engaging in an "unlawful trade practice" in "the course of the person's business, vocation, or occupation," including: (i) representing that goods have sponsorship, approval, characteristics, uses, benefits, or qualities that they do not have; (ii) representing that goods are of a particular standard, quality, or grade; and (iii) engaging in any other unfair or deceptive conduct in trade or commerce. Defendants' misrepresentations about the characteristics, quality, standard, and/or grade of their RVs, as alleged herein, constitute unfair and/or deceptive consumer sales practices in violation of OR Rev. Stat. § 646.608. A willful violation occurs when the person committing the violation "knew or should have known that the conduct of the person was a violation." OR Rev. Stat. § 646.605(10)

924. In the course of their business, Defendants committed willful violations of OUTPA

by systematically concealing the defects in Grand Design RVs and by representing that Grand Design RVs had characteristics, qualities, uses, standards, and/or grade that they do not have. Thus, Defendants should have known that they were advertised Grand Design RVs with the intent not to sell them as advertised.

925.    Defendants willfully participated in misleading, false, or deceptive acts that violated the OUTPA by knowingly concealing the defects in Grand Design RVs, representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. The defects in these RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

926.    Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

927.    In the course of their business, Defendants systematically concealed the frame defect in Grand Design RVs and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand

Design RVs. These unlawful trade practices mislead Plaintiff and members of the Oregon Subclass.

928.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the Oregon Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem— Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

929.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

930.    By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the OUTPA.

931.    In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

932.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the members of the Oregon Subclass, about the true safety and reliability of their Grand Design RVs.

933.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

934.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiffs.

935.    Defendants knew or should have known that their conduct violated the OUTPA.

936.    As alleged herein, Defendants made material statements about the safety and reliability of Grand Design RVs and the Grand Design brand that were either false or misleading.

937.    Defendants owed Plaintiff and the members of the Oregon Subclass a duty to disclose the true condition of their RVs because they:

     a.  Possessed exclusive knowledge about the defects in Grand Design RVs;

     b.  Intentionally concealed the foregoing from Plaintiff and the Oregon Subclass; and

     c.  Made incomplete representations about the safety and reliability of Grand Design

RVs, while purposefully withholding material facts from Plaintiff and the members of the Oregon Subclass that contradicted these representations.

938.    Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the proposed class members were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiff and members of the Oregon Subclass purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and members of the Oregon Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and members of the Oregon Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiff and members of the Oregon Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

939.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

940.    Defendants' concealment of these defects was material to Plaintiff and the members of the Oregon Subclass.

941.    Defendants' violations present a continuing risk to Plaintiff, members of the Oregon Subclass, and the general public. In particular and as alleged herein, Defendants have

refused to recognize the frame failure defect, which poses significant risks to the safety of Grand Design RV owners and others on the road. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

942.    As a direct and proximate result of Defendants' violations of the OUTPA, Plaintiff and members of the Oregon Subclass have suffered injury-in-fact and/or actual damage as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

943.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and members of the Oregon Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and members of the Oregon Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

944.    As a result of the foregoing wrongful conduct of Defendants, Plaintiff and members of the OUTPA Subclass have been damaged in an amount to be proven at trial, and seek all just and proper remedies, including, but not limited to, actual and punitive damages, an order enjoining Defendants' deceptive and unfair conduct, court costs, and reasonable attorneys' fees.

## FIFTEENTH CAUSE OF ACTION
### Violation of South Carolina Unfair Trade Practices Act
### SC Code §§ 39-5-140 *et seq*.

945.    Plaintiffs incorporate by reference all preceding allegations in this Complaint.

946.    This claim is brought by Plaintiff Stephen Clay, individually and on behalf of the South Carolina Subclass, against Defendants.

947.     Defendants are "persons" within the meeting of S.C. CODE ANN. § 39-5-10.

948.     The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." S.C. CODE ANN. § 39-5-20(a).

949.     Defendants engaged in unfair and deceptive acts or practices in violation of the South Carolina UTPA by knowingly concealing the defects in Grand Design RVs, representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. The defects in these RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

950.     Defendants' actions, as set forth above, occurred in the course of trade or commerce.

951.     In the course of its business, Defendants' systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in

connection with the sale or lease of Grand Design RVs.

952.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the South Carolina Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

953.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

954.    By failing to disclose and by actively concealing the known defects in Plaintiff's

and members of the South Carolina Subclass' vehicles, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the South Carolina UTPA.

955.    In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

956.    Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and members of the South Carolina Subclass, about the true safety and reliability of their RVs.

957.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

958.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiffs and members of the South Carolina Subclass.

959.    Defendants knew or should have known that its conduct violated the South Carolina UTPA.

960.    As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

961.    Defendants owed Plaintiff and the members of the South Carolina Subclass a duty to disclose the true condition of their RVs because:

a. Possessed exclusive knowledge about the defects in Grand Design RVs;

b. Intentionally concealed the foregoing from Plaintiff and members of the South Carolina Subclass; and

c. Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiff and the South Carolina Subclass that contradicted these representations.

962.    Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the proposed class members were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiff and members of the South Carolina Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and the members of the South Carolina Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and members of the South Carolina Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiff and members of the South Carolina Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

963.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand

Design RVs.

964.    Defendants' concealment of these defects was material to Plaintiff and the members of the South Carolina Subclass.

965.    Defendants' violations present a continuing risk to Plaintiff, members of the South Carolina Subclass, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

966.    As a direct and proximate result of Defendants' violations of the South Carolina UTPA, Plaintiff and the members of the South Carolina Subclass suffered actual, ascertainable damages and injury-in-fact, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

967.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and the members of the South Carolina Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.

968.    Pursuant to S.C. CODE ANN. § 39-5-140(a), Plaintiff and the South Carolina Subclass seek monetary damages in an amount to be proven at trial. Because Defendants' actions were willful and knowing, damages should be trebled. *Id*.

969.    Plaintiff and the members of the South Carolina Subclass further allege that Defendants' conduct was malicious and deliberate, warranting punitive damages. Defendants misrepresented the safety and reliability of Grand Design RVs, concealed known defects, misled

consumers about safety risks, and engaged in deceptive practices to avoid liability—all constituting oppression, fraud, and malice.

### SIXTEENTH CAUSE OF ACTION
**Violation of Kentucky Unfair Trade Practices Act**
**KY Rev Stat §§ 365.050 *et seq*.**
**(Individually and On Behalf of the Kentucky Subclass)**

970.    Plaintiffs incorporate by reference all preceding allegations in this Complaint.

971.    This claim is brought by Plaintiff Warren Colburn, individually and on behalf of the Kentucky Subclass, against Defendants.

972.    Defendants committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of KRS 367.170.

973.    The Kentucky Consumer Protection Act ("Kentucky CPA") broadly prohibits "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce." KRS § 367.170.

974.    In the course of their business, Defendants engaged in unfair and deceptive acts and practices and violated the Kentucky CPA by systematically concealing the defects in Plaintiff's and Kentucky Subclass' RVs. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems

from consumers. All of these defective processes would be material to a reasonable consumer.

975.    Defendants' actions, as set forth above, occurred in the course of trade or commerce.

976.    In the course of their business, Defendants systematically concealed the defects present in Grand Design RVs, as described herein, and otherwise engaged in conduct that had the tendency or capacity to deceive, including representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or by concealing, suppressing, or omitting material facts, with the intent that others rely on such concealment, suppression, or omission, in connection with the sale of Grand Design RVs. Thus, Defendants should have known that they were advertised Grand Design RVs with the intent not to sell them as advertised.

977.    Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the Kentucky Subclass, yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—

Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

978.    Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

979.    By failing to disclose and by actively concealing the known defects in Plaintiff's and the Kentucky Subclass' vehicles, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Kentucky CPA.

980.    In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

981.    Defendants' unfair, misleading or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and the Kentucky Subclass, about the true safety and reliability of their RVs.

982.    Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about

new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

983.    Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the Kentucky Subclass.

984.    Defendants knew or should have known that its conduct violated the Kentucky CPA.

985.    As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

986.    Defendants owed the Plaintiff and the Kentucky Subclass a duty to disclose the true condition of their RVs because they:

a.    Possessed exclusive knowledge about the defects in Grand Design RVs;

b.    Intentionally concealed the foregoing from the Plaintiff and the Kentucky Subclass; and

c.    Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from the Plaintiff and the Kentucky Subclass that contradicted these representations.

987.    Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and the Kentucky Subclass members were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiff and the Kentucky Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and the Kentucky Subclass have spent their time and money to attempt to repair their

Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had the Plaintiff and the Kentucky Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiff and the Kentucky Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

988.    Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

989.    Defendants' concealment of the defects was material to Plaintiff and the Kentucky Subclass.

990.    Defendants' violations present a continuing risk to Plaintiffs as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

991.    As a direct and proximate result of Defendants' violations of the Kentucky CPA, Plaintiff and members of the Kentucky Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

992.    Defendants' misrepresentations about, concealment of, and failure to disclose the

defects in Grand Design RVs caused Plaintiff to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.

993.    Pursuant to Kentucky CPA, Plaintiff and members of the Kentucky Subclass are entitled to recover actual damages, plus punitive damages, reasonable attorneys' fees, and costs.

994.    The KCPA also authorizes the award of equitable relief, including disgorgement; therefore, Plaintiff and members of the Kentucky Subclass seek disgorgement of the profits.

**SEVENTEENTH CAUSE OF ACTION**
**Violation of New York Consumer Fraud Statute**
**NY GBL § 349 *et seq.***
**(Individually and On Behalf of the New York Subclass)**

995.    Plaintiffs incorporate by reference all preceding allegations in this Complaint.

996.    This claim is brought by Plaintiff Alessandro D'Alessandro, individually and on behalf of the New York Subclass, against Defendants.

997.    Plaintiffs are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. GEN. BUS. LAW § 349(h).

998.    Defendants are a "person," "firm," "corporation," or "association" within the meaning of N.Y. GEN. BUS. LAW § 349, and their marketing and sale of RVs to Plaintiffs and members of the New York Subclass constitutes consumer-oriented conduct involving trade or commerce within the meaning of the statute.

999.    The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce..." N.Y. GEN. BUS. LAW § 349(a).

1000.    Defendants' conduct as set forth herein constitutes "deceptive acts or practices" in violation of the statute, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs, and the defects in Defendants'

RVs and/or RV frames. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

1001.   These deceptive acts and practices, which were intended to mislead consumers in the process of purchasing and/or leasing a Grand Design RV, are conduct directed at consumers and the general public.

1002.   Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

1003.   In the course of their business, Defendants systematically concealed the defects present in Grand Design RVs, as described herein, and otherwise engaged in conduct that had the tendency or capacity to deceive, including representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or by concealing, suppressing, or omitting material facts, with the intent that others rely on such concealment, suppression, or omission, in connection with the sale of Grand Design RVs.

1004.   Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs.

And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by the Plaintiff and the New York Subclass, yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem— Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1005.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1006.   By failing to disclose and by actively concealing the defects in Plaintiffs' RVs, which they marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the New York GBL.

1007.   In the course of Defendants' business, they willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiffs' RVs.

1008.   Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and members of the New York Subclass, about the true safety and reliability of their vehicles.

1009.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1010.   Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the New York Subclass.

1011.   Defendants knew or should have known that their conduct violated the New York GBL.

1012.   As alleged above, Defendants made material statements about the safety and reliability of Grand Design RVs and the Grand Design brand that were either false or misleading.

1013.   Defendants owed Plaintiff and the New York Subclass a duty to disclose the true safety and reliability of the Grand Design RVs, because they:

      a.   Possessed exclusive knowledge about the defects in the Grand Design RVs;

      b.   Intentionally concealed the foregoing from Plaintiff and the New York Subclass; and

      c.   Made incomplete representations about the quality, safety and reliability of the Grand Design RVs, while purposefully withholding material facts from Plaintiff and the New York Subclass that contradicted these representations.

1014.   Because Defendants improperly concealed the frame defect in the Grand Design

194

RVs, Plaintiff and New York Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiffs' and proposed class members have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiffs and proposed class members have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiffs and the proposed class members been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them.  Plaintiffs and the proposed class members would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1015.   Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

1016.   Defendants' concealment of these defects was material to Plaintiff and members of the New York Class.

1017.   Defendants' violations present a continuing risk to Plaintiff, members of the New York Class, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

1018.    As a direct and proximate result of Defendants' violations of the New York GBL, Plaintiff and members of the New York Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1019.    Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and members of the New York Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.

1020.    Because Defendants' willful and knowing conduct caused injury to Plaintiff and the New York Subclass, Plaintiffs seek recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Defendants' deceptive conduct, and any other just and proper relief available under N.Y. GEN. BUS. LAW § 349.

**EIGHTEENTH CAUSE OF ACTION**
**Violation of New York False Advertising Law**
**NY GBL § 350 *et seq.***
**(Individually and On Behalf of the New York Subclass)**

1021.    Plaintiffs incorporate by reference all preceding allegations in this Complaint.

1022.    This claim is brought by Plaintiff Alessandro D'Alessandro, individually and on behalf of the New York Subclass, against Defendants.

1023.    Defendants were and are engaged in the "conduct of business, trade or commerce" within the meaning of N.Y. GEN. BUS. LAW § 350.

1024.    N.Y. GEN. BUS. LAW § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling,

of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …." N.Y. GEN. BUS. LAW § 350-a.

1025.   Defendants caused to be made or disseminated through New York, through advertising, marketing, social media posts, and other publications, statements that were untrue or misleading, and that were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers including Plaintiff and members of the New York Subclass.

1026.   Defendants have violated § 350 because the misrepresentations and omissions regarding the defects in Grand Design RVs, as set forth above, were material and likely to deceive a reasonable consumer.

1027.   Plaintiff and members of the New York Subclass have suffered an injury, including the loss of money, time, and/or property, as a result of Defendants' false advertising. In purchasing or leasing their vehicles, Plaintiff and members of the New York Subclass relied on the misrepresentations and/or omissions of Defendants with respect to the quality, safety, and reliability of Grand Design RVs. Defendants' representations were false and/or misleading because the concealed defects seriously undermine the value of Grand Design RVs. Had Plaintiff and members of the New York Subclass known this, they would not have either not purchased or leased their Defective Vehicles, or paid less for them.

1028.   Pursuant to N.Y. GEN. BUS. LAW § 350e, Plaintiff and the New York Subclass seek monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff. Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to

recover three times actual damages, up to $10,000 each.

1029.   Plaintiff and the New York Subclass also seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under General Business Law §§ 349–350.

**NINTEENTH CAUSE OF ACTION**
**Violation of North Carolina Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. §§ 75-1.1 _et seq._**
**(Individually and On Behalf of the North Carolina Subclass)**

1030.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1031.   This claim is brought by Plaintiff John Drake, individually and on behalf of the North Carolina Subclass, against Defendants.

1032.   Defendants engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

1033.   The North Carolina Unfair and Deceptive Acts and Practices Act ("NCUDAPA") broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75.1-1(a). As alleged above and below, Defendants willfully committed unfair or deceptive acts or practices in violation of the NCUDAPA.

1034.   Defendants' conduct as set forth herein constitutes unfair and deceptive acts or practices, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety, and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include both the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity of safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering

practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. These defective processes would be material to a reasonable consumer.

1035.  In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

1036.  In the course of their business, Defendants otherwise engaged in activities with a tendency or capacity to deceive by silencing aggrieved customers while representing to the general public that Grand Design RVs have characteristics, uses, that they do not have, and that they were of a particular standard, quality, or grade which they were not. This conduct was knowingly calculated to confuse and mislead consumers about the safety and reliability of Grand Design's RVs. Defendants' use of deception, deceptive acts or practices, misrepresentations, and/or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omissions in connection with the marketing and sale of Grand Design RVs was thus unfair to consumers.

1037.  Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers, that the frames used in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the RVs owned or leased by Plaintiff and the North Carolina Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and

associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulleting ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1038.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1039.   By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the NCUDAPA.

1040.   In the course of their commerce, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

1041.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and members of the North Carolina Subclass, about the true safety and reliability of their Grand Design RVs.

1042.   Defendants' numerous, repeated, and frequent representations about the safety and

reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1043.   Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the North Carolina Subclass.

1044.   Defendants knew or should have known that their conduct violated the NCUDAPA.

1045.   As alleged above, Defendants made material statements concerning the safety and reliability of Grand Design RVs and the Grand Design brand that were false and misleading.

1046.   Defendants owed Plaintiff and members of the North Carolina Subclass a duty to disclose the true condition of their RVs because they:

    a.   Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.   Intentionally concealed the foregoing from Plaintiff and the North Carolina Subclass; and

    c.   Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts that contradicted these representations.

1047.   Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and members of the North Carolina Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiff and the North Carolina Subclass purchased them due to Defendants' continued misrepresentations and

omissions. Further, Plaintiff and members of the North Carolina Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had they been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiff and the North Carolina Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1048.   Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. Defendants' misrepresentations, omissions, and deceptive conduct concerning quality and safety of Grand Design RVs caused this diminished value.

1049.   Defendants' concealment of these defects were material to Plaintiff and the members of the North Carolina Subclass.

1050.   Defendants' violations present a continuing risk to Plaintiff, members of the North Carolina Subclass, and the general public. In particular, and as alleged herein, Defendant's purported "fix" for the frame defect is inadequate and those RVs are therefore still defective. Defendants' unlawful acts and practices complaint of herein affect the public interest.

1051.   As a direct and proximate result of Defendants' violations of the NCUDAPA, Plaintiff and the North Carolina Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1052.   Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff to suffer ascertainable loss. Had Defendants not

committed these unfair and deceptive trade practices, Plaintiff and the North Carolina Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1053.   Under the NCUDAPA, Plaintiff and members of the North Carolina Subclass seek an order for treble damages, actual damages, an order enjoining Defendants' unlawful acts, costs of Court, attorney's fees, and any other just and proper relief available under the North Carolina Act. N.C. Gen. Stat. §§ 75-16; 75-86.

## TWENTIETH CAUSE OF ACTION
### Violation of Louisiana Unfair Trade Practices and Consumer Protection Law
### La. Rev. Stat. Ann. §§ 51:1401 *et seq.*

1054.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1055.   This claim is brought by Plaintiff Garcia, individually and on behalf of the Louisiana Subclass, against Defendants.

1056.   Plaintiff Garcia and the members of the Louisiana Subclass are "consumers" within the meaning of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA"), La. Rev. Stat. § 51:1402(1).

1057.   Defendants engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

1058.   The LUTPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405.

1059.   In the course of their business, Defendants engaged in unfair and deceptive acts and practices and violated the LUTPA by systematically concealing the defects in RVs purchased or leased by Plaintiff and members of the Louisiana Subclass. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or

concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

1060.  Defendants' actions, as set forth herein, occurred in the conduct of trade or commerce.

1061.  In the course of their business, Defendants concealed the defective nature of the Grand Design RVs and otherwise engaged in activities with a tendency or capacity to deceive, including representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised.. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Grand Design RVs.

1062.  Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects

affecting the Grand Design RVs owned or leased by Plaintiff and the Louisiana Subclass, yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs.  And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1063.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1064.  By failing to disclose and by actively concealing the frame defect in the Grand Design RVs, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the LUTPA.

1065.  In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

1066.  Defendants' unfair or deceptive acts or practices were likely to and did in fact

deceive reasonable consumers, including Plaintiff and members of the Louisiana Subclass, about the true safety and reliability of the Grand Design RVs.

1067.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1068.   Defendants' acts and omissions, as described throughout this Complaint, were immoral, unethical, oppressive, unscrupulous, and/or substantially injurious.

1069.   Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the Louisiana Subclass.

1070.   Defendants knew or should have known that its conduct violated the LUTPA.

1071.   As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

1072.   Defendants owed Plaintiffs a duty to disclose the true condition of their RVs because they:

   a.   Possessed exclusive knowledge about the defects in Grand Design RVs;

   b.   Intentionally concealed the foregoing from Plaintiff and the Louisiana Subclass; and;

   c.   Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts that contradicted these representations.

1073.   Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the proposed class members were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiff and the Louisiana Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and the Louisiana Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and the Louisiana Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Moreover, they would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1074.   Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

1075.   Defendants' concealment of these defects was material to Plaintiff and the members of the Louisianna Subclass.

1076.   Defendants' violations present a continuing risk to Plaintiff, the members of the Louisiana Subclass, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that

have been "repaired" are therefore still defective.

1077.   As a direct and proximate result of Defendants' violations of LUTPA, Plaintiff and the Louisiana subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1078.   Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and the Louisiana Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and the Louisiana Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1079.   Plaintiff and the Louisiana Subclass are entitled to recover their actual damages plus reasonable attorney's fees and costs under La. Rev. Stat. § 51:1409.

1080.   Further, to the extent that Defendants knowingly use unfair or deceptive methods, acts, or practices after being put on notice by the Louisiana attorney general, Plaintiff and the Louisiana Subclass is entitled to three times the actual damages that he sustained.

1081.   Plaintiff and the Louisiana Subclass seek an order enjoining Defendants' unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under LUTPA.

**TWENTY-FIRST CAUSE OF ACTION**
**Violation of Louisiana's Redhibition Law**
**La. Civ. Code art. 2520 *et seq.***
**(Individually and On Behalf of the Louisiana Subclass)**

1082.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1083.   This claim is brought by Plaintiff Garcia, individually and on behalf of the Louisiana Subclass, against Defendants.

1084.   Grand Design RVs are a "thing" under La. Civil Code articles 2520, *et seq.*

1085.   Plaintiff and members of the Louisiana Subclass are "buyers" under LA. CIV. CODE. art. 2520, *et seq.*

1086.   Defendants are "manufacturers" of the Grand Design RVs under La. Civil Code articles 2520, *et seq.* As manufacturers of the Grand Design RVs, Defendants are deemed to know that the Grand Design RVs contained a redhibitory defect and to be bad faith sellers. LA. CIV. CODE. art. 2545.

1087.   Under Louisiana law, the manufacturer warrants the buyer against redhibitory defects or vices in the things sold. LA. CIV. CODE. art. 2520.

1088.   A redhibitory defect is a physical imperfection or deformity, a lacking of a necessary component or level of quality.

1089.   Redhibitory defects may include the entire thing sold as well as a characteristic or component of the thing sold, even if the entire thing itself is not defective.

1090.   The defects in the Grand Design RVs, as described throughout this Complaint, meet the definition of a redhibitory defect as defined in La. Civil Code articles 2520, et seq. and the associated jurisprudence.

1091.   At the time of the sale of the Grand Design RVs to Plaintiff and members of the Louisiana Subclass, Defendants had actual or constructive knowledge of the defective design. Despite this knowledge, Defendants have not corrected the underlying problem or advised Plaintiff or members of the Louisiana Subclass of any remedy.

1092.   The Grand Design RVs' redhibitory defect renders the Grand Design RVs useless, or the use thereof so inconvenient that it must be presumed that Plaintiff and members of the Louisiana Subclass would not have purchased the Grand Design RVs had they known of the

defect. Accordingly, Plaintiff and members of the Louisiana Subclass have the right to and request rescission of the sale.

1093. At a minimum, the Grand Design RVs' redhibitory defect diminishes the value of the RVs so that it must be presumed that Plaintiff and members of the Louisiana Subclass would have paid a lesser price for the RVs had the redhibitory defect been disclosed. In such an instance, Plaintiff and members of the Louisiana Subclass are entitled to a reduction of the purchase price.

1094. Because Defendants, as manufacturers, are deemed to have known of the Grand Design RVs' redhibitory defect, they are liable to Plaintiff and members of the Louisiana Subclass for return of the purchase price plus interest, reimbursement of all reasonable expenses occasioned by the sale and those incurred for the preservation of the Grand Design RVs, as well as damages and reasonable attorney's fees.

**TWENTY-SECOND CAUSE OF ACTION**
**Violation of Texas Deceptive Trade Practices—Consumer Protection Act**
**Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.***
**(Individually and On Behalf of the Texas Subclass)**

1095. Plaintiffs incorporate by reference all preceding allegations in this Complaint.

1096. This claim is brought by Plaintiff Matthew Yeoman, individually and on behalf of the Texas Subclass, against Defendants.

1097. Plaintiff and the members of the Texas Subclass are individuals with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets). *See* TEX. BUS. & COM. CODE § 17.45(4).

1098. The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of the use of false, misleading or deceptive act or practice specifically enumerated in TEX. BUS. & COM. CODE § 17.46(b); or "an unconscionable action or course of action by any

person." TEX. BUS. & COM. CODE § 17.50(a)(2)(3).

1099.   An "unconscionable action or course of action," means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). As detailed herein, Defendants have engaged in an unconscionable action or course of action and thereby caused economic damages to Plaintiffs.

1100.   Defendants have also violated the specifically enumerated provisions of TEX. BUS. & COM. CODE § 17.46(b) by, at a minimum: (1) representing that Grand Design RVs have characteristics, uses, benefits, and qualities which they do not have; (2) representing that Grand Design RVs are of a particular standard, quality, and grade when they are not; (3) advertising Grand Design RVs with the intent not to sell them as advertised; (4) failing to disclose information concerning Grand Design RVs with the intent to induce consumers to purchase or lease Grand Design RVs.

1101.   In the course of its business, Defendants concealed the defects in Plaintiff's RV (and those purchased or leased by members of the Texas Subclass) as described herein and otherwise engaged in activities with a tendency or capacity to deceive in violation of the statute. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow

acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

1102.   Defendants' actions, as set forth above, occurred in the course of trade or commerce.

1103.   Since at least 2020, knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the Texas Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1104.   Defendants also represented that the frame defect could be repaired, and customers

relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1105.  By failing to disclose and by actively concealing the known defects in the Grand Design RVs, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Texas DPTA.

1106.  In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

1107.  Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and members of the Texas Subclass, about the true safety and reliability of their RVs.

1108.  Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1109.  Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the Texas Subclass.

1110.  Defendants knew or should have known that its conduct violated the Texas DTPA.

1111.  As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

1112.  Defendants owed Plaintiff and members of the Texas Subclass a duty to disclose

the true condition of their RVs because:

     a. Possessed exclusive knowledge about the defects in Grand Design RVs;

     b. Intentionally concealed the foregoing; and

     c. Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts that contradicted these representations.

1113. Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and the Texas Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiffs and members of the Texas Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and member of the Texas Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and the Texas Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiff and members of the Texas Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1114. Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

1115.   Defendants' concealment of these defects was material to Plaintiff and members of the Texas Subclass.

1116.   Defendants' violations present a continuing risk to Plaintiffs, members of the Texas Subclass, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

1117.   As a direct and proximate result of Defendants' violations of the Texas DTPA, Plaintiff and members of the Texas Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1118.   Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and members of the Texas Subclass either would have paid less for their vehicles or would not have purchased or leased them at all. Under TEX. BUS. & COM. CODE § 17.50(b)(1), Plaintiffs are entitled to recover such economic damages.

1119.   As the foregoing allegations demonstrate, Defendants, by their misrepresentations and failure to disclose material facts about the defects in Grand Design RVs, exposed Plaintiff and the public to serious safety hazards by allowing these defective RVs to remain on the road, and economically injured all owners of Grand Design RVs, who were unaware of the presence of this defect. Defendants thereby engaged in acts or practices which, to the detriment of Plaintiff and members of the Texas Subclass, took advantage of their lack of knowledge, ability, experience,

and capacity to a grossly unfair degree. In other words, Defendants engaged in unconscionable actions or an unconscionable course of action as to Plaintiff and the members of the Texas Subclass.

1120. As set forth herein, Defendants engaged in unconscionable actions and an unconscionable course of action "knowingly," which means it did so with "actual awareness, at the time of the act or practice complained of, of the falsity, deception or unfairness of the act or practice giving rise to the consumer's claim…." TEX. BUS. & COM. CODE § 17.45(9). Accordingly, pursuant to TEX. BUS. COM. CODE § 17.50(b)(1), Plaintiffs are entitled to additional damages in an amount up to three times the amount of economic damages.

1121. Pursuant to TEX. BUS. & COM. CODE § 17.50(a)(1) and (b), Plaintiff and the Texas Subclass seek monetary relief against Defendants measured as actual damages in an amount to be determined at trial, treble damages and damages for mental anguish for Defendants' knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

1122. Alternatively, or additionally, pursuant to TEX. BUS. & COM. CODE § 17.50(b)(3) & (4), Plaintiff and the Texas Subclass are entitled to disgorgement or to rescission or to any other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA or which the Court deems proper.

1123. Plaintiffs are also entitled to recover court costs and reasonable and necessary attorneys' fees under § 17.50(d) of the Texas DTPA.

1124. On July 17, 2025, counsel for Plaintiff and the Texas Subclass sent a letter complying with TEX. BUS. & COM. CODE § 17.505(a). Defendants did not respond to this letter. On September 19, Plaintiffs sent a second letter pursuant to TEX. BUS. & COM. CODE §

17.505(a).  Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs and the proposed class seek all damages and relief to which they are entitled. Indeed, Defendants failed to respond to either letter.

### TWENTY-THIRD CAUSE OF ACTION
**Violation of Wisconsin Consumer Act**
**Wis. Stat. §§ 100.18, 100.20 *et seq.***
**(Individually and On Behalf of the Wisconsin Subclass)**

1125.  Plaintiffs incorporate by reference all preceding allegations in this Complaint.

1126.  This claim is brought by Plaintiff Deana Jansa, individually and on behalf of the Wisconsin Subclass, against Defendants.

1127.  Defendants are a "person, firm, corporation or association" within the meaning of WIS. STAT. § 100.18(1).

1128.  Plaintiffs are members of "the public" within the meaning of WIS. STAT. § 100.18(1). Plaintiffs purchased or leased one or more Grand Design RVs.

1129.  The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits advertisements and representations made to the public which contain "any assertion, representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18(1).

1130.  In the course of its business, Defendants concealed the defects in Plaintiffs' RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive or mislead in violation of the statute. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Grand Design RVs. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-

cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

1131.   Defendants' actions, as set forth above, occurred in the course of trade or commerce.

1132.   In the course of their business, Defendants systematically concealed the defects present in Grand Design RVs, as described herein, and otherwise engaged in conduct that had the tendency or capacity to deceive, including representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants further engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or by concealing, suppressing, or omitting material facts, with the intent that others rely on such concealment, suppression, or omission, in connection with the sale of Grand Design RVs. Thus, Defendants should have known that they were advertised Grand Design RVs with the intent not to sell them as advertised.

1133.   Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the Wisconsin Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective

frames. In 2024, Defendants acquired additional information regarding the severity of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs.  And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1134.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiffs relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1135.   By failing to disclose and by actively concealing the known defects in Grand Design RVs, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the Wisconsin DTPA.

1136.   In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

1137.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and members of the Wisconsin Subclass, about the true safety and reliability of their RVs.

1138.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1139.   Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiffs and members of the Wisconsin class.

1140.   Defendants knew or should have known that its conduct violated the Wisconsin DTPA.

1141.   As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

1142.   Defendants owed Plaintiff and the Wisconsin Subclass a duty to disclose the true condition of their RVs because they:

    a.   Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.   Intentionally concealed the foregoing; and

    c.   Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts that contradicted these representations.

1143.   Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and the Wisconsin Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiffs' and proposed class members have

purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and the Wisconsin Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and the Wisconsin Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Moreover, they would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1144.   Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

1145.   Defendants' concealment of the defects was material to Plaintiff and the members of the Wisconsin Subclass.

1146.   Defendants' violations present a continuing risk to Plaintiff, the Wisconsin Subclass, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

1147.   As a direct and proximate result of Defendants' violations of the Wisconsin DTPA, Plaintiffs have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1148.   Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and members of the Wisconsin Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1149.   Plaintiff and the Wisconsin Subclass are entitled to damages and other relief provided for under WIS. STAT. § 100.18(11)(b)(2). Because New GM's conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

1150.   Plaintiff and the Wisconsin Subclass also seek court costs and attorneys' fees under WIS. STAT. § 110.18(11)(b)(2).

**TWENTY-FOURTH CAUSE OF ACTION**
**Violation of Oklahoma Consumer Protection Act**
**Okla. Stat. tit. 15, §§ 751 _et seq._**
**(Individually and On Behalf of the Oklahoma Subclass)**

1151.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1152.   This claim is brought by Plaintiff Matt Johnson, individually and on behalf of the Oklahoma Subclass, against Defendants.

1153.   Defendants are "persons," "corporation," or "association" within the meaning of OKLA. STAT. TIT. 15 § 751(1).

1154.    Defendants' marketing and sale of Grand Design RVs is an "Advertisement" and "Consumer transaction," respectively, as those terms are defined in 15 OK Stat. § 752.

1155.   The Oklahoma Consumer Protection Act ("OKCPA"), 15 OK Stat. § 753, declares unlawful, _inter alia_, the following acts or practices when committed in the course of business: "mak[ing] a false or misleading representation, knowingly or with reason to know, as to the

222

characteristics…, users, [or] benefits, of the subject of a consumer transaction," or making a false representation "knowingly or with reason to know, that the subject of a consumer transaction is of a particular standard, style or model, if it is of another or "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised;" and otherwise committing "an unfair or deceptive trade practice." OKLA. STAT. TIT. 15 § 753.

1156.   Defendants' conduct as alleged herein constitutes unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of OKLA. STAT. TIT. 15 § 753, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety, and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include both the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity of safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. These defective processes would be material to a reasonable consumer.

1157.   In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

1158.   Defendants' actions, as set forth above, occurred in the conduct of Advertising and Consumer Transactions.

1159.   In the course of their business, Defendants otherwise engaged in activities with a

tendency or capacity to deceive by silencing aggrieved customers while representing to the general public that Grand Design RVs have characteristics, uses, that they do not have, and that they were of a particular standard, quality, or grade which they were not. This conduct was knowingly calculated to confuse and mislead consumers about the safety and reliability of Grand Design's RVs. Defendants' use of deception, deceptive acts or practices, misrepresentations, and/or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omissions in connection with the marketing and sale of Grand Design RVs was thus unfair to consumers.

1160. Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers, that the frames used in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the RVs owned or leased by Plaintiff and the Oklahoma Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulleting ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide Plaintiffs with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part,

because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1161.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiffs relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1162.   By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the OKCPA.

1163.   In the course of their commerce, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

1164.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their Grand Design RVs.

1165.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1166.   Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the Oklahoma Subclass.

1167.   Defendants knew or should have known that their conduct violated the OKCPA.

1168.   As alleged above, Defendants made material statements concerning the safety and

reliability of Grand Design RVs and the Grand Design brand that were false and misleading.

1169.  Defendants owed Plaintiff and the Oklahoma Subclass a duty to disclose the true condition of their RVs because they:

      a.  Possessed exclusive knowledge about the defects in Grand Design RVs;

      b.  Intentionally concealed the foregoing; and

      c.  Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiff and members of the Oklahoma Subclass that contradicted these representations.

1170.  Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and the Oklahoma Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiffs and members of the Oklahoma Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, they have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and the Oklahoma Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Moreover, they would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1171.  Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. Defendants' misrepresentations, omissions, and deceptive conduct concerning quality and safety of Grand Design RVs caused this diminished value.

1172.   Defendants' concealment of these defects was material to Plaintiff and the Oklahoma Subclass.

1173.   Defendants' violations present a continuing risk to Plaintiff, the Oklahoma Subclass, and the general public. In particular, and as alleged herein, Defendant's purported "fix" for the frame defect is inadequate and those RVs are therefore still defective. Defendants' unlawful acts and practices complaint of herein affect the public interest.

1174.   As a direct and proximate result of Defendants' violations of the OKCPA, Plaintiff and members of the Oklahoma Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1175.   Plaintiff and members of the Oklahoma Subclass seek punitive damages against Defendants because Defendants' conduct was egregious and is continuing. Defendants misrepresented the safety and reliability of thousands of Grand Design RVs and both concealed myriad defects and deceived Plaintiff and members of the Oklahoma Subclass on serious safety matters to avoid the expense and public relations nightmare.

1176.   Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and members of the Oklahoma Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and members of the Oklahoma Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1177.   Under the OKCPA, Plaintiff and members of the Oklahoma Subclass seek recovery of their actual damages, discretionary penalties up to $2,000 per violation, and reasonable attorneys' fees, under Okla. Stat. Tit. 15 § 761.1. Plaintiffs further seek an order enjoining

Defendants' unfair and/or deceptive acts or practices, and any other just and proper relief available under OKCPA.

### TWENTY-FIFTH CAUSE OF ACTION
**Violation of Maryland Consumer Protection Act**
**Md. Code Ann., Com. Law §§ 13-101 *et seq.***
**(Individually and On Behalf of the Maryland Subclass)**

1178.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1179.   This claim is brought by Plaintiff Michael Mangum, individually and on behalf of the Maryland Subclass, against Defendants.

1180.   Defendants are "persons" within the meaning of MD. Com. Law Code § 13-101(h).

1181.   Plaintiffs and members of the Maryland Subclass are "consumers" within the meaning of MD. Code Com. Law § 13-101(c)(1)

1182.   The Maryland Consumer Protection Act ("MCPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good. MD. Com. Law Code § 13-303. Defendants participated in misleading, false, or deceptive acts that violated the MCPA, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety, and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include both the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity of safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. These defective processes would be material to a reasonable consumer.

1183.   In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

1184.   Defendants' actions, as set forth above, occurred in the Advertisement and Sale of Merchandise. MD Code Com. Law § 13-101(b)(1), (f), (i).

1185.   In the course of their business, Defendants otherwise engaged in activities with a tendency or capacity to deceive by silencing aggrieved customers while representing to the general public that Grand Design RVs have characteristics, uses, that they do not have, and that they were of a particular standard, quality, or grade which they were not. This conduct was knowingly calculated to confuse and mislead consumers about the safety and reliability of Grand Design's RVs. Defendants' use of deception, deceptive acts or practices, misrepresentations, and/or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omissions in connection with the marketing and sale of Grand Design RVs was thus unfair to consumers.

1186.   Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers, that the frames used in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the RVs owned or leased by Plaintiff and the Maryland Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame

failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide Plaintiffs with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1187.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiffs relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1188.   By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the MCPA.

1189.   In the course of their commerce, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

1190.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and members of the Maryland Subclass, about the true safety and reliability of their Grand Design RVs.

1191.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs'

frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1192.  Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the Maryland Subclass.

1193.  Defendants knew or should have known that their conduct violated the MCPA.

1194.  As alleged above, Defendants made material statements concerning the safety and reliability of Grand Design RVs and the Grand Design brand that were false and misleading.

1195.  Defendants owed Plaintiffs a duty to disclose the true condition of their RVs because they:

      a.  Possessed exclusive knowledge about the defects in Grand Design RVs;

      b.  Intentionally concealed the foregoing from Plaintiff and members of the Maryland Subclass; and

      c.  Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts that contradicted these representations.

1196.  Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and members of the Maryland Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects.  The Grand Design RVs have continued to decline in value due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and the Maryland Subclass has spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had they been aware of

the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Plaintiffs and the Maryland Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1197. Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. Defendants' misrepresentations, omissions, and deceptive conduct concerning quality and safety of Grand Design RVs caused this diminished value.

1198. Defendants' concealment of these defects was material to Plaintiff and the members of the Maryland Subclass.

1199. Defendants' violations present a continuing risk to Plaintiffs, members of the Maryland Subclass, and the general public. In particular, and as alleged herein, Defendant's purported "fix" for the frame defect is inadequate and those RVs are therefore still defective. Defendants' unlawful acts and practices complaint of herein affect the public interest.

1200. As a direct and proximate result of Defendants' violations of the MCPA, Plaintiff and members of the Maryland Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1201. Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and the Maryland Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and the members of the Maryland Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1202.   Pursuant to the MCPA, Plaintiff and members of the Maryland Subclass seek actual damages, attorneys' fees, and any other just and proper relief available under the MCPA.

### TWENTY-SIXTH CAUSE OF ACTION
**Violation of Rhode Island Unfair Trade Practice and Consumer Protection Act**
**R.I. Gen. Laws §§ 6-13.1-1 *et seq.***
**(Individually and On Behalf of the Rhode Island Subclass)**

1203.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1204.   This claim is brought by Plaintiff Robin Meyers, individually and on behalf of the Rhode Island Subclass, against Defendants.

1205.   Defendants are "persons" as that term is defined in R.I. GEN. LAW § 6-13.1-1(3), and their sale of Grand Design RVs is "commerce" within the meaning of R.I. GEN. LAW § 6-13.1-1(5).

1206.  The Rhode Island Unfair Trade Practices and Consumer Protection Act ("RIUTPCPA"), R.I. GEN. LAW § 3-13.1-2, prohibits methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. Specifically, the RIUTPCPA prohibits persons from, among other things: (i) representing that goods have characteristics, uses, or benefits that they do not have; (ii) representing that goods or services are of a particular standard, quality, or grade, if they are of another; (iii) advertising claims concerning safety and performance unless the advertiser makes available documentation substantiating the validity of the claim; (iv) "[e]ngaging in any act or practice that is unfair or deceptive to the consumer;" and (v) "[e]ngaging in any other conduct that similarly creates a likelihood of confusion or of misunderstanding[.]" *Id.* at § 6-13.1-1(6).

1207.   Defendants' conduct as alleged herein constitutes unfair or deceptive acts or practice sin the conduct of any trade or commerce in violation of R.I. GEN. LAW § 3-13.1-2,

including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety, and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include both the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity of safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. These defective processes would be material to a reasonable consumer.

1208.  In the course of their commerce, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

1209.  Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

1210.  In the course of their commerce, Defendants otherwise engaged in activities with a tendency or capacity to deceive by silencing aggrieved customers while representing to the general public that Grand Design RVs have characteristics, uses, that they do not have, and that they were of a particular standard, quality, or grade which they were not. This conduct was knowingly calculated to confuse and mislead consumers about the safety and reliability of Grand Design's RVs. Defendants' use of deception, deceptive acts or practices, misrepresentations, and/or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omissions in connection with the marketing and sale of Grand

Design RVs was thus unfair to consumers.

1211. Since at least 2020, knew, based on internal investigations, continuous reports, and notifications from customers, that the frames used in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the RVs owned or leased by Plaintiff and the Rhode Island Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1212. Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiffs relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1213. By failing to disclose and by actively concealing the frame defect in Grand Design

RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the RIUTPCPA.

1214.  In the course of their commerce, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

1215.  Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and the Rhode Island Subclass, about the true safety and reliability of their Grand Design RVs.

1216.  Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1217.  Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the Rhode Island Subclass.

1218.  Defendants knew or should have known that their conduct violated the RIUTPCPA.

1219.  As alleged above, Defendants made material statements concerning the safety and reliability of Grand Design RVs and the Grand Design brand that were false and misleading.

1220.  Defendants owed Plaintiffs a duty to disclose the true condition of their RVs because they:

      a.  Possessed exclusive knowledge about the defects in Grand Design RVs;

      b.  Intentionally concealed the foregoing from Plaintiffs; and

      c.  Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiff and

the Rhode Island Subclass that contradicted these representations.

1221.  Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the proposed class members were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects.  The Grand Design RVs have continued to decline in value since Plaintiff and the Rhode Island Subclass purchased them due to Defendants' continued misrepresentations and omissions.  Further, Plaintiff and the Rhode Island Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiff and members of the Rhode Island Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Moreover, they would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1222.  Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly—falling well below the value they would have retained had the defects not existed. Defendants' misrepresentations, omissions, and deceptive conduct concerning quality and safety of Grand Design RVs caused this diminished value.

1223.  Defendants' concealment of the defects in Plaintiffs' RVs was material to Plaintiffs.

1224.  Defendants' violations present a continuing risk to Plaintiff, the Rhode Island Subclass, and the general public. In particular, and as alleged herein, Defendant's purported "fix" for the frame defect is inadequate and those RVs are therefore still defective. Defendants' unlawful acts and practices complaint of herein affect the public interest.

1225.   As a direct and proximate result of Defendants' violations of the RIUTPCPA, Plaintiff and the Rhode Island Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1226.   Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and the Rhode Island Subclass to suffer ascertainable loss. If Defendants had not committed these unfair trade practices, Plaintiff and members of the Rhode Island Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1227.   Under the RIUTPCPA, Plaintiff and members of the Rhode Island Subclass are entitled to recover their actual damages suffered as a result of Defendants' acts and practices. R.I. GEN. LAW § 6-13.1-5.2 (a)-(b). Plaintiffs also seek punitive damages in the discretion of the Court because Defendants' egregious disregard of consumer and public safety and its long-running concealment of the serious safety defects and the tragic consequences.

### TWENTY-SEVENTH CAUSE OF ACTION
**Violation of New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. §§ 56:8-1 *et seq.***
**(Individually and On Behalf of the New Jersey Subclass)**

1228.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1229.   This claim is brought by Plaintiff David Wobser, individually and on behalf of the New Jersey Subclass, against Defendants.

1230.   Defendants are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

1231.   Defendants engaged in "sales" of "merchandise" within the meaning of N.J. STAT. ANN. § 56:8-1(c), (d).

1232.   The New Jersey Consumer Fraud Act ("NJCFA") makes unlawful, "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . ." N.J. STAT. ANN. § 56:8-2. Defendants engaged in unconscionable and deceptive acts or practices that violated the NJCFA, and did so with the intent that Plaintiff and the New Jersey Subclass rely upon their acts, concealment, suppression or omissions.

1233.   Defendants' conduct as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentations, concealment, and/or suppression or omission of material facts in violate of N.J. STAT. ANN. § 56:8-2 including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety, and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include both the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity of safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. These defective processes would be material to a reasonable consumer.

1234.   In the course of their business, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs

have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

1235.   Defendants' actions, as set forth above, occurred in the Advertisement and Sale of Merchandise. N.J. STAT. ANN. § 56:8-1(a), (c), (e).

1236.   In the course of their business, Defendants otherwise engaged in activities with a tendency or capacity to deceive by silencing aggrieved customers while representing to the general public that Grand Design RVs have characteristics, uses, that they do not have, and that they were of a particular standard, quality, or grade which they were not. This conduct was knowingly calculated to confuse and mislead consumers about the safety and reliability of Grand Design's RVs. Defendants' use of deception, deceptive acts or practices, misrepresentations, and/or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omissions in connection with the marketing and sale of Grand Design RVs was thus unfair to consumers.

1237.   Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers, that the frames used in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the RVs owned or leased by Plaintiff and the New Jersey Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants

issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1238.   Defendants also represented to Plaintiff and the New jersey Subclass that the frame defect could be repaired, and Plaintiffs relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiff and the Subclass relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1239.   By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the NJCFA.

1240.   In the course of their commerce, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

1241.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and the New Jersey Subclass, about the true safety and reliability of their Grand Design RVs.

1242.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about

new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1243.   Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the New Jersey Subclass.

1244.   Defendants knew or should have known that their conduct violated the NJCFA.

1245.   As alleged above, Defendants made material statements concerning the safety and reliability of Grand Design RVs and the Grand Design brand that were false and misleading.

1246.   Defendants owed Plaintiff and the New Jersey Subclass a duty to disclose the true condition of their RVs because they:

    a.   Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.   Intentionally concealed the foregoing; and

    c.   Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts that contradicted these representations.

1247.   Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiffs and the New Jersey Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiffs and the New Jersey Subclass have purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiff and members of the New Jersey Subclass have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiffs and members of the New Jersey Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those

RVs or paid less for them. Plaintiffs and members of the New Jersey Subclass would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1248.   Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. Defendants' misrepresentations, omissions, and deceptive conduct concerning quality and safety of Grand Design RVs caused this diminished value.

1249.   Defendants' concealment of these defects were material to Plaintiff and the members of the New Jersey Subclass.

1250.   Defendants' violations present a continuing risk to Plaintiff, members of the New Jersey Subclass, and the general public. In particular, and as alleged herein, Defendant's purported "fix" for the frame defect is inadequate and those RVs are therefore still defective. Defendants' unlawful acts and practices complaint of herein affect the public interest.

1251.   As a direct and proximate result of Defendants' violations of the NJCFA, Plaintiff and the members of the New Jersey Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1252.   Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and the New Jersey Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and the New Jersey Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1253.   Under the NJCFA, Plaintiff and members of the New Jersey Subclass seek legal

and/or equitable relief including an order enjoining Defendants' unlawful conduct, treble damages, costs and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

**TWENTY-EIGHTH CAUSE OF ACTION**
**Violation of South Dakota Deceptive Trade Practices and Consumer Protection Law**
**S.D. Codified Laws §§ 37-24-1 *et seq.***
**(Individually and On Behalf of the South Dakota Subclass)**

1254.  Plaintiffs incorporate by reference all preceding allegations in this Complaint.

1255.  This claim is brought by Plaintiff Cynthia Yungclas, individually and on behalf of the South Dakota Subclass, against Defendants.

1256.  Defendants are a "person" within the meaning of S.D. CODIFIED LAWS § 37-24-1(8).

1257.  The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota CPL") prohibits deceptive acts or practices, making it unlawful for a person to "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby [.]" S.D. CODIFIED LAWS § 37-24-6(1).

1258.  Defendants' conduct as set forth herein constitutes deceptive acts or practices, fraud, false promises, misrepresentation, concealment, suppression and omission of material facts in violation of S.D. CODIFIED LAWS § 37-24-6 and 37-24-31, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include not only the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-

cutting, overbuilding, prioritizing production quantity over the safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. All of these defective processes would be material to a reasonable consumer.

1259.   Defendants' actions, as set forth above, occurred in the course of trade or commerce.

1260.   In the course of its business, Defendants' knowingly and systematically concealed the defects in Grand Design RVs as described herein and otherwise engaged in activities with a tendency or capacity to deceive by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertising Grand Design RVs with intent not to sell them as advertised. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and/or the concealment, suppression or omission of material facts with intent that consumers rely upon such concealment, suppression or omissions, in connection with the sale or lease of Grand Design RVs.

1261.   Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers that the frames utilized in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the Grand Design RVs owned or leased by Plaintiff and the South Dakota subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into

reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem— Defendants issued a Technical Service Bulletin ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide customers with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1262.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair. Because Plaintiffs relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1263.   By failing to disclose and by actively concealing the known defects in Plaintiffs' vehicles, which Defendants marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the South Dakota CPL.

1264.   In the course of business, Defendants willfully failed to disclose and actively concealed the dangerous risks posed by the defects in Grand Design RVs.

1265.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and the members of the South Dakota Subclass, about the true safety and reliability of their RVs.

1266.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs'

frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1267.  Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiffs and members of the South Dakota Subclass.

1268.  Defendants knew or should have known that its conduct violated the South Dakota CPL.

1269.  As alleged above, Defendants made material statements concerning the safety and reliability of the Grand Design RVs and the Grand Design brand that were either false or misleading.

1270.  Defendants owed Plaintiff and members of the South Dakota Subclass a duty to disclose the true condition of their RVs because:

    a.  Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.  Intentionally concealed the foregoing; and

    c.  Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts that contradicted these representations.

1271.  Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and members of the South Dakota Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiffs' and proposed class members purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiffs and members of the South Dakota Subclass have spent their time and money to

attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiffs and members of the South Dakota Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Moreover, they would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1272.  Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. This diminished value is directly attributable to Defendants' misrepresentations, omissions, and deceptive conduct concerning the quality and safety of Grand Design RVs.

1273.  Defendants' concealment of these defects was material to Plaintiff and the South Dakota Subclass.

1274.  Defendants' violations present a continuing risk to Plaintiff, members of the South Dakota Subclass, and the general public. Defendants' unlawful acts and practices complained of herein affect the public interest. Moreover, as alleged herein, Defendants purported "fix" for the frame defect is inadequate and therefore RVs that have not yet manifested the defect or those that have been "repaired" are therefore still defective.

1275.  As a direct and proximate result of Defendants' violations of the South Dakota CPL, Plaintiff and members of the South Dakota Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1276.  Defendants' misrepresentations about, concealment of, and failure to disclose the

defects in Grand Design RVs caused Plaintiff and members of the South Dakota Subclass to suffer ascertainable loss. Had Defendants not committed these unfair and deceptive trade practices, Plaintiff and members of the South Dakota Subclass either would have paid less for their vehicles or would not have purchased or leased them at all.

1277.   Under S.D. CODIFIED LAWS § 37-24-31, Plaintiff and the South Dakota Subclass are entitled to a recovery of their actual damages suffered as a result of Defendants' acts and practices.

### TWENTY-NINTH CAUSE OF ACTION
**Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law
73 Pa. Stat. Ann. §§ 201-1 *et seq.*
(Individually and On Behalf of the Pennsylvania Subclass)**

1278.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1279.   This claim is brought by Plaintiff Joseph Graver, individually and on behalf of the Pennsylvania Subclass, against Defendants.

1280.   Defendants are "persons" as that term is defined in 73 P.S. §201-2(2), and their sale of Grand Design RVs is "trade" or "commerce" within the meaning of 73 P.S. §201-2(3).

1281.   The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PA UTPCPL"), 73 P.S. §201-3, prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. Specifically, the PA UTPCPL prohibits persons from, among other things: (i) representing that goods have characteristics, uses, or benefits that they do not have; (ii) representing that goods or services are of a particular standard, quality, or grade, if they are of another; (iii) advertising claims concerning safety and performance unless the advertiser makes available documentation substantiating the validity of the claim; (iv) advertising goods or services with intent not to sell them as advertised; and (v) "[e]ngaging in any other fraudulent or deceptive

conduct which creates a likelihood of confusion or of misunderstanding." *Id*. at § 6-13.1-1(6).

1282.  Defendants' conduct as alleged herein constitutes unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of 73 P.S. §201-3, including, but not limited to, Defendants' misrepresentations and omissions regarding the quality, safety, and reliability of Grand Design RVs, and the defects in Defendants' RVs and/or RV frames. The defects in Defendants' RVs include both the defective frame, but also the defective process by which Defendants designed, engineered, and manufactured the RVs—a process characterized by cost-cutting, overbuilding, prioritizing production quantity of safety and quality promised to consumers, eliminating inspections, failing to follow acceptable structural engineering practices, minimizing the importance of safety issues, and initiating an ongoing cover-up to conceal the resulting problems from consumers. These defective processes would be material to a reasonable consumer.

1283.  In the course of their commerce, Defendants systematically concealed the defects in Grand Design RVs and engaged in deceptive practices by representing that Grand Design RVs have characteristics, uses, or qualities that they do not have; and advertised Grand Design RVs with intent not to sell them as advertised.

1284.  Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

1285.  In the course of their commerce, Defendants otherwise engaged in activities with a tendency or capacity to deceive by silencing aggrieved customers while representing to the general public that Grand Design RVs have characteristics, uses, that they do not have, and that they were of a particular standard, quality, or grade which they were not. This conduct was knowingly calculated to confuse and mislead consumers about the safety and reliability of Grand Design's

RVs. Defendants' use of deception, deceptive acts or practices, misrepresentations, and/or the concealment, suppression, or omission of material facts with the intent that consumers rely upon such concealment, suppression, or omissions in connection with the marketing and sale of Grand Design RVs was thus unfair to consumers.

1286.   Since at least 2020, Defendants knew, based on internal investigations, continuous reports, and notifications from customers, that the frames used in Grand Design RVs were defective because they were not designed to support the weight and size of Grand Design RVs. And for years, Defendants possessed exclusive knowledge of the serious and pervasive defects affecting the RVs owned or leased by Plaintiff and the Pennsylvania Subclass yet made no effort to correct their misrepresentations or to address the underlying issues in the defective frames. In 2024, Defendants acquired additional information regarding the prevalence of these defects and associated safety concerns when NHTSA initiated a formal investigation into reports of frame failure. However, rather than taking steps to assist consumers whose RVs were affected by the defect—or even publicly acknowledging the widespread nature of the problem—Defendants issued a Technical Service Bulleting ("TSB") in March 2024, which allowed Defendants to avoid notifying customers or covering the cost of repairs for out-of-warranty vehicles. Furthermore, Defendants have consistently refused to provide Plaintiffs with copies of inspection reports, work orders, or other documentation identifying problems or repairs made to their RVs. And even after realizing that their frames were defective by design, Defendants refused to redesign them, in part, because doing so would have been more costly (both in terms of time and resources) than quickly capitalizing on increased demand for RVs.

1287.   Defendants also represented that the frame defect could be repaired, and customers relied on that misrepresentation to tender their Grand Design RVs to Defendants for repair.

Because they relied on Defendants' deceptive representations, they were deprived of the use of their Grand Design RVs for extended periods of time.

1288.   By failing to disclose and by actively concealing the frame defect in Grand Design RVs, which were marketed as safe, reliable, and of high quality, Defendants engaged in unfair and deceptive business practices in violation of the PA UTPCPL.

1289.   In the course of their commerce, Defendants willfully failed to disclose and actively concealed the dangerous risk posed by the frame defect in Grand Design RVs.

1290.   Defendants' unfair or deceptive acts or practices were likely to, and did in fact, deceive reasonable consumers, including Plaintiff and the members of the Pennsylvania Subclass, about the true safety and reliability of their Grand Design RVs.

1291.   Defendants' numerous, repeated, and frequent representations about the safety and reliability of their RVs, as well as their failure to disclose the known defects inherent in the RVs' frame, were calculated to exploit Grand Design's goodwill, while misleading consumers about new, emerging, and increasingly prevalent issues with the safety, quality, and reliability of their RVs.

1292.   Defendants intentionally and knowingly misrepresented material facts regarding Grand Design RVs with the intent to mislead Plaintiff and members of the Pennsylvania Subclass.

1293.   Defendants knew or should have known that their conduct violated the PA UTPCPL.

1294.   As alleged above, Defendants made material statements concerning the safety and reliability of Grand Design RVs and the Grand Design brand that were false and misleading.

1295.   Defendants owed Plaintiffs a duty to disclose the true condition of their RVs because they:

    a.   Possessed exclusive knowledge about the defects in Grand Design RVs;

    b.   Intentionally concealed the foregoing from Plaintiffs; and

    c.   Made incomplete representations about the safety and reliability of Grand Design RVs, while purposefully withholding material facts from Plaintiffs that contradicted these representations.

1296.   Because Defendants improperly concealed the frame defect in the Grand Design RVs, Plaintiff and the members of the Pennsylvania Subclass were deprived of the benefit of their bargain since the RVs they purchased were worth less than they would have been if free from defects. The Grand Design RVs have continued to decline in value since Plaintiff and the members of the Pennsylvania Subclass purchased them due to Defendants' continued misrepresentations and omissions. Further, Plaintiffs and proposed class members have spent their time and money to attempt to repair their Grand Design RVs and/or to deal with the inconveniences and hardship caused by their Grand Design RVs following frame failure. Had Plaintiffs and the members of the Pennsylvania Subclass been aware of the frame defects in their Grand Design RVs, they would have either not purchased those RVs or paid less for them. Moreover, they would not have used the defective RVs and would have either sought to return or rescind the sale of the RVs or sought more extensive repairs earlier than when they actually did so.

1297.   Furthermore, once the truth about the defects in Grand Design RVs became public, the market value of these RVs dropped significantly, falling well below the value they would have retained had the defects not existed. Defendants' misrepresentations, omissions, and deceptive conduct concerning quality and safety of Grand Design RVs caused this diminished value.

1298.   Defendants' concealment of these defects in was material to Plaintiff and the members of the Pennsylvania Subclass.

1299.  Defendants' violations present a continuing risk to Plaintiff, the Pennsylvania Subclass, and the general public. In particular, and as alleged herein, Defendant's purported "fix" for the frame defect is inadequate and those RVs are therefore still defective. Defendants' unlawful acts and practices complaint of herein affect the public interest.

1300.  As a direct and proximate result of Defendants' violations of the PA UTPCPL, Plaintiff and the members of the Pennsylvania Subclass have suffered injury-in-fact and/or actual damage, as alleged above, including the loss of vehicle value, repair expenses and related out-of-pocket losses, and lost time.

1301.  Defendants' misrepresentations about, concealment of, and failure to disclose the defects in Grand Design RVs caused Plaintiff and members of the Pennsylvania Subclass to suffer ascertainable loss. Had Defendants not committed these unfair trade practices, Plaintiff and the Pennsylvania Subclass would have paid less for their RVs or would not have purchased or leased them at all.

1302.  Under the PA UTPCPL, Plaintiff and members of the Pennsylvania Subclass are entitled to recovery of their actual damages suffered as a result of Defendants' acts and practices. 73 P.S. §201-9-2. Plaintiffs are also entitled to an award of punitive damages given that Defendants' conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

**THIRTIETH CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiffs and the Nationwide Class or, in the Alternative, Individual Statewide Classes)**

1303.  Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1304.  This claim is brought by Plaintiffs against Defendants under Indiana law on behalf

of the Nationwide Class or, in the alternative, on behalf of the statewide classes.

1305.   Under Indiana, Arizona, California, Colorado, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Minnesota, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas, Washington, and Wisconsin law, Defendants undertook a duty of care when they designed, manufactured, marketed and advertised Grand Design RVs as safe, structurally sound, of high quality, and suitable for travel and habitation.

1306.   Defendants also undertook a duty not to actively conceal known defects that could endanger consumers or their property, and a duty to provide accurate and non-deceptive information regarding the RVs' condition, reliability, and safety.

1307.   This duty included, at minimum, a responsibility not to market or distribute RVs with known, concealed structural frame defects that compromise safety and utility, and to disclose material facts relating to the condition and reliability of the product. These duties arise independently of any contractual obligations or warranties, stemming instead from Defendants' affirmative misrepresentations and fraudulent concealment, and their superior knowledge of the latent defects.

1308.   Defendants were in a superior position to know the true condition of the RVs and knew, or recklessly disregarded, that the structural frames used in these vehicles were prone to failure under normal use. Plaintiffs, by contrast, lacked access to the concealed defect information, and reasonably relied on Defendants' representations.

1309.   Defendants breached their duty by (a) knowingly selling RVs with latent frame defects, (b) concealing those defects from Plaintiffs and the public, and (c) affirmatively misrepresenting the safety and durability of the RVs in advertising, marketing materials, and

during the sales process.

1310.   As a result of this breach of duty, Plaintiffs and Class Members suffered damages including, but not limited to: loss of use and value of the RVs; damage to other property affixed to or stored within the RV, including separately purchased appliances and/or other personal property; costs incurred during attempted repairs and mitigation; out-of-pocket losses; lost time; and emotional distress arising from the fear of using structurally unsound RVs, as well as inconvenience and hardship caused by loss of use of Plaintiffs' RVs.

1311.   These injuries are not limited to pure economic loss arising from disappointed commercial expectations. Rather, Plaintiffs allege a separate tortious breach of duty through active concealment and misrepresentation of safety-related defects that created a foreseeable risk of harm to person and property.

1312.   As a direct and proximate result of Defendants' misconduct, Plaintiffs and members of the Classes have suffered cognizable legal injuries and seek compensatory and other damages in an amount to be proven at trial.

### THIRTY-FIRST CAUSE OF ACTION
**Fraudulent Concealment**
**(On Behalf of Plaintiffs and the Nationwide Class or, in the Alternative, Individual Statewide Classes)**

1313.   Plaintiffs incorporate by reference all preceding allegations in this Complaint.

1314.   This claim is brought on behalf of the nationwide class under Indiana law, or in the alternative, under each of the state subclasses.

1315.   As set forth above, Defendants concealed and/or suppressed material facts concerning the quality, functionality, and safety of their vehicles.

1316.   Defendants sold Grand Design RVs to Plaintiffs without disclosing the defects, and actively concealed those defects from regulatory agencies, consumers, and the public.

1317.  In furtherance of this concealment, Defendants engaged in in a course of deceptive conduct, including: censoring online discussions about the defect; requiring customers to sign non-disclosure agreements in exchange for repairs; refusing to provide documentation of repairs performed; failing to issue any recall or safety notice to the public; and withholding information about the widespread nature of the defect from regulatory bodies such as the RVIA and NHTSA.

1318.  Defendants undertook these actions with the intent to mislead and falsely assure purchasers, lessees, and owners of Grand Design RVs that their vehicles were safe, reliable, and capable of functioning as advertised; to prevent potential future customers from discovering the defect; to obstruct consumers' ability to uncover the defect through reasonable diligence; to deter further investigation by customers or regulators; and to avoid the financial cost and reputational harm of a formal recall. The concealed information was material to consumers because it concerned the quality, functionality, and safety of the vehicles and significantly affected both their market value and consumers' decisions to purchase, lease, or retain the RVs.

1319.  Defendants had a duty to disclose the defect because they consistently marketed Grand Design RVs as reliable, safe, and fit for their intended use. Defendants publicly claimed to uphold high safety standards—touting practices such as Grand Design's "198-point inspection"—to induce customers to purchase their RVs. At the same time, Defendants weakened or abandoned those very practices and misled consumers about emerging and increasingly widespread safety and quality issues affecting the vehicles.

1320.  Defendants also had a duty to disclose the defects because the relevant facts were known or accessible only to Defendants; Defendants had superior knowledge and exclusive access to the information; and Defendants knew the facts were neither known to, nor reasonably discoverable by, Plaintiffs. Further, having made numerous affirmative representations about the

safety, quality, and condition of the RVs as set forth above, Defendants had a duty to disclose the full truth and not omit material facts necessary to prevent their statements from being misleading. Defendants also had a continuing duty to monitor the safety of the vehicles sold and to promptly notify consumers of known defects, including the defective frame.

1321.   Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect their profits and avoid the economic and reputational costs associated with a recall – and did so at Plaintiffs' expense.

1322.   On information and belief, Defendants have still not made full and adequate disclosures and continue to conceal material information regarding defects in Grand Design RVs.

1323.   Plaintiffs were unaware of the concealed material facts and would not have acted as they did had they known. Specifically, Plaintiffs would not have purchased, leased, or continued to own and use Grand Design RVs, or would have taken other protective measures. Plaintiffs' actions were justified under the circumstances, as the facts were within Defendants' exclusive control and were not publicly available or reasonably discoverable by Plaintiffs.

1324.   As a direct and proximate result of Defendants' concealment, Plaintiffs suffered damages. Plaintiffs did not receive the benefit of their bargain, as the RVs were worth less than represented and less than they would have been without the undisclosed defects. Plaintiffs also incurred repair costs, lost time, loss of use, and diminished vehicle value. All Grand Design RVs suffer from diminished value as a result of Defendants' concealment and omissions regarding their RVs' safety and quality and Defendants' failure to timely disclose these defects. Had the concealed defects been disclosed, Plaintiffs would have paid less for the RVs, or not purchased or leased them at all.

1325.   Accordingly, Defendants are liable to Plaintiffs for damages in an amount to be

proven at trial.

1326.   Additionally, Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being to enrich Defendants. Therefore, Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## THIRTY-SECOND CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiffs and the Nationwide Class or, in the Alternative, Individual Statewide Classes)

1327.   Plaintiffs incorporate by reference all preceding allegations contained in this Complaint.

1328.   This claim is brought on behalf of the Nationwide Class under Indiana law or, in the alternative, as statewide classes under the laws of Arizona, California, Colorado, Florida, Georgia, Idaho, Illinois, Kentucky, Louisiana, Maryland, Minnesota, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Texas,  and Wisconsin.

1329.   As the intended and expected result of their conscious wrongdoing alleged herein, Defendants have profited and benefited from Plaintiffs' and Class members' purchases of Grand Design RVs. Plaintiffs' and Class members' payments for Grand Design RVs flowed to Defendants.

1330.   Defendants voluntarily accepted and retained these profits and benefits derived from Plaintiffs and the Class, with full knowledge and awareness that, as a result of their misconduct, Plaintiffs and the Class were not receiving products of the quality, nature, fitness, or value that had been represented by Defendants and that Plaintiffs and the Class, as reasonable

consumers, expected for an RV that was manufactured with defective frames.

1331.  If Plaintiffs and Class members knew Grand Design RVs were manufactured with defective frames as alleged herein, they would not have purchased Grand Design RVs.

1332.  Defendants have been unjustly enriched by their fraudulent and deceptive withholding of benefits to their customers at the expense of Plaintiffs and the Class.

1333.  Defendants profited from Plaintiffs' purchases and used Plaintiffs and Class members' monetary payments for business purposes. Defendants' retention of these profits and benefits is inequitable and against good conscience. Principles of equity and good conscience preclude Defendants from retaining these profits and benefits.

1334.  As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class suffered injury and seek the disgorgement and restitution of Defendants' wrongful profits, revenue, and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendants' unjust enrichment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that the Court:

a) Certify the Class with Plaintiffs appointed as Class representatives and the undersigned appointed as Class counsel;

b) Enter a judgment declaring that Defendants engaged in the unlawful conduct as alleged herein;

c) Award actual, compensatory, statutory, and consequential damages, along with punitive, treble or other multiple damages;

d) Award equitable monetary relief, including restitution and disgorgement of all ill-gotten

profits from the sale of Grand Design RVs;

e) Enter an injunction requiring Defendants to buy back all Grand Design RVs owned by the Class, and prohibiting Defendants from continuing to engage in the unlawful conduct as alleged herein;

f) Award Plaintiffs the costs of this action, including reasonable attorneys' fees and expenses and expert fees, as allowed by law;

g) Award pre-judgment and post-judgment interest at the highest rate allowed by law; and

h) Award such other and further relief as this Court may deem just and proper.

### <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury.

Dated: October 17, 2025                    Respectfully submitted,

<u>/s/ Fred Schultz</u>
Fred Schultz, #19554-53
Greene & Schultz Trial Lawyers
520 N Walnut Street
Bloomington, IN 47404
Telephone:  (812) 336-4357
Facsimile:    (812) 336-5615
fred@greeneschultz.com

Lynn A. Toops
**COHEN & MALAD LLP**
One Indiana Sq. Ste 1400
Indianapolis, IN 46204
Phone: (317) 636-6481
ltoops@cohenandmalad.com

Stephen J. Herman*
Lance C. McCardle*
Jason W. Burge*
Maggie M. Daly*
**FISHMAN HAYGOOD, L.L.P.**
201 St. Charles Avenue, 46th Floor
New Orleans, Louisiana 70170
Telephone:  (504) 586-5252
Fax:  (504) 586-5250
sherman@fishmanhaygood.com
lmccardle@fishmanhaygood.com
jburge@fishmanhaygood.com
mdaly@fishmanhaygood.com

James Bilsborrow*
Aaron Freedman*
Emma Dietz*
**WEITZ & LUXENBERG, PC**
700 Broadway
New York, NY 10003
Phone: (212) 558-5500
jbilsborrow@weitzlux.com
afreedman@weitzlux.com
edietz@weitzlux.com

*admitted *pro hac vice*


*Attorneys for Plaintiffs and the Putative Classes*